IRELL & MANELLA LLP
Alexander F. Wiles (CA 73596) awiles@irell.com
Brian Hennigan (CA 86955) bheningan@irell.com
Stephanie Kaufman (CA 162644) skaufman@irell.com
Trevor V. Stockinger (CA 226359) tstockinger@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

ARNOLD & PORTER LLP
Kenneth A. Letzler (*Pro Hac Vice* Application Pending) Kenneth_Letzler@aporter.com
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Attorneys for Plaintiff
GlaxoSmithKline

WINSTON & STRAWN LLP
James F. Hurst (Admitted *Pro Hac Vice*) jhurst@winston.com
David J. Doyle (Admitted *Pro Hac Vice*) ddoyle@winston.com
Samuel S. Park (Admitted *Pro Hac Vice*) spark@winston.com
Nicole M. Norris (CA 222785) nnorris@winston.com
101 California Street, Suite 3900
San Francisco, California 94111-5894
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Defendant
Abbott Laboratories

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ABBOTT LABORATORIES,<br><br>　　　　Defendant. | Case No. C 07-5702 CW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:　　December 11, 2007 (CMC)<br>Time:　　2:00 p.m.<br>Courtroom:　2 (4th Floor)<br>Judge:　　Hon. Claudia Wilken |

Smithkline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and Abbott Laboratories ("Abbott"), the parties to the above-entitled action, jointly submit this Case Management Statement. Where the parties have not reached a joint position on an issue, their respective positions are set out below.

**1.   Jurisdiction and Service**

The Court has subject matter jurisdiction over GSK's claims pursuant to 28 U.S.C. §§ 1331, 1332, 1337 and 1367. GSK asserts that venue is proper under 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391(b) and (c).

Abbott, the sole defendant, does not dispute that it was properly served or that this Court has personal jurisdiction. Abbott contests that venue is proper in this district and intends to ask the Court to transfer this case to the N.D. Illinois pursuant to the authority granted to the Court by 28 U.S.C. § 1404(a).

**2.   Facts**

GSK

GSK's claims derive from Abbott's 400 percent increase in the price it charged for Norvir® (branded ritonavir), a drug that acts to boost the effectiveness of drugs known as protease inhibitors ("PIs"). PIs are used to treat persons with HIV/AIDS. Abbott and GSK both manufacture and sell PIs that are boosted with ritonavir. The complaint alleges that Abbott is the sole manufacturer of ritonavir and that ritonavir is a critical component of PI therapy because it is the sole drug that can be used to boost the effectiveness of PIs. The complaint also alleges that Abbott demanded and took significant payments in exchange for licensing to GSK and others the right to promote their PIs for co-prescription and use with Norvir. The complaint further alleges that, after taking those payments and establishing a competitive market for boosted PIs, Abbott sought to injure competition as well as its competitors, who were also its licensees, by quintupling the price of Norvir except when sold as part of Abbott's combination PI drug known as Kaletra® (branded lopinavir/ritonavir). The complaint asserts that Abbott took these steps in order to make Norvir essentially inaccessible for use with all PIs except Kaletra, thereby extending Abbott's dominance in the market for boosted PIs. Abbott's price increase, the complaint alleges, had a

dramatic negative impact on GSK's ability to sell its competing PI, Lexiva® (branded fosamprenavir), which was introduced just two weeks before Abbott announced its 400 percent price increase for Norvir. GSK's complaint alleges that the price increase had the anticompetitive effect of protecting Kaletra against new PI products, including GSK's Lexiva, that threatened Kaletra's market dominance. Abbott's misconduct, the complaint alleges, violates Section 2 of the Sherman Act, the federal prohibition against monopolization and attempted monopolization, as well as a state law prohibition against monopolization. According to the complaint, Abbott's conduct also breaches the covenant of good faith and fair dealing contained in GSK's agreement with Abbott because it dashed GSK's reasonable expectations that GSK would be able to promote its PIs with Norvir at competitive prices. Finally, the complaint alleges that Abbott's misconduct constitutes unfair and deceptive trade practices in violation of North Carolina's Unfair Trade Practices Act.

<u>Abbott</u>

Abbott denies each and every substantive allegation in GSK's complaint and denies that it has any liability to GSK arising out of the Norvir price increase. Specifically, Abbott denies that it has engaged in legally cognizable exclusionary conduct, that GSK suffered any antitrust injury, or that Abbott had, or has, monopoly power in the relevant market. Abbott believes, in particular, that the Ninth Circuit's recent holding in *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007) precludes any contention that Abbott's above-cost pricing decisions amount to anticompetitive exclusionary conduct. Abbott further contends that its patents in the alleged Booster Market and the Boosted Market immunize it from antitrust liability in those markets. Abbott also asserts that GSK received exactly what it has bargained for under its license agreement.

