1  Nicole M. Norris (SBN 222785)
   WINSTON & STRAWN LLP
2  101 California Street, Suite 3900
   San Francisco, CA 94111-5894
3  Telephone:   415-591-1000
   Facsimile:   415-591-1400
4  Email: nnorris@winston.com

5  James F. Hurst (*Admitted Pro Hac Vice*)
   David J. Doyle (*Admitted Pro Hac Vice*)
6  Samuel S. Park (*Admitted Pro Hac Vice*)
   WINSTON & STRAWN LLP
7  35 W. Wacker Drive
   Chicago, IL 60601-9703
8  Telephone:   312-558-5600
   Facsimile:   312-558-5700
9  Email: jhurst@winston.com; ddoyle@winston.com;
   spark@winston.com
10
   Attorneys for Defendant
11 ABBOTT LABORATORIES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| SMITHKLINE BEECHEM CORPORATION, d/b/a GLAXOSMITHKLINE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>　　　　Defendant. | Case No. C 07-5702 CW<br><br>*Related per November 19, 2007 Order to*<br><br>Case No. C-04-1511 CW<br><br>**NOTICE OF MOTION AND MOTION OF ABBOTT LABORATORIES' TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>**Date:**　　February 21, 2008<br>**Time:**　　2:00 p.m.<br>**Courtroom:**　2 (4th Floor)<br>**Judge:**　　Hon. Claudia Wilken |

Abbott Laboratories' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)
Case No. C-07-5702 CW

**TABLE OF CONTENTS**

I. NOTICE OF MOTION ..................................................................................................... 1

II. INTRODUCTION ............................................................................................................. 1

III. STATEMENT OF FACTS ................................................................................................ 3

IV. ARGUMENT .................................................................................................................... 5

    A. This Action Could Have Been Brought In The Northern District Of Illinois ............... 6

    B. The Convenience Factors Clearly Favor Transfer To Illinois. ..................................... 6

    C. The Interests Of Justice Also Favor Transfer To Illinois ............................................. 9

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arley v. United Pac. Insurance Co.*,
  379 F.2d 183 (9th Cir. 1969) .................................................................................. 6, 7

*Chemi Spa v. GlaxoSmithKline*,
  No. 04-4545, 2004 U.S. Dist. LEXIS 25335 (D. Pa. Nov. 24, 2004) .................. 10, 11

*Dennison v. Metropolitan Life Insurance Co.*,
  No. C-07-0796-MMC, 2007 WL 2221055 (N.D. Cal. Aug. 1, 2007)...................... 7, 8

*Devaughn v. Inphonic, Inc.*,
  403 F. Supp. 2d 68 (D.D.C. 2005) ................................................................................ 9

*Eye Laser Care Center, LLC v. MDTV Medical News Now*,
  No. 03CV371-BEN, 2007 WL 2873782 (S.D. Cal. Sept. 28, 2007) ........................... 7

*Gerin v. Aegon USA, Inc.*,
  No. C 06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)........................... 10

*Gintz v. Jack in the Box, Inc.*,
  No. C06-02857, 2007 WL 397306 (N.D. Cal. Feb. 1, 2007) ................................. 6, 8

*Gundle Lining Const. Corp. v. Fireman's Fund Insurance Co.*,
  844 F. Supp. 1163 (S.D. Tex. 1994)............................................................................ 8

*Harms v. Experian Information Solutions, Inc.*,
  No. C 07-0697, 2007 WL 1430085 (N.D. Cal. May 14, 2007) ........................... 8, 10

*Hatch v. Reliance Insurance Co.*,
  758 F.2d 409 (9th Cir.1985) ........................................................................................ 5

*Hernandez v. Graebel Van Lines*,
  761 F. Supp. 983 (E.D.N.Y. 1991).............................................................................. 8

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ............................................................................... 5, 6, 7

*London and Hull Maritime Insurance Co. v. Eagle Pacific Insurance Co.*,
  No. C 96-01512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ........................... 8

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ....................................................................................... 8

