Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone:  415-591-1000
Facsimile:  415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:  312-558-5600
Facsimile:  312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com; spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20007
Telephone:  202-282-5000
Facsimile:  202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE,<br><br>Plaintiff,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant.<br><br>[caption continues next page] | **Case No. C 07-5702 CW**<br><br>*Related Per November 19, 2007 Order to Case No. C 04-1511 CW*<br><br>**NOTICE OF MOTION AND OMNIBUS MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date:  March 6, 2008<br>Time:  2:00 p.m.<br>Courtroom:  2 (4th Floor)<br>Judge:  Hon. Claudia Wilken |

<div style="font-size:small">Winston & Strawn LLP<br>35 W. Wacker Drive<br>Chicago, IL 60601-9703</div>

| | |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP,<br><br>    Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | **No. C 07-5470 CW**<br><br>*Related Per October 31, 2007 Order to Case No. C 04-1511 CW*<br><br>**NOTICE OF MOTION AND OMNIBUS MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date: March 6, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge: Hon. Claudia Wilken |
| RITE AID CORPORATION; RITE AID HDQTRS, CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC. d/b/a BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; and CAREMARK, L.L.C.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | **No. C 07-6120 CW**<br><br>*Related Per December 5, 2007 Order to Case No. C 04-1511 CW*<br><br>**NOTICE OF MOTION AND OMNIBUS MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date: March 6, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge: Hon. Claudia Wilken |

# TABLE OF CONTENTS

**Page**

    A.    Under *Cascade*, Pricing Actions In The Context Of Bundled Discounts Qualify As Exclusionary Conduct Only When The Defendant Engages In Below-Cost Pricing 5 ............................................................................................... i

    B.    Plaintiffs Allege A Bundled Discounting Theory Of Exclusion Controlled By *Cascade* 7 .................................................................................................. i

    C.    Plaintiffs Have Failed To Allege Below-Cost Pricing And, Thus, Their Complaints Fail To State A Sherman Act Claim Under Cascade 9 .............................. i

**NOTICE OF MOTION** ............................................................................................... 1

**INTRODUCTION** ........................................................................................................ 1

**STANDARD OF REVIEW** ......................................................................................... 4

**ARGUMENT** ............................................................................................................... 4

**CONCLUSION** ......................................................................................................... 13

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT ................................................................................................................... 4

    I.    The Complaints Fail to State A Claim Under *Cascade* ..................................... 5

        A.    Under *Cascade*, Pricing Actions In The Context Of Bundled Discounts Qualify As Exclusionary Conduct Only When The Defendant Engages In Below-Cost Pricing ............................................. 5

        B.    Plaintiffs Allege A Bundled Discounting Theory Of Exclusion Controlled By *Cascade* ............................................................................ 7

        C.    Plaintiffs Have Failed To Allege Below-Cost Pricing And, Thus, Their Complaints Fail To State A Sherman Act Claim Under Cascade ................................................................................................. 9

    II.    The Ninth Circuit's Decision in *Kodak* Cannot Salvage Plaintiffs' Sherman Act Claims In Light Of *Cascade* ........................................................ 10

    III.    The Scope Of Abbott's Patent Protection Under The Patent Laws Is Governed By Federal Circuit Precedent, Which Has Rejected Plaintiffs' Patent-Monopoly Leveraging Theory ............................................................... 12

CONCLUSION .............................................................................................................. 13

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

i

NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991) ..................................................................................................8

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)............................................................................................................4

*Brooke Group Ltd. v. Brown v. Williamson Tobacco Corp.*,
  509 U.S. 209 (1993).....................................................................................................6, 7, 10

*Cascade Health Solutions v. PeaceHealth*,
  502 F.3d 895 (9th Cir. 2007) ........................................................................................ passim

*Christianson v. Colt Indus. Operating Co.*,
  486 U.S. 800 (1988)..............................................................................................................12

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
  504 U.S. 451 (1992).......................................................................................................10, 11

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................................4

*Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002)...................................................................................................2, 3, 12

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ..................................................................................10, 11, 12

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  442 F. Supp. 2d 800 (N.D. Cal. 2006) ...................................................................................7

*In re Graphics Processing Units Antitrust Litig.*,
  No. C 06-07417 WHA, 2007 WL 2875686 (N.D. Cal. Sept. 27, 2007)..................................4

