# EXHIBIT 5

| | |
|---|---|
| 1 | Michael A. Sweet (SBN: 184345) |
|   | George C. Lombardi (*Admitted Pro Hac Vice*) |
| 2 | James F. Hurst (*Admitted Pro Hac Vice*) |
|   | David J. Doyle (*Admitted Pro Hac Vice*) |
| 3 | Samuel S. Park (*Admitted Pro Hac Vice*) |
|   | WINSTON & STRAWN LLP |
| 4 | 101 California Street, Suite 3900 |
|   | San Francisco, CA 94111-5894 |
| 5 | Telephone:   415-591-1000 |
|   | Facsimile:   415-591-1400 |
| 6 | Email: msweet@winston.com; |
|   | glombardi@winston.com; jhurst@winston.com; |
| 7 | ddoyle@winston.com; spark@winston.com |
| 8 | Attorneys for Defendant |
|   | ABBOTT LABORATORIES |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE ABBOTT LABS NORVIR ANTITRUST LITIGATION | Case Nos. C-04-1511 CW and C-04-4203 CW |
| This Document Relates To: All Actions | **NOTICE OF MOTION AND MOTION OF ABBOTT LABORATORIES' FOR SUMMARY JUDGMENT** |
| | DATE:   July 8, 2005 |
| | TIME:   10:00 a.m. |
| | DEPT:   2 |
| | **The Honorable Judge Wilken** |

**NOT OF MOT. & MOT. OF ABBOTT LABORATORIES
FOR SUMMARY JUDGMENT**

1   The Federal Circuit affirmed and also expressly rejected *Kodak*'s leveraging theory, stating: "We decline to follow *[Kodak]*." *Independent Services*, 203 F.3d at 1327. The Federal Circuit held that absent "illegal tying, fraud in the Patent and Trademark Office, or sham litigation," none of which have been alleged here, a patentee is unconditionally entitled to exercise its statutory patent rights "free from liability under the antitrust laws." *Id.* The Court thus rejected the antitrust claim, noting that "a patent may confer the right to exclude competition altogether in more than one antitrust market." *Id.* And since Xerox's "refusal to sell its patented parts" fell within "the scope of [its] patent grant," Xerox was immune from antitrust liability "even though [its] refusal to sell or license [its] patented invention may have an anticompetitive effect" in a separate market. *Id.* at 1327-28.

This Court is bound by *Independent Services* because "Federal Circuit law determines whether or not the patentee enjoys antitrust immunity under the patent laws, while regional circuit law determines the other elements of the antitrust claim." *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1355 n.3 (Fed. Cir. 2004), *cert. granted in part on other grounds*, 125 S. Ct. 1396 (2005). In fact, it has long been the law that "Federal Circuit law governs all antitrust claims premised on the abuse of a patent right" (*id.* at 1355), which is precisely what Plaintiffs allege here. And as the Federal Circuit recently confirmed, "the determination of *which* actions can cause a patentee . . . to lose the general protection of the patent law and risk liability for damages is clearly an issue unique to patent law – and therefore inappropriate for resolution under the potentially varying interpretations of the regional circuits." *Id.* at 1357 (emphasis in original).

Under controlling Federal Circuit law, Plaintiffs' antitrust claim fails because it simply does not matter whether Norvir's price increase impacted other markets, including the alleged Boosted Market. The only question is whether a price increase falls within the scope of Abbott's rights under the Norvir patents, and it obviously does. Raising the price of a patented product is exactly what a patent allows.

There is no dispute about this fact. "The power over price that patent rights confer is lawful." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 265 (7th Cir. 1984). "The owner of a patented article can, of course, charge such price as he may choose . . . ." *Monsanto Co. v.*

18

NOT OF MOT. & MOT. OF ABBOTT LABORATORIES
FOR SUMMARY JUDGMENT

*McFarling*, 302 F.3d 1291, 1299 (Fed. Cir. 2002). Thus, it is beyond dispute that "setting high prices in the original 'monopoly' market" is among the "ways that a monopolist can permissibly benefit from its position." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548-49 (9th Cir. 1991). As one court reviewing allegations concerning the Norvir price increase similarly noted, "[c]harging a high price is not beyond the scope of any patent and Plaintiff has not cited a single case so holding." (Sweet Declaration, Exhibit A, at 2).

