Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: 312-558-5600
Facsimile: 312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com; spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

SMITHKLINE BEECHAM CORPORATION d/b/a/ GLAXOSMITHKLINE,

Plaintiff,

vs.

ABBOTT LABORATORIES,

Defendant.

**Case No. C 07-5702 CW**

*Related per November 19, 2007 Order to Case No. 04-1511 CW*

**ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Date: March 6, 2008
Time: 2:00 p.m.
Place: Courtroom 2 (4th Floor)

The Honorable Judge Wilken

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. Abbott Has Met Its Burden Of Showing That Transfer To The Northern District Of Illinois Is Proper ........ 3

1. The Interests Of Justice Clearly Weigh In Favor Of Transfer To Illinois ........ 3

a. The many significant factual differences between this case and the direct purchaser actions make transfer appropriate ........ 3

b. GSK's forum shopping does not serve the interests of justice ........ 5

2. The Convenience Factors Clearly Weigh In Favor Of Transfer To Illinois ........ 6

3. GSK's Choice Of Forum Is Not Entitled To Deference Because GSK Sued Abbott Outside Its Home Forum ........ 7

B. GSK Misconstrues The Standard For Transfer ........ 9

1. GSK's Motion To Relate Has No Bearing On Abbott's Venue Motion ........ 9

2. Abbott's Participation In A Scheduling Conference With GSK Has No Bearing On Abbott's Venue Motion ........ 11

III. CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Page(s)

CASES

*A.J. Industries Inc. v. U.S. District Court for the Central District of California*, 503 F.2d 384 (9th Cir. 1974) .......... 5

*Alexander v. Franklin Res., Inc.*, No. C 06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) .......... 10

*Central States, SE & SW Areas Heath & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008 (N.D. Ohio 1998) .......... 8

*Chemi Spa v. GlaxoSmithKline*, No. Civ. A. 04-4545, 2004 WL 2980400 (E.D. Pa. Nov. 24, 2004) .......... 10

*Dennison v. Metropolitan Life Ins. Co.*, No. C-07-0796-MMC, 2007 WL 2221055 (N.D. Cal. Aug. 1, 2007) .......... 7, 8

*Ellis v. Hollister, Inc.*, No. S-05-599 LKK/GGH, 2006 WL 1132377 (E.D. Cal. Apr. 14, 2006) .......... 4

*Eye Laser Care Center, LLC v. MDTV Med. News Now*, No. 03CV371-BEN, 2007 WL 2873782 (S.D. Cal. Sept. 28, 2007) .......... 7

*Gintz v. Jack in the Box, Inc.*, No. C 06-02857 CW, 2007 WL 397306 (N.D. Cal. Feb. 1, 2007) .......... 8

*Harms v. Experian Info. Solutions, Inc.*, No. C 07-0697 JF, 2007 WL 1430085 (N.D. Cal. May 14, 2007) .......... 1, 5

*Ironworkers Local Union No. 68 and Participating Employers Health and Welfare Fund v. Amgen, Inc.*, No. CV 07-5157 PSG .......... 2, 9, 10

*London and Hull Maritime Insurance Co. v. Eagle Pacific Insurance Co.*, No. C-96-1512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) .......... 5

*Lopez v. Chertoff*, No. C-06-500 RMW, 2007 WL 2113494 (N.D. Cal. July 20, 2007) .......... 10

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) .......... 8

*Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287 (D. Del. 1986) .......... 8

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

*Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006) .................... 3

*Tranor v. Brown*, 913 F. Supp. 388 (E.D. Pa. 1996) .................... 8

*Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582 (E.D. Va. 1992) .................... 8

**OTHER AUTHORITIES**

Local Rule 3-12 .................... 2, 9, 11

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**I. INTRODUCTION**

As Abbott demonstrated in its opening brief, the Northern District of Illinois is a logical and more convenient forum for resolving the parties' dispute. All three factors in the section 1404(a) analysis – the convenience of the parties, the convenience of the witnesses and the interests of justice – weigh in favor of transfer.

GSK's central argument against transfer is that this case is just like the other Norvir actions already pending in this Court. But, as GSK's counsel has conceded, GSK is "in a completely different category" than the other Norvir plaintiffs. (Park Decl., Ex. A at 10-11). GSK is an Abbott competitor (not a direct or indirect purchaser), its damages theory alleges lost profits (not overcharges for Norvir), its complaint centers around a contract negotiated entirely in Illinois and North Carolina (not California), and its complaint contains unique causes of action under North Carolina law.

