Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: 312-558-5600
Facsimile: 312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com; spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20007
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE,<br><br>Plaintiff,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant.<br><br>[caption continues next page] | **Case No. C 07-5702 CW**<br><br>*Related Per November 19, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date: March 6, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge: Hon. Claudia Wilken |

| | |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | **No. C 07-5470 CW**<br><br>*Related Per October 31, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date:      March 6, 2008<br>Time:     2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge:    Hon. Claudia Wilken |
| RITE AID CORPORATION; RITE AID HDQTRS, CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC. d/b/a BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; and CAREMARK, L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | **No. C 07-6120 CW**<br><br>*Related Per December 5, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6)**<br><br>Date:      March 6, 2008<br>Time:     2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge:    Hon. Claudia Wilken |

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5894

# INTRODUCTION

Abbott Laboratories files this brief to address two potential exceptions this Court considered at oral argument to *Cascade*'s below "average variable cost" rule, which the Ninth Circuit held is a prerequisite to a monopoly leveraging claim when – exactly like here – "a plaintiff . . . challenges a package discount as anticompetitive." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 2008 WL 269506, at *17 (9th Cir. 2008). Neither potential exception can be squared with *Cascade*, which recognizes that the below-cost rule has "broad application" and has been applied "regardless of the type of antitrust claim involved." *Id.* at *10 (quoting *Brooke Group v. Brown & Williamson*, 509 U.S. 209, 223 (1993)).

First, this Court asked whether an exception to *Cascade* should be crafted for pharmaceutical drugs, because consumer welfare is impacted by factors other than price, including potential health effects. *Cascade* precludes this potential exception because *Cascade* itself involved medical procedures at competing hospitals and, thus, the very same arguments would apply there too. But antitrust laws regulate competition, not public health. And the foundation of a monopolization claim is that the competing products are reasonably interchangeable, which is the only circumstance under which unilateral pricing decisions could potentially exclude competitors. If, in fact, non-price qualities are sufficiently important that the products are not reasonably interchangeable, pricing differences would have no impact on any products' sales. The non-interchangeable products would not even be in the same antitrust market, so the antitrust laws would not be implicated.

Second, the Court asked whether an exception to *Cascade*'s below "average variable cost" rule should be crafted for pharmaceuticals for which, as the Court noted, fixed costs are large and variable costs are small. But, again, *Cascade* precludes this potential exception because *Cascade* itself involved an industry with high fixed costs. This potential exception also would be inconsistent with *Cascade*'s rationale, which focuses on variable costs because that is what is relevant to whether a package discount might drive an equally efficient competitor to decrease output. Fixed costs are irrelevant to that analysis; they are not impacted by short-term changes in output. If variable costs

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

ABBOTT LABORATORIES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS
PLAINTIFFS' SHERMAN ACT CLAIMS PURSUANT TO RULE 12(b)(6), CASE NOS. C 07-5702 CW, C 07-5470 CW, C 07-6120 CW

are exceedingly low, that simply means the packaged discount would not drive an equally-efficient competitor to reduce output, which precludes antitrust liability.

## ARGUMENT

There is no relevant distinction between this case and *Cascade*. Both cases involved an alleged "deliberate use of unilateral pricing measures for anticompetitive purposes." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069, 1076 (2007). Both cases involve a defendant offering a purportedly "much lower price" for a monopoly health care product (tertiary surgical services in *Cascade* and ritonavir here) on the condition that the consumer also buy an additional health care product (secondary/primary services in *Cascade* and a boostable PI, lopinavir, here). And both cases involve the allegation that "competitor[s] who sell[] only a single product in the bundle" could not "match profitably the price created by the multi-product bundled discount." *Cascade*, 2008 WL 269506, at *6; *see also* 10/21/04 Order at 3, Docket No. 63, C 04-1511 CW (noting that Norvir's price increase allegedly made Kaletra "substantially cheaper than the cost of using all other PIs in conjunction with Norvir").