**3.  Legal Issues:**

   a.  Whether GSK can demonstrate that Abbott violated Section 2 of the Sherman Act (15 U.S.C. § 2).

1       b.     Whether GSK can demonstrate that Abbott breached the covenant of good faith and fair dealing with GSK regarding the promotion of Norvir (branded ritonavir) for use with GSK's protease inhibitors.

     c.     Whether GSK can demonstrate that Abbott engaged in unfair and deceptive practices or unfair competition in violation of section 1.1 of the North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. § 75-1.1).

     d.     Whether GSK can demonstrate that Abbott engaged in monopolization or attempted monopolization in violation of section 2.1 of the North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. § 75.2.1).

     e.     Whether GSK was damaged by the above described acts, and the nature and amount of any damages.

**4.**    **Motions**

No motions are pending. GSK does not anticipate filing any motions in the near future. Abbott intends to file a motion to transfer this case to another district pursuant to the authority granted to this Court under 28 U.S.C. § 1404(a). Abbott also intends to file a motion to dismiss each of GSK's four counts, including a motion to dismiss its Sherman Act claim based on, among other grounds, the Ninth Circuit's recent holding in *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007).

**5.**    **Amendment of Pleadings**

At this time, GSK does not intend to amend its Complaint to add claims or parties.

**6.**    **Evidence Preservation**

GSK and Abbott have established litigation holds for documents relevant to this lawsuit, which supersedes regular document retention and destruction policies.

**7.**    **Disclosures**

The parties have stipulated to make their initial disclosures on January 11, 2008.

**8.**    **Discovery**

While no discovery has yet been taken in this matter, discovery relevant to GSK's claims has already been conducted in the related matter of *Doe 1 et al. v. Abbott Laboratories*, Case No.

1  C 04-1511 CW.  GSK has requested the prompt production of all documents, depositions,
2  discovery responses and expert reports from the related litigation, the review of which will inform
3  the discovery GSK anticipates taking.   In GSK's view, the prompt re-production of these
4  documents  should not require substantial resources and is consistent with this Court's instruction
5  that the discovery plan "take into account consolidation of this case" with the *Doe 1* and *Safeway,*
6  *Inc.* cases by expediting the discovery process.  GSK also reserves its rights regarding the form in
7  which Abbott's documents are re-produced if they were not originally produced in the form as
8  ordinarily maintained or in a reasonably usable form.

9    Abbott proposes to review, identify and produce relevant documents, depositions,
10 discovery responses and expert reports from the related litigation, in the form in which these items
11 were produced in the related case, after the Court has ruled on Abbott's motion to transfer and
12 motion to dismiss.  In particular, Abbott believes that substantial resources could be preserved if,
13 as a threshold issue before engaging in other case-related activities, the Court resolved the motion
14 to transfer and/or the motion dismiss, particularly in light of the Ninth Circuit's recent ruling that
15 above-cost pricing in this context does not amount to exclusionary conduct.  *See Cascade Health*
16 *Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007).

17   GSK disagrees with Abbott's interpretation of the *PeaceHealth* decision and denies that it
18 has any applicability here.  In any case, GSK believes discovery should not be delayed pending a
19 decision on the motion to dismiss or motion to transfer.  First, GSK understands that this Court has
20 already denied motions to dismiss Sherman Act claims based on the same facts and similar legal
21 theories.  Second, GSK believes that delaying discovery is inconsistent with ensuring the
22 expeditious resolution of this case and the related cases.  Finally, GSK believes that Abbott can
23 identify no serious burden associated with giving GSK the materials that have already been
24 produced or generated in the *Doe* matter.

25   The parties have agreed to be bound by a protective order substantially identical to the one
26 entered in *Doe 1 et al. v. Abbott Laboratories*, Case No. C 04-1511 CW.  The parties will shortly
27 submit a proposed protective order for entry in this case.  If the Court consolidates this case with
28 Case No. C 04-1511 CW, GSK believes that certain changes should be made in the Federal Rules

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641
- 4 -

governing discovery. GSK's view is that (i) with respect to expert depositions, no more than 7 hours of deposition should be permitted for each expert report, (ii) with respect to requests for admissions, substantive requests should be limited to 50 for each side but there should be no limit on requests to authenticate documents, and (iii) with respect to remaining discovery, there should be no changes to the Federal Rules. The parties' positions with respect to consolidation are set forth below in paragraph 17. If the Court elects not to consolidate this case with Case No. C 04-1511 CW, GSK believes that the parties should confer promptly about what changes, if any, should be made to the Federal Rules concerning discovery.