*Raynes v. Davis*,
  No. CV 05-6740 ABC, 2007 WL 4145102 (C.D. Cal. Nov. 19, 2007) ....................... 9

*Schor v. Abbott Laboratories*,
  457 F.3d 608 (7th Cir. 2006) ....................................................................................... 4

*Smithkline Beecham Corp. v. Geneva Pharms., Inc.*,
  No. 99-CV-2926, 2000 U.S. Dist. LEXIS 1818 (D. Pa. Feb. 11, 2000) .................... 11

*Steelcase Inc. v. Smart Techs.*,
    336 F. Supp. 2d 714 (W.D. Mich. 2004) ................................................................... 8

**FEDERAL STATUTES**

28 U.S.C. § 1391(b) .................................................................................................... 6

28 U.S.C. § 1404(a) .............................................................................................. *passim*

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

## I. NOTICE OF MOTION

### TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 21, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, defendant Abbott Laboratories will move this Court pursuant to 28 U.S.C. § 1404(a) to transfer the case filed by Plaintiff SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") on November 7, 2007 to the Northern District of Illinois. This motion is supported by the accompanying Memorandum of Points and Authorities, the Declarations of Nicole M. Norris and John Poulos in support of Abbott Laboratories' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), pleadings and documents on file with the Court, and such other argument or evidence as may be presented at the hearing on the motion.

## II. INTRODUCTION

This case should be transferred to the North District of Illinois, where it belongs. In an obvious effort to forum shop, GlaxoSmithKline, a *North Carolina* company incorporated in *Pennsylvania*, has sued Abbott Laboratories, an *Illinois* company incorporated in *Illinois*, thousands of miles from home relating to conduct occurring in *Illinois* and an agreement negotiated in *Illinois* governed by *New York* law. None of the parties, evidence, or witnesses are located in this judicial district or, for that matter, anywhere west of the Mississippi. And none of the alleged harm to GSK occurred here either. Accordingly, the Court should transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

The Northern District of Illinois is a logical and more convenient forum for resolving the parties' dispute. Under section 1404(a), courts look to three primary factors to determine whether transfer is appropriate: 1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interests of justice. The first two factors weigh strongly in favor of transfer. Every potential witness likely resides in either Illinois (Abbott's home), North Carolina (GSK's home), or in Pennsylvania (GSK's state of incorporation). That's where the relevant documents are located, too. And the sole conduct at issue in GSK's federal antitrust claim – Abbott's pricing of its HIV drugs –

occurred in Illinois, by Illinois employees, regarding drugs developed in Illinois. Similarly, the disputed contract at issue in GSK's state-law claims was negotiated in Illinois. This case, in short, has nothing to do with California. Thus, the convenience factors overwhelmingly favor transfer.

The interests of justice also support transfer, particularly because Illinois has a much greater interest in this dispute than California. The only possible connection between GSK's claims and this district is the other Norvir-related lawsuits pending before this Court. But placing separate cases before a single judge is a matter for the multi-district panel, not something that should overcome a transfer motion when there is literally no connection between this case and California, and several other reasons compel transfer as well.

First, keeping this case in a district where it so clearly does not belong will provide no meaningful gain in efficiencies. Fact discovery in the related Doe/SEIU action has ended after more than three years of litigation, and expert discovery is within days of completion. As a result, discovery in this matter cannot be consolidated with the Doe/SEIU case. Without that possible efficiency, both this Court and the Northern District of Illinois are similarly situated – both are familiar with the facts and law pertaining to GSK's Sherman Act claim. As this Court is aware, a case nearly identical to Doe/SEIU was litigated to completion in the Northern District of Illinois and appealed to the Seventh Circuit.

Second, there are several new and unique aspects to this case that distinguish it from Doe/SEIU, including a new type of plaintiff (a competitor instead of a purchaser), a new damages theory (lost profits instead of drug "overcharges") and brand new state-law causes of action that will be governed by North Carolina and New York law. These novel facts and theories will not overlap with Doe/SEIU or any of the more recently filed, Norvir-related actions, some of which Abbott also intends to seek to transfer to a more appropriate forum.