*In re Indep. Service Orgs. Antitrust Litig.*,
  203 F.3d 1322 (Fed. Cir. 2000)............................................................................................13

*Le Page's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003)...................................................................................................5

*Netflix, Inc. v. Blockbuster, Inc.*,
  477 F. Supp. 2d 1063 (N.D. Cal. 2007) ...............................................................................12

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

*Nobelpharma AB v. Implant Innovations*,
  141 F.3d 1059 (Fed. Cir. 1998)..................................................................................................12

*Unitherm Food Sys. v. Swifth-Eckrich*,
  375 F.3d 1371 (Fed. Cir. 2004).............................................................................................12, 13

*Verizon Communs. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004).......................................................................................................8, 9, 10

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  127 S. Ct. 1069 (2007).................................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 2, 4

iii

NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

# NOTICE OF MOTION
## TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 6, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, defendant Abbott Laboratories will move this Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims filed by:

- SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") in its Complaint filed on November 7, 2007;
- Safeway Inc., et al. in their Amended Complaint filed November 29, 2007; and
- Rite Aid Corporation, et al. in their complaint filed on December 3, 2007.

The plaintiffs in the GSK, Safeway, and Rite Aid cases are collectively referred to as "Plaintiffs."

This omnibus motion does not address the new allegations and claims set forth in the Consolidated Amended Complaint filed on January 11, 2008 by Meijer, Inc., et al., Rochester Drug Co-Operative, Inc., and Louisiana Wholesale Drug Company, Inc. The Meijer complaint, which was filed after this Court's December 17, 2007 Case Management Order, contains new and unique issues based on new allegations and a new antitrust theory not contained in the GSK, Safeway or Rite Aid complaints. Abbott does not believe these unique issues are suitable for resolution through an omnibus motion. Accordingly, Abbott addresses them separately in a motion to dismiss directed solely to the Meijer complaint.

## **INTRODUCTION**

Just four months ago, the Ninth Circuit rejected the very same antitrust theory Plaintiffs are pursuing in this Court. In *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007), the Ninth Circuit created a bright-line test for distinguishing between legal and illegal pricing decisions, holding that "in the normal case, above-cost pricing will not be considered exclusionary conduct for antitrust purposes." *Id.* at 912. This makes sense. By definition, exclusionary conduct unfairly "excludes" competitors from the marketplace. As long as a monopolist's prices are above

cost, however, competitors can remain in the marketplace simply by lowering their own prices while still earning a profit, just like the monopolist.

None of the Plaintiffs has alleged that Abbott Laboratories priced its HIV drugs below cost. Nor could they reasonably do so. Thus, they have failed to state a claim under Rule 12(b)(6), which the Meijer Plaintiffs tacitly concede by attempting – unsuccessfully – to allege below-cost pricing as explained in Abbott's separate motion to dismiss directed to their newly-revised Amended Complaint.

Like the original Doe and SEIU plaintiffs, the Plaintiffs in these present cases are pursing a monopoly leveraging theory. They contend Abbott monopolized a purported market for boosted protease inhibitors ("PIs") by raising the price of Norvir®, which is used to "boost" the activity of other PIs. Plaintiffs do not dispute, however, that Abbott had a legal right under the patent laws to raise Norvir's price. So, instead, they complain that Abbott charges a "much lower price" for Norvir's active ingredient when it is bundled with another PI in the form of Kaletra®. (Safeway Amend. Comp. ¶ 31; Rite Aid Compl. ¶ 42; GSK Compl. ¶ 1). According to Plaintiffs, Abbott's bundled discounting constitutes anti-competitive or exclusionary conduct in violation of the Sherman Act.

Without qualification, however, the Ninth Circuit in *Cascade* held that above-cost bundled discounting is never exclusionary conduct as a matter of law. *Cascade*, 502 F.3d at 913-14. It noted that "the Supreme Court has forcefully suggested that we should not condemn prices that are above some measure of incremental cost" and, thus, explained that "bundled discounts may not be considered exclusionary conduct . . . unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id*. at 911, 914. Because Plaintiffs do not allege that Abbott has engaged in below-cost pricing, they failed to state a claim for monopolization or attempted monopolization under section 2 of the Sherman Act.