Not only do the Norvir patents authorize an allegedly high price, but they actually entitle Abbott to charge an *infinite* price for Norvir by removing it from the marketplace altogether. A patentee is "under no obligation to sell or license its patented" invention and, thus, does "not violate the antitrust laws by refusing to do so." *Independent Services*, 203 F.3d at 1328. As the *Gingreau* court similarly noted, "Abbott could, in fact, cease selling Norvir altogether and be within its rights." (Sweet Declaration, Exhibit A, at 2). Plainly, if Abbott has the right to remove Norvir from the marketplace, it also has the right to raise Norvir's price. *See also Zenith Laboratories, Inc. v. Carter-Wallace Inc.*, 530 F.2d 508, 513, n.9 (3d Cir. 1976) ("a patentee is privileged to withhold [its invention] from sale at any price, or to offer it for sale at any price he wishes, however low or high").

In the end, Abbott is entitled to profit from its invention by raising Norvir's price. Because a price increase is one of Abbott's core rights under its Norvir patents, *Independent Services* confirms that Abbott is immune from antitrust liability *regardless* of any alleged impact on other markets. For this reason alone, Abbott is entitled to summary judgment.

2. **Even If The Court Were To Follow *Kodak*, Abbott Still Is Entitled To Summary Judgment Because Its Patents Cover *Both* Alleged Markets.**

Even if this Court were to follow *Kodak*, Abbott still is entitled to summary judgment. As this Court previously held, a patent owner loses immunity only if it "extends its monopoly beyond the scope of the patent." (10/21/04 Doe Order at 4). Here, however, Abbott is accused of "monopolizing" a market over which it *has* patent protection.

Plaintiffs merely are alleging that a price increase on a patented product (Norvir) constituted an attempt to monopolize another *patented* combination (Norvir plus another protease

NOT OF MOT. & MOT. OF ABBOTT LABORATORIES
FOR SUMMARY JUDGMENT

inhibitor). This is nothing like *Kodak*, where the plaintiffs alleged that a refusal to sell a patented product (photocopier parts) was an attempt to monopolize an *unpatented* service (repairing photocopiers). In other words, unlike here, the *Kodak* defendant had patent rights over only *one* of the relevant markets.

Determining whether any alleged impact on the Boosted Market is beyond the scope of Abbott's patents depends on the proper construction of those patents. That issue is perfectly suited for summary judgment because "claim construction is a matter of law" and, thus, it is not open to any possible factual dispute. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1359 (Fed. Cir. 2004). The "construction of a patent, including terms of art within its claims," is a matter of law "exclusively within the province of the court." *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996).

Abbott's booster patents plainly cover the Boosted Market. The '157 patent, for example, claims a "method for improving" the efficacy of protease inhibitors by administering a "therapeutically effective amount of a combination of said drug . . . and ritonavir," which is Norvir's active ingredient. (Sweet Declaration, Exhibit C, at Col. 13, lines 42-48). Abbott is aware of no conceivable dispute about the meaning of this simple language, which plainly covers the co-administration of Norvir with another protease inhibitor. This is *precisely* how Plaintiffs define the Boosted Market. (Doe Am. Compl. ¶¶ 14, 27). There is simply no question that Abbott's patents cover that purported market, and Plaintiffs never have contended otherwise.

When denying Abbott's motions to dismiss, this Court declined to address the scope of Abbott's booster patents, stating that it was "not willing, at this early juncture in the litigation, to rule that [Abbott] can patent a procedure in which HIV patients take a drug manufactured and sold by a third party along with Defendant's own." (3/02/05 Service Employees Order at 7). To address the Court's concern, Abbott has provided the Declaration of Gerald J. Mossinghoff, who is a former Commissioner of Patents. As Mr. Mossinghoff explains, parties commonly obtain patents relating to an improvement over another party's product. In fact, such patents are specifically permitted by the United States Patent Code, which allows inventors to patent "any new and useful process . . . *or any new and useful improvement thereof*." (Mossinghoff Declaration ¶ 13; 35 U.S.C. § 101 (emphasis

20

NOT OF MOT. & MOT. OF ABBOTT LABORATORIES
FOR SUMMARY JUDGMENT

(E.D. Cal. 2003) (denying finding of unjust enrichment and imposition of constructive trust). Therefore, Plaintiffs cannot possibly prove their claim for unjust enrichment, and Abbott is entitled to judgment as a matter of law.

Dated: June 1, 2005

WINSTON & STRAWN LLP

By: /s/ Michael Sweet
Michael A. Sweet (SBN 184345)

Attorneys for Defendant
ABBOTT LABORATORIES