GSK essentially ignores the fact that its complaint invokes different claims, different legal theories, different damages models, different laws, and different witnesses. Instead, GSK claims that the "interests of justice" counsel against transfer because it would be efficient for this case to be tried along with the other related actions. But, because of the glaring differences between them, there is no guarantee this case will be tried with any of the related cases. As one of the plaintiffs' attorneys stated at the parties' last court appearance, there "are obviously different damages theories [at work here] . . . it can be confusing to the jury and I just want to reserve the possibility of asking for separate damages trials." (Park Decl., Ex. A at 16, 23-24). This is true with respect to liability as well because, in fact, "antitrust injury" is an element of antitrust liability, and GSK alleges a different theory of "antitrust injury" than everybody else. There are numerous other issues raised by GSK that have nothing to do with the direct purchaser actions, including issues of contract negotiation, contract interpretation, lost profits and state antitrust law, just to name a few.

Moreover, contrary to GSK's suggestion, courts "may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping." *Harms v. Experian Info. Solutions, Inc.*, No. C 07-0697 JF, 2007 WL 1430085, at *1 (N.D. Cal. May 14, 2007). Indeed, it certainly would not serve the "interests of justice" to reward GSK's forum shopping here. GSK disputes this

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

characterization, but the facts speak for themselves. GSK sat on the sidelines for years – even though internal business records from February 2004 discussed the alleged impact of the Norvir price increase on Lexiva's sales – and waited to sue until the Doe/SEIU case was on the brink of trial. GSK's decision to sue in this forum was no coincidence.

Under these circumstances, it would not be just to allow GSK to proceed in this district in complete disregard for the convenience of the parties and their witnesses. GSK claims that California is a more convenient forum for the parties' witnesses because Abbott and GSK both have "significant contacts in this District," and "keeping GSK's action in this District will be less burdensome on witnesses than transferring it to Illinois." (Opp'n at 14-15). That is not accurate. Although Abbott and GSK both have facilities in California, not a single employee in any of those facilities is a potential fact witness in this case. On the contrary, as the parties' initial disclosures make clear, every potential fact witness resides east of the Mississippi. (Park Decl., Ex. B).

GSK also claims that transfer is not appropriate because the Court already determined that this case is "related" to the other Norvir cases pending in this Court. (Opp'n at 7-8). This is irrelevant, however, because the standard for "relatedness" under Local Rule 3-12 is different from the standard for evaluating transfer motions under section 1404(a). As a result, federal courts in California and elsewhere often grant section 1404(a) transfers in cases that have been related to prior-filed actions.

In the end, the convenience of the parties, the convenience of the witnesses, and the interests of justice all strongly favor transfer to the Northern District of Illinois. Because GSK filed suit in California, and not in its home forum, its choice of forum should be given no weight, and this case should be transferred to Illinois, where it should have been brought in the first place.[1]

---

[1] This Court should decide Abbott's motion to transfer before deciding Abbott's motion to dismiss filed concurrently herewith. California courts "deem[] it prudent to consider [] motion[s] to transfer before determining the appropriateness of consolidation or dismissal." *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, No. CV07-3880PSGAGRX, 2007 WL 4144892, *2 (C.D. Cal., November 13, 2007); *U.S. ex rel. Adrian v. Regents of University of California*, No. C 99-3864 TEH, 2002 WL 334915, *5 (N.D. Cal. February 25, 2002) (finding that "because the motions to transfer should be granted, the Court declines to address [the] motion to dismiss for failure to state a claim").

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

## II. ARGUMENT

### A. Abbott Has Met Its Burden Of Showing That Transfer To The Northern District Of Illinois Is Proper

GSK does not challenge Abbott's assertion that the Northern District of Illinois is a proper forum for the parties' dispute. After all, multiple potential witnesses reside there, and Abbott's allegedly anticompetitive conduct occurred there. And both the Northern District of Illinois and the Seventh Circuit are fully familiar with GSK's Sherman Act claim. *Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006). None of GSK's arguments undermine the reality that the Northern District of Illinois is a far more appropriate forum than this district.