### I. There Is No Prescription Drug Exception To *Cascade*'s Below-Cost Pricing Element Of A Monopoly Leveraging Claim

As the Ninth Circuit stated in *Cascade,* "the Supreme Court has forcefully suggested that we should not condemn prices that are above some measure of incremental cost." *Cascade*, 2008 WL 269506, at *3, *10-11. The Ninth Circuit thus rejected the possibility of a monopoly leveraging claim unless the defendant prices below its incremental cost of production – a holding that was not conditioned on the characteristics of any individual product. Plaintiffs cannot evade *Cascade*'s broad holding based on a concern about a lack of fungibility of prescription drugs.

First, Plaintiffs' claims require proof that the relevant HIV drugs *are* reasonably interchangeable. Plaintiffs must show that Kaletra and Norvir-boosted PIs "'have reasonable interchangeability for the purposes for which they are produced.'" *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1163 (9th Cir. 2003) (quoting *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242, 250 (1959)). Stated another way, "the relevant market is comprised of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

defendant's product, products that are fungible, and of those products which the customer would consider to be reasonable alternatives." *IBM Peripheral Devices Antitrust Litig.*, 481 F. Supp. 965, 975 (N.D. Cal. 1979). If Kaletra were *not* reasonably interchangeable with other boosted PIs due to health concerns, Plaintiffs' monopolization claim would fail without regard to the price of Kaletra.

Second, *Cascade* itself involved competing providers of hospital services, where the same arguments about lack of fungibility and health issues could be made with equal force. The different hospitals had different facilities and different doctors – differences that could lead to different health outcomes and that would therefore be significant to purchasing decisions. The Ninth Circuit nevertheless applied the below-cost rule, finding that there was no relevant distinction between the "medical market" in that case and "the normal case" in which "above-cost pricing will not be considered exclusionary conduct for antitrust purposes[.]" *Cascade*, 2008 WL 269506, at *3, *11. The *Cascade* court also discussed *Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc.*, 920 F. Supp. 455, 469-71 (S.D.N.Y. 1996), where the district court applied the below-cost rule in the context of another health care product – blood diagnostics to detect the presence of viruses, including HIV. *See also Barr Labs. v. Abbott Labs.*, 978 F.2d 98, 107-109 (3d Cir. 1992) (applying below-cost rule to case involving prescription antibiotic); *Eon Labs. Mfg., Inc. v. Watson Pharmas., Inc.*, 164 F. Supp. 2d 350, 362 (S.D.N.Y. 2001) (same).

Third, there is neither any authority nor any antitrust policy supporting a special rule against charging a lower price for a pharmaceutical that is purportedly less beneficial for patients. Antitrust policy directly contradicts any such rule. As the Seventh Circuit explained, if "Kaletra is not as beneficial for consumers as the combination of Norvir and a protease inhibitor other than lopinavir, then it is easy to understand why Kaletra is sold at a discount: there's no antitrust rule against reducing the price of products that consumers desire less than competitive goods." *Schor v. Abbott Labs.*, 457 F.3d 608, 611 (7th Cir. 2006). Antitrust laws are meant to promote competition, and it is the essence of competition to charge less for less desired products.

In sum, the rationale for the antitrust laws' concern with discount pricing does not support an exception for prescription drugs. Abbott has been unable to find any court decision that has created

an exception to standard antitrust rules for pharmaceutical products or, for that matter, *any* products. Creating such an exception here would be contrary to binding circuit precedent.

**II.    *Cascade*'s "Average Variable Costs" Standard For Measuring Below-Cost Pricing Is Not Industry-Specific And Thus Applies In The Pharmaceutical Context**

This Court also asked whether an exception to *Cascade*'s "average variable costs" standard should be created for pharmaceutical drugs, where fixed costs, including the enormous cost of research and development, are the vast majority of total costs. The answer is no for several reasons.