**9.    Class Action**

This matter is not a class action.

**10.   Related Cases**

This Court related this case to *Doe 1 et al. v. Abbott Laboratories*, Case No. C 04-1511 CW ("Doe/SEIU case"), *Safeway Inc., et al. v. Abbott Laboratories*, Case No. C 07-5470 CW ("Safeway case"), *Meijer, Inc. v. Abbott Laboratories*, Case No. 07-5985 and *Rochester Drug Co-Operative, Inc. v. Abbott Laboratories*, Case No. 07-6010. A motion to relate *Rite Aid Corporation, et al. v. Abbott Laboratories*, Case No. C 07-6120 JSW, to the above cases is currently pending.

**11.   Relief**

GSK seeks the following relief through its complaint: (1) damages resulting from Abbott's alleged violation of Section 2 of the Sherman Act, and trebling of such damages; (2) damages resulting from Abbott's alleged breach of the covenant of good faith and fair dealing; (3) damages resulting from Abbott's alleged violation of the North Carolina Unfair Trade Practices Act, and trebling of such damages; (4) damages resulting from Abbott's alleged violation of North Carolina's prohibition against monopolization, and trebling of such damages; (5) pre- and post-judgment interest on damages; (6) attorneys costs, fees and other expenses; (7) equitable and injunctive relief as is necessary to undo the effects of Abbott's alleged wrongful conduct and to prevent Abbott from repeating that alleged conduct; and (8) such other relief this Court deems just

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641

- 5 -

Case 4:07-cv-05702-CW   Document 17   Filed 12/04/2007   Page 7 of 14

1  and proper. GSK will disclose the amount of damages sought and the basis of their damages
2  calculation in its expert reports.
3  **12. Settlement and ADR**
4      The parties have discussed the Court's ADR procedures and options. The parties are
5  amenable to participating in a settlement conference by a magistrate judge.
6  **13.   Consent to Magistrate Judge For All Purposes**
7      The parties do not consent to have a magistrate judge conduct all further proceedings.
8  **14.   Other References**
9      The parties do not believe this case is suitable for reference to binding arbitration or a
10 special master.
11 **15.   Narrowing Of Issues**
12     The parties will endeavor to narrow the issues to be considered at trial through agreement
13 and motion practice.
14 **16.   Expedited Schedule**
15     The parties agree that some relevant discovery has already been taken in the related *Doe*
16 matter. GSK will seek to efficiently review and use that discovery so that this case can move
17 forward expeditiously. Paragraph 17, below, sets forth the respective proposed schedules of the
18 parties.
19 **17.   Scheduling**
20     The parties have been unable to agree upon a proposed schedule. Accordingly, each party
21 sets forth its own position below.
22     <u>Abbott's Proposed Schedule</u>
23     Abbott has considered the possibility of consolidation but believes that consolidation,
24 without substantial delay, confusion, and prejudice, is not possible under the circumstances.
25 Abbott also does not believe that GSK's proposed schedule (set out below) is feasible and opposes
26 the consolidation of this case with the Doe/SEIU case.
27     First, the plaintiffs in the two cases are in substantially different positions. The Doe/SEIU
28 plaintiffs are individual HIV patients or third party payors who purchase or reimburse for HIV

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641      - 6 -

1  drugs manufactured by pharmaceutical companies.  GSK, like Abbott, is a pharmaceutical
2  company that sells HIV drugs.  The differences between GSK (a pharmaceutical company that
3  sells HIV drugs) and the DOE/SEIU plaintiffs (HIV patients and third party payors who pay or
4  reimburse for HIV drugs) are striking and would likely cause confusion.

5      Second, there also are substantial differences in their claims and damages.  GSK seeks
6  damages, trebled, in the form of alleged lost profits for its HIV drug, Lexiva.  Plaintiffs in
7  Doe/SEIU seek damages in the form of the alleged overcharge for Norvir.  GSK is a competitor
8  who took an express license from Abbott on the three patents that Abbott asserts protect its alleged
9  conduct, whereas Doe/SEIU allege that Abbott has granted implied licenses that strip Abbott of its
10 patent protections.  GSK alleges three state law claims (breach of the covenant of good faith and
11 fair dealing, violation of North Carolina's Unfair Trade Practices Act, and violation of North
12 Carolina's Antitrust Statute), which are different than Doe/SEIU's state law claims (violation of
13 California's Unfair Competition Law and unjust enrichment).  The differences between the
14 parties' claims and damages may require unique proof and additional substantial discovery in the
15 GSK case.