Finally, allowing GSK to engage in this type of blatant forum shopping would set a dangerous precedent. GSK sat on its rights for nearly four years. Then, just prior to the expiration of the statute of limitations, and shortly before the trial date for the earlier-filed suits, GSK filed this action containing similar antitrust allegations as well as brand new facts and legal claims. If GSK's case is allowed to delay and complicate the Doe/SEIU case in any way, this would not be a "just"

2

result for anyone. Further, it would encourage other litigants to employ the same improper maneuvering – delay filing suit until the last possible minute; wait until courts in multiple jurisdictions have made dispositive rulings; then sue in the eleventh hour in the court most receptive to your claim, in complete disregard for the convenience of the parties and witnesses.

This is not what is contemplated by the federal rules. Because this case lacks any connection to California whatsoever, and all of the section 1404(a) factors weigh strongly in favor of transfer, the Court should transfer this action to the Northern District of Illinois.

### III.  STATEMENT OF FACTS

Neither of the parties in this lawsuit are California corporations. GSK is a Pennsylvania corporation with its principal places of business in Pennsylvania and North Carolina. (Compl. ¶ 5). GSK's "North Carolina locations are the base for the Company's research and development facilities and commercial operations in the HIV/AIDS area." (*Id.*). Abbott Laboratories is an Illinois corporation with its principal place of business in Illinois. (*Id.* ¶ 6). Although Abbott has facilities in California (and many other states), none of its pharmaceutical products operations, including its research, development and HIV drug operations, are located in California. (*Id.*; *see also* www.abbott.us).

GSK and Abbott are competitors in the HIV pharmaceutical drug market. (*Id.* ¶¶ 5-6). GSK has the most HIV drugs in the U.S. HIV market, marketing seven of the twenty-seven HIV drugs presently available. (www.aidsmed.org). Abbott, on the other hand, markets only two HIV drugs – Norvir and Kaletra. (Compl. ¶ 5). In 2002, GSK and Abbott entered into a license agreement, which generally permits GSK to promote the use of Norvir to boost the efficacy of Lexiva, an HIV drug manufactured by GSK. (*Id.* ¶¶ 2, 20-21). The license agreement was negotiated by Abbott out of its headquarters in Illinois with GSK employees located in North Carolina and Pennsylvania. (J. Poulos Declaration ¶¶ 4-5). No negotiations took place in California, and no California residents were involved in the negotiations. (*Id.* ¶ 5). The agreement was signed by Abbott in Illinois and GSK in Philadelphia, Pennsylvania. (*Id.* ¶ 6).

The alleged harm in this case also did not take place in California. In its complaint, GSK explicitly states that it "has been harmed in North Carolina" by Abbott's purported misconduct in

3

raising the price of a patented drug. (Compl. ¶ 5). On December 3, 2003, over a year after entering into a license agreement with GSK, Abbott raised the price of Norvir from $1.71 to $8.57 at its most common daily dose of 100 milligrams. The license agreement says nothing about the pricing of either Norvir or Lexiva and leaves pricing decisions to the discretion of each company. Indeed, any alleged "agreement" on pricing would have been a *per se* violation of the Sherman Act. Thus, GSK surely does not mean to suggest that GSK and Abbott somehow agreed on the price for Norvir.

Although GSK complains about Abbott's price increase, GSK itself has raised the price of Lexiva *five* times since December 2003. At its daily recommended dosage of four tablets for a stand-alone drug, Lexiva cost $32 per day in December 2003. Now, it costs $40.80, an increase of nearly *$9 per day* – substantially more than Norvir's increase of $6.86 that GSK is now complaining about. (J. Poulos Declaration ¶ 7).

After waiting nearly four years, GSK now claims that Abbott's price increase on Norvir caused GSK's poor performance in the "boosted market." (Compl. ¶ 40). GSK also alleges that Abbott breached an implied covenant of good faith and fair dealing associated with the license agreement between GSK and Abbott. (*Id.* ¶¶ 63-66). In addition, GSK has brought claims against Abbott for alleged violations of North Carolina's antitrust and unfair competition statutes. (*Id.* ¶¶ 67-76).