Plaintiffs' references to Abbott's patents also warrant dismissal because their patent-monopoly leveraging allegations directly implicate federal patent law and, thus, the Federal Circuit has jurisdiction over this case. Federal Circuit jurisdiction exists where, as here, "the plaintiff's right

2

to relief necessarily depends on resolution of a substantial question of federal patent law." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (quotation omitted). By alleging a cause of action requiring proof of "leveraging" a patent monopoly "beyond" the legitimate scope of patent protection, Plaintiffs' complaints establish that their right to relief "necessarily depends on resolution of a substantial question of federal patent law" – *i.e.*, the scope of Abbott's patent protection. Thus, Federal Circuit law controls and, pursuant to its precedent, the Court should reject Plaintiffs' patent-monopoly leveraging theory.

## BACKGROUND

This omnibus motion addresses Sherman Act antitrust allegations brought by one of Abbott's competitors (GSK) as well as two chain pharmacies that sell Norvir and Kaletra. (GSK Compl. ¶ 2; Safeway Amend. Comp. ¶¶ 1-6; Rite Aid Compl. ¶¶ 1-4). These complaints purport to state claims under section 2 of the Sherman Act based on a patent-monopoly leveraging theory of antitrust liability. (Safeway Amend. Comp. ¶¶ 29-41; Rite Aid Compl. ¶¶ 40-52; GSK Compl. ¶¶ 54-62). GSK's complaint also includes three state law claims that Abbott addressed in its motion to dismiss the GSK complaint filed on January 24, 2008.

As the Court is aware, Norvir® is "a protease inhibitor ('PI') that is used to boost the therapeutic effects of other protease inhibitors," which are used to stop HIV's replication (Safeway Amend. Comp. at 1; Rite Aid Compl. ¶ 11; GSK Compl. ¶ 13). Abbott also sells Kaletra®, "a combination drug consisting of Norvir and another Abbott PI, whose chemical or generic name is lopinavir." (Safeway Amend. Comp. ¶ 12; Rite Aid Compl. ¶ 11; GSK Compl. ¶ 38).

Plaintiffs allege that there are two relevant antitrust markets: the "Boost*er* Market" (sometimes referred to as the "Boost*ing* Market") and the "Boost*ed* Market." (Safeway Amend. Comp. ¶ 25; Rite Aid Compl. ¶ 36; GSK Compl. ¶ 38). The Booster Market is a one-product market consisting solely of Norvir when used to boost the effects of PIs. (Safeway Amend. Comp. ¶ 25; Rite Aid Compl. ¶ 36; GSK Compl. ¶ 39). Plaintiffs do not dispute that Abbott, as the sole provider of patented Norvir, has a lawful patent monopoly over the Booster Market. So, instead, they focus on the Boosted Market, which "consists of Kaletra and a number of non-Abbott PIs, each of which is

3

NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

prescribed and used in conjunction with Norvir." (Safeway Amend. Comp. ¶ 25; Rite Aid Compl. ¶ 36; GSK Compl. ¶ 40). There currently are six non-Abbott PIs in that market – two of which have been introduced since Norvir's price increase.

Plaintiffs do not allege that Abbott has engaged in below-cost pricing. Instead, they allege that Abbott raised the wholesale price of Norvir in December 2003 from $1.71 to $8.57 for a 100 milligram capsule while, at the same time, not raising the price of Kaletra, which uses Norvir as a booster agent. (Safeway Amend. Comp. ¶ 21; Rite Aid Compl. ¶ 27; GSK Compl. ¶ 29). In the Plaintiffs' words, "Abbott raised the price of Norvir only when it is used to boost a non-Abbott PI" and, consequently, "Norvir is sold at a much lower price when used as one component of Abbott's own boosted PI, Kaletra." (Safeway Amend. Comp. ¶¶ 21, 37; Rite Aid Compl. ¶ 27; GSK Compl. ¶ 1).

## STANDARD OF REVIEW

Abbott moves to dismiss Plaintiffs' Sherman Act claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) "tests the legal sufficiency of the claims alleged in the complaint." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007). "'[A] plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, (2007) (internal citations omitted)). To survive a motion to dismiss, a plaintiff must allege facts sufficient to demonstrate "plausible entitlement to relief." *Twombly*, 127 S. Ct. at 1967; *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2875686, at *8 (N.D. Cal. Sept. 27, 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65). A "bare assertion" of a violation of the law will not suffice. *Twombly*, 127 S. Ct. at 1966.