#### 1. The Interests Of Justice Clearly Weigh In Favor Of Transfer To Illinois

GSK's primary argument in opposing transfer is its claim that sending this case to Illinois would "waste time, energy and money" because it would force the direct purchasers and GSK to try their claims against Abbott in separate actions. (Opp'n at 11). However, this argument ignores the many, significant differences between this case and the direct purchaser cases. Moreover, allowing GSK to engage in forum shopping would not serve the interests of justice.

##### a. The many significant factual differences between this case and the direct purchaser actions make transfer appropriate

As noted above, the GSK case and the direct purchaser cases are different in a number of significant respects. As GSK's counsel conceded in open court, "We're in a completely different category." (Park Decl., Ex. A at 10-11). That is true.

Most importantly, GSK has alleged claims relating to the Abbott-GSK license agreement that will require unique discovery from numerous witnesses that never have been deposed and had nothing to do with the Norvir price increase. These witnesses are irrelevant to the direct purchaser actions, as are GSK's claims for violations of North Carolina law. These extraneous claims have nothing to do with the direct purchaser actions – there will be no overlapping issues or facts.

Indeed, GSK has not even attempted to argue that these claims fit in with the direct purchasers' Sherman Act claims, because it cannot. This became obvious when, during the scheduling conference, this Court had to request special briefs because of GSK's unique claims.

Abbott had to file a separate motion to dismiss to address all the claims unique to GSK. (Park Decl., Ex. A at 32-33). And with respect to summary judgment, GSK's counsel himself explained: "GSK is going to need a separate brief." (*Id.* at 51).

Even with respect to its Sherman Act claim, GSK is the only Abbott competitor who has sued over the Norvir price increase. Unlike the direct purchasers, who seek a return of Abbott's alleged "overcharges" for Norvir, GSK seeks the lost profits it allegedly suffered as a result of the Norvir price increase. Whether GSK suffered any antitrust injury – an element of its case-in-chief – is not relevant to the claimed antitrust injury in the other Norvir actions relating to whether they paid more for Norvir. For GSK's claim, Abbott expects to show that Lexiva's less-than-expected sales were caused by the drug's inferior properties, its ineffective marketing, and its late entry to the market, whereas GSK will attempt to attribute Lexiva's failings to the timing of the Norvir price increase. To support its position, Abbott will cite clinical studies, hire a product expert and take third-party discovery from health care providers about why they prescribe Kaletra over Lexiva. None of this discovery is relevant to the direct purchasers' Sherman Act claims, but this is just the tip of the iceberg.

While GSK extols the virtues of combining all of the Norvir actions in a single proceeding, it would be in everyone's best interest to have the GSK case sent to a different forum where it could proceed at its own pace. As one of the direct purchaser attorneys commented at the scheduling conference in December, there "are obviously different damages theories [at work here] . . . it can be confusing to the jury and I just want to reserve the possibility of asking for separate damages trials." (*Id.* at 16, 23-24). Trying the GSK case in the same proceeding as the direct purchaser case would be highly confusing to the jury, as it would involve not only different damages theories, but a considerable amount of evidence that is exclusively relevant to GSK's claims.

Finally, the cases in GSK's opposition are easily distinguishable and do nothing to counter Abbott's strong showing on the convenience factors. For example, GSK cites *Ellis v. Hollister, Inc.*, No. S-05-599 LKK/GGH, 2006 WL 1132377 (E.D. Cal. Apr. 14, 2006) for the proposition that related cases should remain in the same district. (Opp'n at 11-12). In *Ellis*, however, at least one of the plaintiffs in both of the cases at issue was from California. This fact dramatically changes the



Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

venue analysis and, thus, is a critical departure from the GSK case. Likewise, both *London and Hull Maritime Insurance Co. v. Eagle Pacific Insurance Co.*, No. C-96-1512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996), and *A.J. Industries Inc. v. U.S. District Court for the Central District of California*, 503 F.2d 384 (9th Cir. 1974), ultimately support Abbott. (Opp'n at 11). In both of these cases, the plaintiff's choice of forum was disregarded in favor of other convenience factors, and the cases were transferred to other districts.

Given the many differences between the GSK case and the direct purchaser actions, and the fact that the Northern District of Illinois is a much more convenient forum for the parties and their witnesses than this district, the Court should transfer this case to Illinois.