First, *Cascade* forecloses any such exception because that case also involved an industry with high fixed costs. Like selling pharmaceuticals, providing hospital services involves high fixed costs. *United States v. Carilion Health System*, 707 F. Supp. 840, 845 (W.D. Va. 1989) ("Hospitals have high fixed costs."). Other courts have likewise applied the "average variable cost" standard to industries with high fixed costs, including specifically the pharmaceutical industry. *See Barr Labs.*, 978 F.2d 98; *Eon Labs. Mfg., Inc.*, 164 F. Supp. 2d 350; *Ortho*, 920 F. Supp. 455.

Second, creating a product-based exception to *Cascade*'s "average variable cost" standard would defeat the Ninth Circuit's express purpose for creating a bright-line rule – that is, to provide "clear guidance for sellers that engage in bundled discounting practices." *Cascade*, 2008 WL 269506, at *17. Without ever referencing individual product characteristics, the Ninth Circuit created that bright-line rule after reviewing Supreme Court precedent, its own decisions, and decisions of other courts, as well as the opinions of leading commentators – nearly all of which favored marginal cost or its proxy, average variable cost, as the appropriate measure of costs. The Ninth Circuit specifically declined to use average total costs – a measure that would have incorporated fixed costs, including costs associated with research and development – because "such an approach is inconsistent with the Supreme Court's instruction in *Brooke Group* that predatory prices are those below 'some measure of *incremental* costs.'" *Id.* at *18 n.19 (Ninth Circuit's emphasis) (quoting *Brooke Group*, 509 U.S. at 223). Indeed, in *Cascade*, the Ninth Circuit took *as a given* based on Supreme Court cases that *only* incremental costs could be considered. It thus

addressed only the further refinement of whether the appropriate measure of incremental costs should be marginal costs or variable costs – both of which exclude fixed costs.

Third, the proposed exception conflicts with *Cascade*'s rationale of "ensur[ing] that the only bundled discounts condemned as exclusionary [would be] those that would exclude an equally efficient producer of the competitive product or products." 2008 WL 269506, at *17. This rationale is consistent only with a standard based on marginal or average variable cost. Basic economic theory teaches that a producer will decide whether to expand or contract output based upon the margin between the amount of revenue it will receive and the amount it will spend/save from output changes. The producer's fixed costs – here, most significantly, research and development costs – will be irrelevant because those have already been incurred and will not change based upon the change in output. This is true regardless of the absolute or relative size of the fixed costs.

In sum, a special exception to *Cascade*'s "average variable costs" standard would be inconsistent with *Cascade*'s explicit holding, as well as the rationale for the standard.[1]

## CONCLUSION

For the reasons set forth above and in Abbott's moving papers, this Court should dismiss Plaintiffs' Sherman Act claims.

Dated: March 13, 2008                     WINSTON & STRAWN LLP

By:  /s/ James F. Hurst
     James F. Hurst
     Attorneys for Defendant
     ABBOTT LABORATORIES

---

[1] At oral argument, Plaintiffs for the first time suggested *Cascade* should not apply because Abbott currently lacks FDA approval to sell lopinavir separately from the Kaletra bundle. This is specious, as confirmed by the Antitrust Modernization Commission's report, on which *Cascade* centrally relied: "Bundling entails the sale of two or more products as a package. **Bundled products may be sold only in a package** or as part of a package and separately as well." Antitrust Modernization Commission Report And Recommendations (April 2007) 94 (emphasis added). What matters under *Cascade* is whether there are "single product rival[s]" for lopinavir, not whether Abbott can or does sell its lopinavir separately. *Cascade*, 2008 WL 269506 at *16. As the Ninth Circuit explained, "the principal anticompetitive danger of the bundled discount" is that "the discounts could freeze [competitors] out of the market for [boosted PIs] because [the competitors] do[] not offer the same array of [products] as [Abbott]." *Cascade*, 2008 WL 269506 at *7.