16     Third, the schedule proposed by GSK is simply unworkable and unfair to Abbott.  GSK
17 seeks the benefit of consolidation without its compromises.  After years of litigation, fact
18 discovery closed in the Doe/SEIU case more than six months ago (on June 1, 2007).  Expert
19 discovery is scheduled to close on December 21, 2007 and dispositive motions, including claim
20 construction issues, will be briefed starting on January 9, 2008.  GSK's position that the parties
21 can replicate years of fact discovery, exchange new written discovery, depose new witnesses,
22 complete new expert discovery, and brief and argue at least two dispositive motions in a matter of
23 months and then prepare for and try this case in October 2008 is unworkable.

24     In short, Abbott opposes consolidation of the GSK and Doe/SEIU cases and proposes that
25 this case – should it remain in this Court after Abbott's venue motion is litigated – and follow a
26 more standard case schedule, set forth below:

27
28

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641                                      - 7 -

| Abbott Proposed Date | Event |
|---|---|
| **November 27, 2007** | Rule 26(f) Conference Completed |
| **December 4, 2007** | Joint Case Management Statement Due |
| **December 11, 2007** | Initial Case Management Conference |
| **November 7, 2008** | Fact Discovery Cut-off |
| **February 13, 2009** | Opening Expert Reports Due |
| **April 11, 2009** | Rebuttal Expert Reports Due |
| **May 30, 2009** | Expert Discovery Completed |
| **TBD** | Dispositive Motions Due |
| **TBD** | Oppositions to Dispositive Motions to be filed |
| **TBD** | Replies to Dispositive Motions to be filed |
| **TBD** | Hearing on Dispositive Motions |
| **TBD** | Final pre-trial conference |
| **TBD** | Jury Trial |

Even if the cases are consolidated, Abbott submits that the Court should follow this schedule for all the reasons articulated above, including the need to resolve Abbott's Rule 12(b)(6) and venue motions, the need to account for the differences between the current plaintiffs and the new joined party or parties, the need for extensive new fact and expert discovery, the potential need for new class certification briefing and hearing if the other, recently filed class actions are joined, the potential for myriad new discovery disputes and motions, the potential for scheduling conflicts given the potential that a multitude of new counsel and witnesses will become involved in this litigation, etc.

GSK's Proposed Schedule

This Court expressly requested that the parties' discovery plan "take into account the possible consolidation of this case with Case No. 04-1511 and Case No. 07-5470." Abbott proposes the same schedule regardless of whether the Court elects to consolidate these cases, which is not how GSK interprets the Court's direction. GSK's proposed schedule, set out below,

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641                                      - 8 -

assumes the case is consolidated with the related matter, *Doe 1 et. al v. Abbott Laboratories*, Case No. 04-1511.  While GSK does not believe it is logistically possible to keep the trial date in that case while completing necessary discovery in this case, GSK proposes pushing the trial date in the *Doe* matter back by only four months.  While the parties will need to work together effectively to meet this schedule, GSK believes that its proposed schedule is workable and fair – taking advantage of discovery already conducted in the related case and streamlining discovery in this case.

Further, GSK notes that this case and the related case are substantially similar.  These cases both assert claims under Section 2 of the Sherman Act based on similar facts and theories.  Further, GSK's additional claims arise from the same set of facts giving rise to the Sherman Act claim.  For example, GSK's breach of contract claim is derived from the license between GSK and Abbott that forms the basis of the *Doe* and *SEIU* plaintiff's implied license argument.  If the Court elects to consolidate this case with Case No. 04-1511 and Case No. 07-5470, GSK proposes that it adopt the following schedule:

| GSK Proposed Date | Event |
| --- | --- |
| **November 27, 2007** | Rule 26(f) Conference Completed |
| **December 4, 2007** | Joint Case Management Statement Due |
| **December 11, 2007** | Initial Case Management Conference |
| **December 18, 2007** | Abbott and Plaintiffs give GSK all pleadings, discovery requests and responses, documents, deposition transcripts and exhibits, expert reports and other discovery provided or taken in Case No. 04-1551. |
| **January 11, 2008** | Initial Disclosures Due |
| **February 28, 2008** | New document productions by GSK and Abbott to be substantially completed. |
| **March 6, 2008** | Percipient Witness Depositions Commence |
| **April 30, 2008** | Fact Discovery Cut-off |
| **June 2, 2008** | Opening Expert Reports Due |
| **June 30, 2008** | Rebuttal Expert Reports Due |