As this Court is aware, this is not the first time Abbott has been sued relating to Norvir's price increase. Abbott previously was sued in the Northern District of Illinois in *Schor v. Abbott Laboratories*, 05-C-1592 (N.D. Ill. 2005) and in Illinois state court in *Gingreau v. Abbott Laboratories*, No. 04-CH-8202 (Cook County, Illinois 2004). Those cases were resolved in Abbott's favor on the pleadings. *See, e.g., Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006). Abbott also was sued in this Court in 2004 by two individual class representatives (one of whom was dismissed) and a third-party payor (SEIU) and, more recently, by several pharmacies and drug wholesalers.

In addition to having no connection to California, GSK stands out as uniquely different from the other plaintiffs that have sued Abbott in this forum. GSK is the second-largest pharmaceutical company in the world and makes a substantial amount of revenue from its sales of HIV drugs to the

4

other plaintiffs in the related cases. (*E.g.*, Compl. ¶ 13). During the first half of 2007 alone, GSK made more than $650 million on HIV drugs. (www.gsk.com/investors). As a competitor and marketer of HIV drugs, GSK never has purchased Norvir or Kaletra from Abbott, and, thus, has not paid any alleged overcharge as a result of the Norvir price increase. Rather, GSK alleges an entirely different theory – that consumers refrained from purchasing Norvir in combination with GSK's HIV drug, Lexiva, causing GSK to lose sales in the Boosted Market. (Compl. ¶ 45). By it's own admission, GSK's "injuries are unique and are in addition to, not duplicative or derivative of, any injuries suffered by its competitors or by consumers." (*Id.* ¶ 49).

GSK also is the only plaintiff in this forum that expressly has acknowledged Abbott's patent rights in the Boosted Market. GSK acknowledged those rights by negotiating a license from Abbott, which gave GSK the right to promote the use and administration of its PIs with Norvir as a booster. (*Id.* ¶¶ 20-21). Thus, there is no dispute about the scope and validity of Abbott's underlying patent rights, which forms a substantial portion of the dispute between Abbott and Doe/SEIU. Finally, GSK is the only party that seeks to bring unique, state-law causes of action that have nothing to do with the forum state's laws. (Compl. ¶¶ 62-76). As a result, GSK's complaint raises several new factual and legal issues that are not present in the prior-filed suits.

## IV. ARGUMENT

"For the convenience of the parties and witnesses, [and] in the interest of justice," this Court should transfer GSK's lawsuit to the Northern District of Illinois. 28 U.S.C. § 1404(a). Determining whether an action should be transferred is a two-step analysis. First, the Court must decide whether GSK's action "might have been brought" in the Northern District of Illinois. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir.1985). If so, then the Court must make an "individualized, case-by-case determination of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In making this second determination, courts must consider three main factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir. 1969). In evaluating these factors, courts may look at the following: (1) the location where the relevant agreements were negotiated and

executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498-99.

Here, as the following analysis shows, this action "could have been" brought in the Northern District of Illinois, and all of the section 1404(a) factors weigh heavily in favor of transferring this lawsuit to the North District of Illinois.

### A.  This Action Could Have Been Brought In The Northern District Of Illinois.

As a threshold matter, GSK cannot dispute that this action could have been brought in the Northern District of Illinois. 28 U.S.C. § 1404(a). "In civil cases where jurisdiction is based on federal question, venue is proper in: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.'" *Gintz v. Jack in the Box, Inc.*, No. C06-02857, 2007 WL 397306, at *2 (N.D. Cal. Feb. 1, 2007) (quoting 28 U.S.C. § 1391(b)).

Abbott, the only defendant in this case, resides in the Northern District of Illinois, making venue proper there. (Compl. ¶ 6). Further, Abbott's pricing action originated and took place in the Northern District of Illinois, as did the 2002 negotiations of the license agreement at issue in this lawsuit. Therefore, GSK unquestionably could have brought this action in the Northern District of Illinois.