## ARGUMENT

Plaintiffs' Sherman Act claims fail to allege facts sufficient to demonstrate a plausible entitlement to relief under the Sherman Act. Accordingly, these claims should be dismissed.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

4
NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

## I. The Complaints Fail To State A Claim Under *Cascade*

### A. Under *Cascade*, Pricing Actions In The Context Of Bundled Discounts Qualify As Exclusionary Conduct Only When The Defendant Engages In Below-Cost Pricing

In *Cascade*, the Ninth Circuit held that pricing decisions in the "normal case" are exclusionary only when the defendant engages in below-cost pricing. As the Ninth Circuit explained, the concern with bundled discounting is that "a competitor who sells only a single product in the bundle . . . might not be able to match profitably the price created by the multi-product bundled discount." *Cascade*, 502 F.3d at 906. To address that concern, the Ninth Circuit created a bright line test for exclusionary conduct – namely, that pricing decisions on bundled products "may not be considered exclusionary conduct" unless "the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id.* at 913-14.

Before *Cascade* – and, through inadvertence, even *after Cascade* – the Plaintiffs in the earlier DOE and SEIU cases have been relying on a Third Circuit decision, which was the only other circuit to address when bundled discounting potentially qualifies as "exclusionary conduct." *See LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003). In an *en banc* decision, the Third Circuit held that bundled discounts could be exclusionary – even without below-cost pricing – under a legal standard that focuses on the business justification for the pricing decisions. *Id.* at 163.

The Ninth Circuit, however, expressly rejected the standard in *LePage's*. It "decline[d] to endorse the Third Circuit's definition of when bundled discounts constitute the exclusionary conduct proscribed by § 2 of the Sherman Act." *Cascade*, 502 F.3d at 913. The Court instead "part[ed] ways with the Third Circuit by adopting a cost-based standard to apply in bundled discounting cases." *Id.* at 910; *id.* at 913-14. After having done so, the Court overturned a jury verdict that had relied on the *LePage's* standard. *Id.* at 930.

Like here, *Cascade* involved monopoly leveraging. A hospital group, PeaceHealth, had a monopoly in the relevant geographic region over "tertiary services," which are highly complex services like cardiovascular surgery. *Id.* at 902. Through pricing decisions, PeaceHealth leveraged

5

NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

its "tertiary services" monopoly to gain an advantage in the separate market for "primary and secondary services," which are more common and routine medical services. *Id*. at 902-03. Specifically, PeaceHealth offered a 35% to 40% discount on tertiary services to any insurer willing to make PeaceHealth "their sole preferred provider for *all* services—primary, secondary, and tertiary." *Id*. at 903 (emphasis in original).

The Ninth Circuit described this practice as "bundled discounting," explaining that "[b]undling is the practice of offering, for a single price, two or more goods or services that could be sold separately" and then offering that bundled product for "a lower price than the seller charges for the goods or services purchased individually." *Id*. at 905. As noted, such discounts can impact "competitor[s] who sell[] only a single product in the bundle" if they cannot "profitably" match the full bundled discount with their single product. *Id.* at 906.

PeaceHealth's strategy worked. Through its substantial bundled discounts, PeaceHealth leveraged its tertiary-services monopoly to the point where 86% of its tertiary customers also purchased its primary and secondary services. *Id.* at 928. That practice nearly put a competing hospital out of business. *Id.* at 902. The competing hospital did not provide tertiary services and, thus, could not offer a comparable discount for its services. *Id*. As a result, a jury concluded that Peace Health violated § 2 of the Sherman Act based on the factual finding that, without an adequate business justification, the bundled discounts were "offered by a monopolist and substantially foreclose[d] portions of the market to a competitor." *Id.* at 909 (quoting the district court's jury instructions).

In overturning that verdict, the Ninth Circuit relied primarily on Supreme Court cases outside the context of bundled discounting. It noted that "the Supreme Court has forcefully suggested that we should not condemn prices that are above some measure of incremental cost." *Id*. at 911. In *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), for instance, the Supreme Court held that "a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs." *Id*. at 222. In doing so, the Supreme Court rejected the "notion that above-cost prices that

are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws." *Id*. at 223.