**b. GSK's forum shopping does not serve the interests of justice**

GSK disputes Abbott's charge of forum shopping, claiming that it did not know about the true reasons for the Norvir price increase until a Wall Street Journal article disclosed that Abbott allegedly contemplated withdrawing Norvir from the market. (Opp'n at 10). This supposed excuse for delay, however, does little to shield GSK from the label of forum shopper.

GSK has been fully aware of the Norvir price increase since it was implemented in December 2003. Yet, GSK did nothing for years until it decided to climb aboard the Norvir litigation bandwagon less than a month before the four-year statute of limitations for Sherman Act violations was set to expire. GSK's supposed excuse for waiting is a Wall Street Journal article on January 3, 2007 that discussed a business scenario (withdrawing Norvir) that Abbott did not even pursue. If GSK was so outraged by the article, why did it take GSK another eleven months for it to file suit? And how could GSK have been adversely impacted by internal discussions of a business scenario Abbott never pursued?

Whatever the true motivation for GSK's decision to sue, there is no dispute that it decided to file its lawsuit in a forum that is on the opposite side of the country from any relevant fact witness. This is the definition of forum shopping – disregarding the convenience of the parties and witnesses and choosing a forum because of some perceived strategic advantage. As Abbott explained in its motion, courts may disregard a plaintiff's choice of forum when it is the product of forum shopping. *Harms*, 2007 WL 1430085, at *3 (granting transfer motion and explaining that courts "may

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping"); *see also* Abbott Mot. at 8-10. Here, this fact, coupled with all of the other facts in the venue analysis favoring transfer, strongly support a transfer of this case to the Northern District of Illinois.

**2. The Convenience Factors Clearly Weigh In Favor Of Transfer To Illinois**

Although not a single potential fact witness from either party is located in California, GSK contends that it is "more convenient for both the parties and the witnesses" for this case to proceed in this district. (Opp'n at 14). That is simply not the case.

GSK first argues that Abbott is a "multinational corporation" with "significant contacts in this District." (Opp'n at 14). And because "[n]either Abbott nor GSK is a stranger to California," "Abbott should not be heard to claim that California is an inconvenient forum." (*Id.*). Under this logic, all national corporations would be precluded from bringing venue motions under section 1404(a). The question is not whether Abbott has a presence in California or whether Abbott is capable of litigating in this district, but whether there is another forum that is more convenient to the parties and witnesses. And the answer to that question is "yes" because every single witness and document relevant to this case is located far closer to Illinois than California.

GSK next argues that "keeping GSK's action in this district will be less burdensome on witnesses than transferring it to Illinois" because having separate actions will create the risk that GSK's and Abbott's witnesses will need to be deposed twice – once in this case and once in the direct purchaser case. (Opp'n at 15). This "risk" is overblown.

All of Abbott's decision-makers have been deposed multiple times concerning the Norvir price increase – both as part of state attorney general investigations and in the Doe/SEIU case. An additional round of depositions is not likely to be enlightening and, thus, it is not even clear that the direct purchasers will seek to re-depose all of these individuals.

There also is no reason for the direct purchasers to depose most of GSK's relevant witnesses, as evidenced by the fact that the Doe and SEIU attorneys never deposed witnesses from any of Abbott's competitors (except for submitting written questions to the author of a single GSK memorandum from 2004). The reality is that GSK's claims are centered around a license agreement (and whether GSK has been denied the fruits of that agreement) that has absolutely nothing to do

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

with the antitrust claims at issue in the direct purchaser cases. For that reason, forcing the direct purchaser plaintiffs to be saddled with all of GSK's irrelevant claims in the same case would be highly inefficient. GSK's case is a competitor action with a different alleged harm, a different damages model, different underlying facts relating to the parties' negotiation and performance under a license agreement, and several different state-law claims.