| GSK Proposed Date | Event |
|---|---|
| **July 25, 2008** | Expert Discovery Completed |
| **August 1, 2008** | Dispositive Motions Due |
| **August 28, 2008** | Oppositions to Dispositive Motions to be filed |
| **September 11, 2008** | Replies to Dispositive Motions to be filed |
| **September 25, 2008** | Hearing on Dispositive Motions |
| **October 7, 2008** | Final pre-trial conference |
| **October 20, 2008** | Jury Trial |

**18.    Trial**

GSK has requested a jury trial. The parties are unable to estimate the length of trial at this time; currently it is unclear how many parties will participate and what claims will be tried.

**19.    Disclosure of Non-Party Interested Entities Or Persons**

GSK filed a Certification of Interested Entities and Parties on November 13, 2007, which states as follows:

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associates of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

  GlaxoSmithKline Holdings (Americas) Inc.    Sole shareholder    Financial Interest

  GlaxoSmithKline plc                          Parent Corporation  Financial Interest

Abbott Laboratories certifies that there are no parties, other than Abbott Laboratories, that have a direct, pecuniary interest in the outcome of this case.

**20.    Applicability of Patent Local Rules**

<u>Abbott</u>

Abbott believes that GSK's alleged antitrust claim necessarily depends on the resolution of Abbott's patent rights. Therefore, Abbott believes that this Court's Patent Local Rules should

1 apply to this action to facilitate the just, speedy, and inexpensive disposition of all patent-related
2 matters in this case.  For example, pursuant to Patent L.R. 3-5(a), Abbott proposes that no later
3 than 10 days after Abbott serves its answer, or 10 days after the Initial Case Management
4 Conference, whichever is later, GSK shall serve upon Abbott (i) a certification that GSK is not
5 challenging the validity of Abbott's patents in the relevant markets or (ii) a letter setting forth and
6 acknowledging the patent numbers that GSK is challenging, Preliminary Invalidity Contentions
7 that conform to Patent L.R. 3-3, and the documents described in Patent L.R. 3-4.  Moreover, to the
8 extent that claim construction becomes an issue, Patent Local Rule 4 should apply.

9      <u>GSK</u>

10      GSK does not believe the Patent Local Rules apply in this case.  First, this is an antitrust,
11 breach of contract and unfair business practices matter, not a patent matter; thus, by their own
12 terms the Patent Local Rules do not apply.  Patent L.R. 1-2.  Second, patent immunity – if relevant
13 at all to GSK's antitrust claims – is a defense, which Abbott must raise in its answer and for which
14 it has the burden of proof.  Setting a schedule that would force GSK to serve Preliminary
15 Invalidity Contentions or certify it will not contest the validity of Abbott's patents before Abbott
16 has even raised this defense, disclosed what patents it will rely upon or offered any discovery
17 whatsoever on this issue is unreasonable and premature.   Finally, as Abbott is well aware, it
18 granted GSK and at least four others an express license that allows GSK and the other licensees to
19 do what Abbott claims its patents involving Norvir prevent.  Thus, if Abbott does assert an
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1 immunity defense based on those patents, GSK would almost certainly challenge that defense by
2 way of motion under Rule 12.

3 December 4, 2007               /s/ Alexander F. Wiles
                                Alexander F. Wiles

IRELL & MANELLA LLP
ARNOLD & PORTER LLP

Attorneys for Plaintiff
GlaxosmithKline


8 December 4, 2007               /s/ Samuel S. Park
                                James F. Hurst
                                David J. Doyle
                                Samuel S. Park
                                Nicole M. Norris
                                WINSTON & STRAWN LLP

Attorneys for Defendant
Abbott Laboratories

JOINT CASE MANAGEMENT STATEMENT
Case No. C 07-5702 CW
1789641
- 12 -

## **SIGNATURE ATTESTATION**

I, Trevor V. Stockinger, am the ECF User whose ID and password was used to file this Joint Case Management Statement. In compliance with General Order 45 ¶ X.B., I hereby attest that Samuel S. Park, counsel for Abbott, concurred in this filing.

                                         /s/ Trevor V. Stockinger
                                            Trevor V. Stockinger