### B.  The Convenience Factors Clearly Favor Transfer To Illinois.

Not only *could* GSK have brought this action in Illinois, but it *should* have brought it there. Illinois is plainly a more convenient forum for resolving the parties' dispute. *Arley*, 379 F.2d at 185. Abbott's presence in Illinois, GSK's proximity to Illinois, the extensive Illinois contacts that give rise to this action, and the location of the witnesses and documents all weigh heavily in favor of transfer to the Northern District of Illinois. *Jones*, 211 F.3d at 498-99.

**First**, Illinois is a much more convenient forum for the parties because the parties have a stronger connection to Illinois than California. Abbott is an Illinois corporation with its principal place of business in Illinois. (Compl. ¶ 6). It is one of the largest companies in Illinois and employs thousands of Illinois residents in its Abbott Park, Illinois facilities. It conducts all of its domestic HIV pharmaceutical operations out of its Illinois facility. (J. Poulos Declaration ¶ 3). Norvir and Kaletra were invented and developed in Illinois, as confirmed by the cover of Abbott's patents listing Illinois inventors. (*Id.*). The plaintiff, GSK, although not an Illinois corporation, is a Pennsylvania corporation with its HIV operations substantially closer to Illinois than California. (Compl. ¶ 5). All of its HIV pharmaceutical research and development and most of its HIV operations are based out of North Carolina, which is thousands of miles closer to Illinois than California. Thus, Illinois is a more convenient forum for the parties than California. *See Dennison v. Metropolitan Life Ins. Co.*, No. C-07-0796-MMC, 2007 WL 2221055, *1 (N.D. Cal. Aug. 1, 2007) (transferring case to North Carolina because "all potentially relevant documentary evidence and witnesses are located in the Western District of North Carolina or, to the extent they may be found in other districts, *such other districts are significantly closer* to the Western District of North Carolina *than to this District*" (emphasis added)).

**Second**, the convenience of the witnesses and the sources of proof both strongly favor transferring this case to Illinois. *Jones*, 211 F.3d at 489-99. "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Eye Laser Care Center, LLC v. MDTV Med. News Now*, No. 03CV371-BEN, 2007 WL 2873782, *6 (S.D. Cal. Sept. 28, 2007) (internal quotation and alteration omitted). Here, all of GSK's claims – concerning the pricing of Abbott's HIV drugs and the parties' 2002 license agreement – arise from the parties' discussions and actions in Illinois, North Carolina, and Pennsylvania. All of GSK's alleged harm from Abbott's actions – lower than expected profits on Lexiva – *by GSK's own admission* occurred in North Carolina. (Compl. ¶ 5).

As a result, all potential witnesses and documents relevant to this action are located in Illinois, North Carolina or Pennsylvania – all far away from California and either in, or much closer to, Illinois. This is a compelling fact favoring transfer and, as noted, is "the most important factor in

7

the transfer analysis." *Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004); *accord London and Hull Maritime Ins. Co. v. Eagle Pacific Ins. Co.*, No. C 96-01512 CW, 1996 WL 479013, at *4 (N.D. Cal. Aug. 14, 1996) (granting transfer where none of the witnesses resided in California); *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (explaining that the convenience of the fact witnesses is the "most powerful factor governing the decision to transfer a case."); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) (noting that convenience of fact witnesses is "probably the single-most important factor in the analysis"). Therefore, the convenience of the witnesses and the sources of proof also strongly favor transfer to Illinois.

**Third**, the fact that GSK is a non-California corporation weighs in favor of transfer. GSK's "choice of the instant forum is not entitled to deference because none of the transactions giving rise to plaintiff's claims occurred in this District." *Dennison*, 2007 WL 2221055 at *1; *see also Gintz*, 2007 WL 397306, at *2 (explaining that "the plaintiff's choice of forum is entitled only minimal consideration" if the parties or the cause of action has little to do with the chosen forum) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

Moreover, Courts "may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping." *Harms v. Experian Info. Solutions, Inc.*, No. C 07-0697 2007 WL 1430085, at *3 (N.D. Cal. May 14, 2007). Here, GSK's lawsuit is the epitome of forum shopping. None of the operative facts occurred in the Northern District of California, Abbott's alleged anti-competitive conduct took place entirely in Illinois, the contract in question was negotiated in Illinois and Pennsylvania, and GSK's alleged harm occurred in North Carolina. Under these circumstances, GSK's choice of forum is not entitled to any deference whatsoever.