The Ninth Circuit also relied on the Supreme Court's recent decision in *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069 (2007), which reversed a Ninth Circuit decision cited parenthetically in this Court's summary judgment ruling in the earlier Norvir cases. *Id*. at 1078; *see In re Abbott Labs. Norvir Anti-Trust Litig.*, 442 F. Supp. 2d 800, 806 (N.D. Cal. 2006). In *Weyerhaeuser*, the Supreme Court extended *Brooke Group*'s below-cost requirement from predatory pricing cases to predatory bidding cases. *Id*. at 1078. Predatory bidding occurs where a defendant is accused of "bidding up input costs to drive rivals out of business." *Cascade*, 502 F.3d at 911. Consistent with *Brooke Group*'s conclusion that above-cost pricing was beyond the reach of the antitrust laws, the Supreme Court in *Weyerhaeuser* held that establishing an antitrust violation required proof "that the alleged predatory bidding led to below-cost pricing of the predator's outputs." *Weyerhaeuser*, 127 S. Ct. at 1078.

Based on *Brooke Group* and *Weyerhaeuser*, the Ninth Circuit in *Cascade* held that "in the normal case, above-cost pricing will not be considered exclusionary conduct for antitrust purposes." *Cascade*, 502 F.3d at 912. Thus, it concluded that "bundled discounts may ***not*** be considered exclusionary conduct within the meaning of § 2 of the Sherman Act unless the discounts resemble the behavior that the Supreme Court in *Brooke Group* identified as predatory" – that is, "unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id*. at 913-14 (emphasis added).

### B. Plaintiffs Allege A Bundled Discounting Theory Of Exclusion Controlled By *Cascade*

*Cascade* controls this case. Although Plaintiffs do not use the term "bundled discounting" in their complaints, they plainly are relying on a "bundled discount" theory of exclusion. Plaintiffs allege that Abbott is "offering, for a single price, two . . . goods . . . that could be sold separately" in the form of Kaletra (lopinavir and ritonovir). *Id*. at 905. They also allege that Abbott charges a "much lower price" for ritonovir when sold in a bundled product along with lopinavir than when it is

sold alone. (Safeway Amend. Comp. ¶ 31; Rite Aid Compl. ¶ 42; GSK Compl. ¶ 1). That is a bundled discounting theory – the very theory rejected by *Cascade*. After *Cascade,* pricing decisions on bundled products "may not be considered exclusionary conduct . . . unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Cascade*, 502 F.3d at 913-14.

Plaintiffs may assert that Abbott's conduct was different from bundled discounting because (1) Abbott did not offer lopinavir as a separate product; and (2) Abbott raised Norvir's price rather than discounting Kaletra. Neither purported distinction is material.

First, regardless of whether lopinavir is sold separately from ritonavir, Plaintiffs allege a bundled discounting theory. The relevant point is that Plaintiffs accuse Abbott of selling ritonavir at a discount when it is sold in combination with lopinavir (Kaletra), as compared to when ritonavir is sold by itself as Norvir. (Safeway Amend. Comp. ¶ 31; Rite Aid Compl. ¶ 42; GSK Compl. ¶ 1). Again, this alleged conduct satisfies the definition of bundled discounting. *Cascade*, 502 F.3d at 905 (bundled discounting occurs when a party "offer[s], for a single price, two or more goods or services that could be sold separately").

Second, attempting to distinguish *Cascade* because Abbott raised Norvir's price rather than discounting Kaletra ignores that Norvir is patented. Raising Norvir's price, by itself, cannot constitute exclusionary conduct because "setting high prices in the original 'monopoly' market" is among the "ways that a monopolist can permissibly benefit from its position" under the patent laws. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991). As the Supreme Court has explained:

> The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system. The opportunity to charge monopoly prices – at least for a short period – is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied

by an element of anticompetitive *conduct*.

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko,* LLP, 540 U.S. 398, 407 (2004) (emphasis in original).

Thus, rather than claiming that Norvir's price increase constituted exclusionary conduct, Plaintiffs are complaining about Abbott's simultaneous decision ***not*** to increase Kaletra's price. (Safeway Amend. Comp. ¶ 21; Rite Aid Compl. ¶ 27; GSK Compl. ¶ 1). In other words, Plaintiffs allege that ritonovir is a "bargain" when bundled with lopinovir (Kaletra) as compared to when sold alone (Norvir). (Safeway Amend. Comp. ¶ 31; Rite Aid Compl. ¶ 42; GSK Compl. ¶ 1). Again, that's bundled discounting.

In short, *Cascade* controls and, therefore, Plaintiffs must allege that Abbott engaged in below-cost pricing to allege a Sherman Act claim.