Finally, GSK claims that "Abbott has not identified a single witness, or even group of witnesses, who would be inconvenienced by denial of Abbott's motion to transfer." (Opp'n at 15). This is obviously incorrect. Indeed, every single witness – from both parties – would be inconvenienced by the denial of Abbott's motion. As Abbott employee John Poulos stated in his declaration, filed concurrently with Abbott's opening brief, the license agreement that is the focal point of the litigation between Abbott and GSK was negotiated in Illinois and North Carolina. (J. Poulos Decl. ¶ 5). "None of the negotiations took place in California, and no California residents were involved in the negotiations." (*Id.*). Thus, every single fact witness from both parties would be inconvenienced by having to fly across the country to California to testify. This plainly is sufficient to demonstrate the type of inconvenience to the parties and witnesses that merits transfer under section 1404(a). *Dennison v. Metropolitan Life Ins. Co.*, No. C-07-0796-MMC, 2007 WL 2221055, *1 (N.D. Cal. Aug. 1, 2007) (transferring case to North Carolina because "all potentially relevant documentary evidence and witnesses are located in the Western District of North Carolina or, to the extent they may be found in other districts, such other districts are significantly closer to the Western District of North Carolina than to this District.") (emphasis added); *see also Eye Laser Care Center, LLC v. MDTV Med. News Now*, No. 03CV371-BEN, 2007 WL 2873782, *6 (S.D. Cal. Sept. 28, 2007) ("[t]he relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a).") (internal quotation and alteration omitted).

**3. GSK's Choice Of Forum Is Not Entitled To Deference Because GSK Sued Abbott Outside Its Home Forum**

According to GSK, "Abbott is incorrect when it argues that GSK's choice of forum should be discounted because GSK is not a California corporation." (Opp'n at 8). GSK, however, offers no legal authority for this bald assertion.

While a plaintiff's choice of forum customarily is entitled to considerable deference, this is not true in cases like this one where the plaintiff opts to litigate outside its home forum. *See, e.g., Dennison v. Metro. Life Ins. Co.*, 2007 WL 2221055 at *1 ("[P]laintiff's choice of the instant forum is not entitled to deference because none of the transactions giving rise to plaintiff's claims occurred in this District."); *Gintz v. Jack in the Box, Inc.*, No. C 06-02857 CW, 2007 WL 397306, at *3 (N.D. Cal. Feb. 1, 2007) ("[N]one of the claims of the non-California class arose in this district, entitling Plaintiffs' choice of forum for this class to only minimal consideration."); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Central States, SE & SW Areas Heath & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010-11 (N.D. Ohio 1998); *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986).

GSK attempts to distinguish *Dennison* and *Gintz* by noting that, in those cases, the transactions giving rise to the plaintiffs' claims occurred outside California. (Opp'n at 8). The same is true here, however. The pricing of Norvir and Kaletra occurred in Illinois, and the negotiation of the GSK-Abbott license agreement occurred in Illinois and North Carolina. GSK's arguments that it has multiple facilities and over 1,000 employees in California, that it provides millions of dollars in clinical grants to California, and that it sells its protease inhibitors in California are entirely irrelevant to a proper venue inquiry. (*Id.* at 9). As noted above, none of GSK's California employees are potential witnesses in this case because none of the conduct giving rise to its claims occurred there.

Further, GSK's choice of forum is not entitled to deference simply because GSK has alleged in conclusory fashion in its complaint that Abbott "has committed and continues to commit anticompetitive acts in this District, and has harmed and continues to harm GSK in this District." (*Id.* at 8-9). This allegation presumably is based on the fact that both Abbott and GSK sell protease inhibitors in California. But the allegedly anticompetitive acts complained of are not the sales of protease inhibitors themselves but, rather, the pricing decisions Abbott made in Illinois and the entry of a license agreement in Illinois and North Carolina.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Thus, GSK's choice of forum is entitled to minimal deference (if any) because GSK is not a California corporation and none of the relevant events occurred in California (including GSK's purported loss of profits). Indeed, if anything relevant happened in California, as GSK suggests, GSK certainly would be able to identify at least one potential fact witness from that state.

**B. GSK Misconstrues The Standard For Transfer**

GSK attempts to bolster its venue arguments with legally irrelevant assertions relating to: (1) the Court's relatedness rulings; and (2) the Court's scheduling conference. These arguments have no merit.

**1. GSK's Motion To Relate Has No Bearing On Abbott's Venue Motion**

GSK claims that Abbott contradicted its effort to transfer this case to a different jurisdiction by failing to oppose GSK's motion to relate this case before a single judge in this district. (Opp'n at 1, 6-7). But one thing has nothing to do with the other. Regardless of whether this or another judge should preside over the GSK case if it were to remain in this district, Abbott has plainly satisfied the legal standard for transferring the case to a different district altogether.