In short, GSK has no legitimate basis for trying to bootstrap its claim of corporate lost profits as an Abbott competitor to a claim for alleged drug overcharges by an HIV patient in California. When one considers the convenience of the parties, the location of the alleged harm, the location of the documents and evidence, and the convenience of all potential fact witnesses in this case, GSK's lawsuit plainly should be transferred to the Northern District of Illinois. *Raynes v. Davis,* No. CV 05-6740 ABC, 2007 WL 4145102, *3 (C.D. Cal. Nov. 19, 2007).

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**C.     The Interests Of Justice Also Favor Transfer To Illinois.**

In addition to the decidedly lopsided result of the convenience analysis, the interests of justice also weigh strongly in favor of transferring this case to Illinois.

**First**, Illinois has a greater connection to, and interest in, resolving this controversy. Not only did the allegedly illegal actions take place in Illinois, but the accused defendant is a large Illinois corporation whose thousands of employees in the pharmaceutical division work in that state. In stark contrast, GSK and its cause of action have very little connection with California. None of GSK's employees involved in researching and developing Lexiva or negotiating the disputed license agreement reside in this forum. GSK's allegedly harmed product is not manufactured in California, and the alleged loss in profits supposedly injured GSK in North Carolina. The interests of justice strongly favor adjudicating this controversy where it has at least some local connection – in Illinois. *See, e.g.*, *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 74 (D.D.C. 2005) (holding that Maryland was the preferred forum where the cause of action occurred in Maryland).

**Second**, transferring this case to Illinois would serve the strong public and judicial interest of discouraging forum shopping. GSK delayed nearly four years before bringing this lawsuit. In internal business documents dated February 2004, GSK openly discussed the impact of the Norvir price increase. *See* Declaration of Nicole Norris, Ex. A, at GSK00559. Yet, rather than sue, it sat back and employed a wait-and-see strategy designed to leverage the early success of some other litigant. This is improper.

The fair and just resolution of cases should not hinge on a party's strategy to choose one jurisdiction over another. This type of forum shopping leads to the worst possible jurisdictional manipulations and an increase in this Court's already overloaded docket. It also threatens to delay the prompt resolution of cases that truly deserve to be litigated in this forum. Thus, "while transferring this case to the [Northern District of Illinois] will not actually reduce the current multiplicity of cases relating to the underlying transaction, it serves the interests of justice in that it will discourage forum-shopping…." *Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL 1033472, at *7 (N.D. Cal. Apr. 4, 2007). Because the only real link between this forum and GSK's lawsuit is the existence of related cases here, GSK's forum shopping is transparent. It should not be

9

countenanced by this Court. *Harms*, 2007 WL 1430085, at *3 (noting that courts should discourage forum shopping).

**Third**, transferring this case to Illinois would not result in any judicial inefficiencies and, in fact, would promote the efficient resolution of the Doe/SEIU case that is already pending before this Court. Courts do not generally gain any efficiencies by keeping cases together where the lawsuits: (i) are at substantially different stages of litigation; (ii) involve different parties in different situations; and (iii) require substantially different evidentiary proof or theories.

For example, in another case involving GSK – *Chemi Spa v. GlaxoSmithKline*, No. 04-4545, 2004 U.S. Dist. LEXIS 25335 (D. Pa. November 24, 2004) – a Pennsylvania district court refused to transfer a case against GSK to a district where several substantively related cases were pending because it would not result in any judicial inefficiencies. The plaintiff's case was similar to other cases that had been consolidated and were pending in Massachusetts. As in the Massachusetts cases, the plaintiff alleged that GSK fraudulently obtained a patent and engaged in sham litigation for the purpose of maintaining its monopoly over the pharmaceutical drug, nabumetone (Relafen). Seeking to bring the plaintiff's case to Massachusetts, GSK argued that "the interest of justice clearly favors transfer in this action because it is identical to the actions already litigated before Judge Young [in Massachusetts], who is familiar with the complex questions of law and science that underlie Chemi's claims." *Id.* at *10. GSK further argued that "transfer to the District of Massachusetts will avoid duplicative litigation and promote judicial economy and efficiency." *Id.*