### C. Plaintiffs Have Failed To Allege Below-Cost Pricing And, Thus, Their Complaints Fail To State A Sherman Act Claim Under *Cascade*

Plaintiffs have failed to allege that Abbott engaged in any below-cost pricing. Instead, they merely allege that "Norvir is sold at a much lower price when used as one component of Abbott's own boosted PI, Kaletra," *i.e.*, ritonovir with lopinavir. (Safeway Amend. Comp. ¶ 31; Rite Aid Compl. ¶ 42; GSK Compl. ¶ 1). Under the Ninth Circuit's decision in *Cascade*, however, selling ritonovir at a "much lower price" when bundled with lopinavir does not amount to "exclusionary conduct" unless "the discounts result in prices that are below an appropriate measure of the defendant's costs." *Cascade*, 502 F.3d at 914.

Plaintiffs have failed to allege that Abbott's decision not to increase Kaletra's price in light of Norvir's increase "result[ed] in prices that are below an appropriate measure of [Abbott's] costs" for either lopinivor or Kaletra. *Id.* (Nor could they do so. If Abbott had been engaging in below-cost pricing for the last four years, new PIs certainly would not have entered the market merely to sell at a loss.) Accordingly, they have failed to satisfy the *Cascade* standard for Sherman Act liability.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Indeed, *Cascade*'s reasoning is particularly compelling under the circumstances of this case. Aside from a few narrow exceptions, "there is no duty to aid competitors." *Verizon*, 540 U.S. at 411. Thus, Abbott was not required to help its competitors by keeping Norvir priced at $1.71 per day for its standard boosting dose – a price that Abbott deemed to be far below its market value in a market crowded with $20 and $30 drugs. At the same time, forcing Abbott to increase Kaletra's price to fully incorporate Norvir's price increase (thus, defeating Plaintiffs' claims) would have been counter to consumers' interests. Antitrust policies are designed to assist consumers, not competitors. As the Supreme Court has explained, "forcing firms to maintain supracompetitive prices, thus depriving consumers of the benefits of lower prices in the interim, does not constitute sound antitrust policy." *Brooke Group*, 509 U.S. at 224.

In the end, *Cascade* specifically held that, "in the normal" case, below-cost pricing does not qualify as exclusionary conduct. *Cascade*, 502 F.3d at 912. Plaintiffs cannot offer any reason why above-cost pricing in the context of a *patented product* would be exclusionary if it was not exclusionary in the "normal" context. In light of *Cascade*, Plaintiffs have failed to allege that Abbott engaged in exclusionary conduct. Dismissal of their Sherman Act claims is appropriate on this ground alone.

## II. The Ninth Circuit's Decision In *Kodak* Cannot Salvage Plaintiffs' Sherman Act Claims In Light Of *Cascade*

Plaintiffs can find no solace in the Ninth Circuit's patent-monopoly leveraging decision in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997), which is the case upon which the Doe and SEIU plaintiffs principally have been relying. *Kodak* did not address whether a pricing decision can qualify as exclusionary conduct and, thus, is irrelevant to the *Cascade* analysis. Rather, the case involved exclusionary conduct in the form of an outright, and unprotected, "refusal to deal." *Id.* at 1216.

There, Kodak had refused to sell its "photocopier and micrographic parts to create a second monopoly in the equipment service markets." *Id.* at 1200. When addressing the same case at an earlier stage of the litigation, the Supreme Court explained that companies generally "can refuse to

10

NOT. OF MOT. AND OMNIBUS MOT. OF ABBOTT TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

deal with [their] competitors . . . only if there are legitimate competitive reasons for the refusal." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 483 n.32 (1992). The Ninth Circuit similarly explained that "[s]ection 2 of the Sherman Act prohibits a monopolist's unilateral action, *like Kodak's refusal to deal*, if that conduct harms the competitive process in the absence of a legitimate business justification." *Kodak*, 125 F.3d at 1209 (emphasis added).

Thus, there was simply no issue about whether Kodak had engaged in exclusionary conduct in the form of a refusal to deal. The only issue was whether Kodak's patents over copier parts provided an adequate justification and, thus, antitrust immunity for its refusal to deal with competitors. The Court explained that "while exclusionary conduct can include a monopolist's unilateral refusal . . . to sell its patented or copyrighted work, a monopolist's desire to exclude others from its protected work is a presumptively valid business justification for any immediate harm to consumers." *Id.* at 1218 (internal quotations omitted). Therefore, "Kodak's contention that its *refusal to sell* its parts to ISOs was based on its reluctance to sell its patented or copyrighted parts was a presumptively legitimate business justification." *Id.* at 1219 (emphasis added). Nonetheless, because the plaintiffs presented evidence that this justification was a "pretext" that played no part in Kodak's decision to act, the Court concluded that Kodak had no justification for its exclusionary conduct. *Id.* at 1120.