Motions to relate under Local Rule 3-12 and venue motions under section 1404(a) are governed by different standards. Specifically, a related case motion examines whether: "(1) [t]he actions concern substantially the same parties, property, transaction or event; and (2) [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civ. Local Rule 3-12. This standard is not rigorous because even if, as here, the cases involve numerous non-overlapping claims raising completely distinct issues, the fact that there is one common claim and similar facts would suggest at least some duplication of labor.

Transfer, on the other hand, requires an analysis of various facts relating to the convenience of the parties and witnesses and the interests of justice. Indeed, numerous courts in California have transferred related cases to other jurisdictions. For example, in *Ironworkers Local Union No. 68 and Participating Employers Health and Welfare Fund v. Amgen, Inc.*, No. CV 07-5157 PSG (AGRx), 2008 WL 312309 (C.D. Cal. Jan. 22, 2008), the court transferred a case to New Jersey even though there were five other plaintiffs with similar cases in California. *Id.* at *8. It did so because the



Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

"Ironworkers d[id] not reside in California" and "the operative facts [did] not occur[] within the forum of original selection, [thus] that forum has no particular interest in the parties or the subject matter and the plaintiff's choice is entitled only to minimal consideration." *Id.* at * 4 (citation omitted).

The same is true here. GSK does not reside in California and none of the operative facts – *i.e.*, the negotiation of the GSK-Abbott license agreement or Abbott's pricing decisions on Norvir and Kaletra – occurred in California. Thus, particularly given the fact than none of the potential trial witnesses live here either, transfer to Illinois is proper.

Similarly, in *Lopez v. Chertoff*, No. C-06-500 RMW, 2007 WL 2113494, (N.D. Cal. July 20, 2007), a case cited by GSK, the plaintiff resisted a motion to transfer based, in part, on the fact that there was another action pending in California related to the same event. *Id.* at *3. The plaintiff argued that "because the present action is related to a case pending already before this court, it is in the interest of the judicial economy for the Northern District to retain venue over both actions." *Id.* Despite the presence of this related case, however, the court granted the defendant's motion to transfer. In doing so, the court gave primary consideration to the convenience of the witnesses and gave no weight at all to the plaintiff's choice of forum, since he did not live in the Northern District of California. *Id.* at *2-3. These same considerations favor transfer here. *See Alexander v. Franklin Res., Inc.*, No. C 06-7121 SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (granting motion to transfer despite existence of related case in the same district).

Finally, GSK failed to even mention – much less distinguish – *Chemi Spa v. GlaxoSmithKline*, No. Civ. A. 04-4545, 2004 WL 2980400 (E.D. Pa. Nov. 24, 2004), which Abbott cited prominently in its motion to transfer. There, like here, GSK contended that its case should be litigated with other related actions in the interest of judicial economy. *Id.* at *3-4. The court however, refused GSK's request, noting, among other things, that the cases involved different facts and different damages theories. *Id.* That is also true here because GSK's case involves many unique facts pertaining to the Abbott-GSK license agreement that will require additional witnesses and document discovery that have nothing to do with the direct purchaser actions.

In short, based on the above authority, the mere fact that this case has been related to the other Norvir actions under Local Rule 3-12 does not, in any way, suggest that it should remain here, rather than be transferred to Illinois under section 1404(a).

**2. Abbott's Participation In A Scheduling Conference With GSK Has No Bearing On Abbott's Venue Motion**

GSK further contends that transfer is improper because the Court consolidated this case with some of the other Norvir actions. (Opp'n at 1, 6). This argument also misses the mark.

According to GSK, by virtue of its preliminary rulings on scheduling, this Court already has determined "the most efficient means of resolving the Norvir antitrust actions," and this determination should not be "reconsider[ed]" (*Id.* at 1). To the contrary, however, at the conference in December, the Court specifically recognized that Abbott had filed a transfer motion and acknowledged the need for the case to proceed before that motion was resolved. (Park Decl., Ex. A at 54). And Abbott's counsel specifically sought and received the Court's consent to proceed with discovery without prejudice to its pending transfer motion. (*Id.* at 28-29, 54). Thus, neither this Court's preliminary rulings nor Abbott's conduct at the case management conference are relevant to the outcome of Abbott's transfer motion.

## III. CONCLUSION

For the foregoing reasons, Abbott respectfully requests that this action be transferred to the Northern District of Illinois.

Dated: February 21, 2008

WINSTON & STRAWN LLP

By: /s/ James F. Hurst
James F. Hurst
Attorneys for Plaintiff

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703