The Pennsylvania court, however, rejected GSK's argument. The court reasoned, first, that while "Judge Young issued four published opinions in these actions" and took time to get to know the facts, the Massachusetts cases were at a substantially different stage of litigation than the later-filed case. Because discovery no longer was proceeding in those cases, no judicial economy would be achieved by bringing the cases together. *Id.*; *see also Smithkline Beecham Corp. v. Geneva Pharms., Inc.*, No. 99-CV-2926, 2000 U.S. Dist. LEXIS 1818 (D. Pa. February 11, 2000) ("Discovery in the Illinois Action has been completed, thus diminishing the possibility of consolidation or coordination to promote judicial economy."). Second, the related cases were substantively different because "[t]he action in this court seeks recovery of damages resulting from

10

Chemi's foreclosure from the American market for nabumetone. In contrast, the actions in Massachusetts in which proposed settlements are pending involve suits by purchasers of nabumetone seeking compensation for overcharges that resulted from GSK's purported antitrust violations." *Chemi Spa*, 2004 U.S. Dist. LEXIS 25335, at *10 (emphasis added).

The case at bar presents the same compelling reasons for litigating factually related cases in separate courts. First, as in *Chemi Spa*, there are no judicial economies to be gained by merging the GSK case with the Doe/SEIU case because fact discovery has ended in Doe/SEIU after more than three years of litigation, and expert discovery is about to close. Thus, there is no possibility of consolidating discovery with the Doe/SEIU case. Whether in this Court or in the Northern District of Illinois, the parties will have to engage in new discovery, depositions, and motion practice. Second, also as in *Chemi Spa*, the cases are uniquely different because GSK is a competitor seeking damages for alleged lost profits in the Boosted Market, whereas the other plaintiffs are Norvir purchasers seeking reimbursement for alleged drug overcharges.

In addition, transfer is even more compelling here than in *Chemi Spa* because GSK's complaint alleges three brand new causes of action and contains unique factual allegations. In addition to alleging a substantively different antitrust claim, GSK alleges three unique state-law claims – breach of the implied covenant of good faith and fair dealing (which is governed by New York law) and violations of North Carolina's Unfair Trade Practices Act and North Carolina's Antitrust Statute – that will require new applications of law and fact. Moreover, GSK, unlike the other plaintiffs, has recognized (and paid for) Abbott's patent rights in the Boosted Market. GSK took an express license from Abbott on the three patents that Abbott asserts protect its alleged conduct in the Doe/SEIU case, whereas the other plaintiffs *dispute* Abbott's patent rights in that market. Thus, the patent issues that have formed a substantial basis for litigation in the indirect purchaser action will not be at issue in the GSK case.

In sum, a transfer to the Northern District of Illinois would further the interests of justice and promote the efficient adjudication of the Doe/SEIU case. Transferring the GSK case to an obviously more convenient forum would eliminate the need to address complex considerations relating to consolidation and allow the Doe/SEIU case to proceed to trial as scheduled in June 2008. The

transferee forum is familiar with the conduct alleged here and already has examined the antitrust claims in GSK's complaint. Thus, the Northern District of Illinois is equally equipped to adjudicate the antitrust component of the case and is in no worse situation to address GSK's state-law claims governed by New York and North Carolina law. Based on all of the above factors, the Court should transfer this case where it really belongs – to the North District of Illinois.

## V. CONCLUSION

For the foregoing reasons, Abbott respectfully requests that this action be transferred to the Northern District of Illinois.

Dated: December 11, 2007     WINSTON & STRAWN LLP

By:  /s/ James F. Hurst
     Attorneys for Defendant
     ABBOTT LABORATORIES