For its *Cascade* argument, Abbott is raising no issue about whether its patents provide immunity from charges that it monopolized the Boosted Market. And the exclusionary conduct at issue in *Kodak* – *i.e.*, a "refusal to deal" – is not present here. Rather, Plaintiffs' only theory of exclusionary conduct is Abbott's alleged discounting of ritonovir when sold as a bundled product (Kaletra) compared to when it is sold alone (Norvir) to boost competitive PIs. That theory fails under *Cascade* because Plaintiffs have not alleged below-cost pricing. Thus, the Court should dismiss their Sherman Act claims with prejudice.

**III.  The Scope Of Abbott's Patent Protection Under The Patent Laws Is Governed By Federal Circuit Precedent, Which Has Rejected Plaintiffs' Patent-Monopoly Leveraging Theory**

This Court should dismiss Plaintiffs' Sherman Act claims on the independent ground that the Federal Circuit has jurisdiction over any appeal in this case, and binding Federal Circuit precedent has rejected Plaintiffs' patent-monopoly leveraging theory of antitrust liability.  Abbott briefed this argument in detail on pages 10 through 13 of its motion to dismiss GSK's complaint filed on January 24, 2008, and thus incorporates that discussion by reference.

To recap briefly, the Federal Circuit has jurisdiction over a case if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *Holmes Group, Inc.*, 535 U.S. at 830.  Under *both* Federal Circuit law *and* Ninth Circuit law, the Plaintiffs' purported claims for monopoly leveraging turn on an ability to prove that Abbott engaged in exclusionary conduct *beyond* the scope of its patent protection.  As the Ninth Circuit explained, the "right of exclusion [does not] protect an attempt to extend a lawful monopoly *beyond* the grant of a patent" and, thus, "[m]uch depends . . . on the definition of the patent grant and the relevant market." *Kodak*, 125 F.3d at 1217 (emphasis added).  Because Plaintiffs must prove that Abbott's alleged exclusionary conduct extends beyond its patent protection, their claims necessarily "depend" on resolution of a substantial question of federal patent law concerning the scope of that patent protection.  *Id.*; *see also Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1068 (N.D. Cal. 2007) (applying Federal Circuit law to claim construction issues); *see also Christianson v. Colt Indus. Operating Co.*, 486 U.S. 800, 809 n.3 (1988) (Federal Circuit jurisdiction can be based on claims that do not expressly reference patent law).

This question of appellate jurisdiction is important because the Federal Circuit "appl[ies] [its] own law, not regional circuit law, to resolve issues that clearly involve [its] exclusive jurisdiction." *Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1067 (Fed. Cir. 1998).  This includes "whether or not the patentee enjoys antitrust immunity under the patent laws" based on the patent grant because any other result would "risk disturbing 'Congress's goal of ensuring patent-law

12

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

uniformity.'" *Unitherm Food Sys. v. Swift-Eckrich*, 375 F.3d 1371, 1355 n.3 (Fed. Cir. 2004) (vacated on other grounds) (quoting *Nobelpharma*, 141 F.3d at 1067-68); *see also Kodak*, 125 F.3d at 1216-17 ("The relevant market for determining the patent . . . grant is determined under patent . . . law.").

As the Court is aware, the Federal Circuit already has rejected the patent monopoly leveraging theory that Plaintiffs have unsuccessfully attempted to plead in this case. *See In re Indep. Service Orgs. Antitrust Litig.*, 203 F.3d 1322, 1327-28 (Fed. Cir. 2000). This Federal Circuit precedent places Abbott's Norvir pricing decisions within its patents' antitrust protections. Consequently, Plaintiffs' Sherman Act claims should be dismissed on this ground as well.

## **CONCLUSION**

For the reasons set forth above, and the additional reasons set forth in Abbott's previously-filed motion to dismiss GSK's complaint, this Court should dismiss Plaintiffs' complaints with prejudice.

Dated: January 31, 2008                    WINSTON & STRAWN LLP

By:  /s/ James F. Hurst

Attorneys for Defendant
ABBOTT LABORATORIES