1  IRELL & MANELLA LLP
   Alexander F. Wiles (CA 73596) awiles@irell.com
2  Brian Hennigan (CA 86955) bhennigan@irell.com
   Stephanie Kaufman (CA 162644) skaufman@irell.com
3  Trevor V. Stockinger (CA 226359) tstockinger@irell.com
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone:   (310) 277-1010
5  Facsimile:    (310) 203-7199

6  ARNOLD & PORTER LLP
   Kenneth A. Letzler (*Admitted Pro Hac Vice*) Kenneth_Letzler@aporter.com
7  555 Twelfth Street, NW
   Washington, DC  20004-1206
8  Telephone:   (202) 942-5000
   Facsimile:    (202) 942-5999

9
   Attorneys for Plaintiff
10  GlaxoSmithKline

11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                       OAKLAND DIVISION

15  SmithKline Beecham Corporation d/b/a/      )   **Case No. C07-5702 (CW)**
    GlaxoSmithKline,                           )
16                                             )   *Related per November 19, 2007 Order to*
                                               )   **Case No. C-04-1511 (CW)**
17                        Plaintiff,           )
                                               )
18              v.                             )   **GLAXOSMITHKLINE'S OPPOSITION**
                                               )   **TO MOTION OF ABBOTT**
19  Abbott Laboratories,                       )   **LABORATORIES TO TRANSFER**
                                               )   **PURSUANT TO 28 U.S.C. § 1404(a)**
20                        Defendant.           )
                                               )
21                                             )   **Date:          March 6, 2008**
                                               )   **Time:          2:00 p.m.**
22                                             )   **Courtroom:  2 (4th Floor)**
                                               )   **Judge:        Hon. Claudia Wilken**
23  _____  )

24

25                       **UNREDACTED VERSION**

26

27

28

1

## TABLE OF CONTENTS

2
Page

3  INTRODUCTION........................................................................................................1

4  STATEMENT OF FACTS............................................................................................3

5  ARGUMENT ................................................................................................................6

6      I.     GSK's Choice Of Forum Should Not Be Disturbed..............................8

7      II.    Because This Court Has Already Combined For Discovery Purposes
              And Trial A Host Of Norvir Antitrust Cases, The Interests Of
8             Justice Weigh Heavily Against Transferring GSK's Case. ...................11

9      III.   As California Is Convenient For The Parties And Witnesses, This
              Case Should Not Be Transferred To Illinois........................................14

10

11     IV.    Conclusion...........................................................................................16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*,
  503 F.2d 384 (9th Cir. 1974)...........................................................................................11

5

6

*Bratton v. Schering-Plough Corp.*,
  No. CV 07-0653 PHX-JAT, 2007 WL 2023482 (D. Ariz. July 12, 2007) ......................15

7

*Cont'l Grain Co. v. The FBL-585*,
  384 U.S. 19 (1960) ..................................................................................................... 2, 11

8

9

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)............................................................................................7

10

*Dennison v. Metro. Life Insurance Co.*,
  No. C 07-0796 MMC, 2007 WL 2221055 (N.D. Cal. Aug. 1, 2007) ................................8

11

12

*Ellis v. Hollister, Inc.*,
  No. S-05-559 LKK/GGH, 2006 WL 1132377 (E.D. Cal. Apr. 14, 2006) ............... passim

13

*Gerin v. Aegon USA, Inc.*,
  No. C 06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)..................................10

14

15

*Gintz v. Jack in the Box, Inc.*,
  No. C 06-02857 CW, 2007 WL 397306 (N.D. Cal. Feb. 1, 2007) ................................7, 8

16

*Harms v. Experian Info. Solutions, Inc.*,
  No. C 07-0697 JF, 2007 WL 1430085 (N.D. Cal. May 14, 2007)...................................10

17

18

*Jarvis v. Marietta Corp.*,
  No. C 98-4951 MJJ, 1999 WL 638231 (N.D. Cal. Aug. 12, 1999) .................................15

19

*London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*,
  No. C 96-1512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) .............................2, 11

20

21

*Lopez v. Chertoff*,
  No. C 06-5000 RMW, 2007 WL 2113494 (N.D. Cal. July 20, 2007) .............................15

22

*Manchak v. Bio Gro Systems, Inc.*,
  No. CV 93-4108 DT (EX), 1993 WL 726863 (C.D. Cal. Nov. 29, 1993).......................14

23

24

*Panavision Int'l, L.P. v Toeppen*,
  141 F.3d 1316 (9th Cir. 1998)........................................................................................14

25

*Reynolds v. Fortis Benefits Ins. Co.*,
  No. C 06-06216 SI, 2007 WL 484782 (N.D. Cal. Feb. 9, 2007) ....................................15

26

27

*Royal Queentex Enter. Inc. v. Sara Lee Corp.*,
  No. C 99-4787 MJJ, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000) .................................7, 9

28

- ii -

GLAXOSMITHKLINE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(A)
CASE NO. C-07-5702 CW

1799042

1

                                                                                          Page

2

3   *Silverlit Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.*,
4          No. C 06-7966 CW, 2007 WL 521239 (N.D. Cal. Feb. 15, 2007) ........................ 7, 12, 14

5   *SmithKline Beecham Corp. v. Abbott Laboratories*,
           Case No. 07-5702 CW ...................................................................................................... 6

6   *U.S. v. Approx. $15,630.00 in U.S. Currency*,
7          No. Civ. 07-0452 FCD KJM, 2007 WL 1831143 (E.D. Cal. June 25, 2007) .................. 12

8   *Van Dusen v. Barrack*,
           376 U.S. 612 (1964) ........................................................................................................ 7

9   **Statutes**

10  28 U.S.C. § 1404(a) ............................................................................................................... passim

11  **Other Authorities**

12  N.D. Cal. Civ. L. Rule 3-12 ........................................................................................................ 7

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iii -

GLAXOSMITHKLINE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(A)
CASE NO. C-07-5702 CW

1799042

1

**INTRODUCTION**

2      Plaintiff SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline ("GSK") submits this

3  opposition to the motion of defendant Abbott Laboratories ("Abbott") to transfer GSK's lawsuit to

4  the Northern District of Illinois.  Abbott's motion defies common sense.  The judicial efficiencies

5  and convenience gains from retaining GSK's case are obvious and overwhelming.  Eight cases (the

6  "Norvir antitrust actions") – all asserting violations of the Sherman Act by Abbott and all based on

7  Abbott's anticompetitive and illegitimate Norvir price increase – are pending in this very Court.

8  GSK's case has been combined for discovery and trial with five of these pending actions, and has

9  been related to the other two pending actions.  The Court already considered and recognized the

10  benefit of hearing these cases together when it related GSK's case to the pending Norvir antitrust

11  cases and then combined it with five other newly filed cases for discovery and trial.  Tellingly,

12  Abbott did not contest these decisions.  Nor has it moved to transfer a single other related case out

13  of this District.   Abbott's motion does not provide any reason to reconsider the Court's

14  determination concerning the most efficient means of resolving the Norvir antitrust actions.

15      Abbott has not and cannot meet its heavy burden to show that GSK's choice of forum

16  should be disturbed in the interest of justice or for the convenience of the parties or witnesses.

17  First, courts give significant deference to a plaintiff's choice of forum, and GSK's choice of the

18  Northern District of California is entitled to such deference.  This case involves pharmaceutical

19  treatments for HIV/AIDS.  Although not a California corporation (GSK's HIV/AIDS business is

20  based in North Carolina), GSK's claims arise out of conduct that affects this District.  California

21  has the second largest population in the United States of individuals living with HIV/AIDS, and is

22  the third largest state in the nation for sales of GSK's protease inhibitors.  Abbott's illegal

23  misconduct in raising the price of Norvir by 400 percent and in taking other steps to eliminate

24  competition for its protease inhibitor, Kaletra, not only harmed these vulnerable patients by

25  increasing the costs of HIV/AIDS treatments, it also inhibited GSK's ability to provide these

26  California patients with life saving drugs – reducing its revenue and market share.  Indeed, the

27  California Attorney General has investigated Abbott's Norvir price increase indicating the

28  Attorney General's recognition of its impact on California.  Instead of addressing the strong

connections GSK's suit has to California, Abbott's motion repeats – on an average of more than once every other page – that GSK is forum shopping.  Yet, Abbott offers no facts or law to support its attack, and repetition does not make it true.  GSK's choice of forum recognizes the connection of its claims to California, and provides the court system and the parties with efficiencies from having eight related suits tried in the same court.

Second, the interests of justice require that this Court retain GSK's case.  It is black letter law, enunciated by the Supreme Court, that where multiple related suits are brought, they should be litigated and tried in the same forum to avoid wasting time, money and energy.  *See Cont'l Grain Co. v. The FBL-585*, 384 U.S. 19, 26 (1960), quoted in *London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*, No. C 96-1512 CW, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996) (Wilken, J.).  The avoidance of such waste is the very purpose of section 1404(a).  Yet, Abbott's request to transfer this case to Illinois would have the opposite result: different forums – one not yet fully familiar with all the facts and law – would be simultaneously hearing cases involving the same facts, substantially similar discovery issues and virtually the same legal issues.  This result squanders judicial resources and could lead to inconsistent outcomes.

Finally, retaining GSK's suit in this District is more convenient for the parties and the witnesses than granting Abbott's transfer motion.  Significant discovery has already been conducted relating to GSK's claims in the related *Doe/SEIU* litigation.  The parties benefit from litigating in a forum where related discovery has taken place.  For example, re-production of the *Doe/SEIU* discovery has already been facilitated by this Court because of its jurisdiction over protective orders governing disclosure of these materials.  As a further example, Abbott filed consolidated motions aimed at all plaintiffs, subject to all plaintiffs' consolidated responses and consolidated oral argument.  Transfer would subject GSK to re-briefing and re-arguing the issues raised in these consolidated motions.

Further, California is a more convenient forum than Illinois for witnesses.  GSK and Abbott witnesses must be deposed or testify in both GSK's case and the other newly filed Norvir antitrust cases with which GSK's case has now been combined.  By proceeding in this Court, these witnesses will only need to be deposed or testify at trial once in the combined actions.  Abbott's

GlaxoSmithKline's Opposition to Abbott Laboratories' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a)
Case No. C-07-5702 CW

1    proposal to transfer this case to Illinois has the opposite outcome – witnesses will need to be

2    deposed or testify twice, once in the California actions and once in the *GSK* action.  If disputes

3    arise over those depositions, the plaintiffs in each forum would have to address those disputes

4    separately and Abbott would have to address those disputes in two courts rather than just one.

5    Again, such a result is just the opposite of the purpose of section 1404(a) – to increase efficiency

6    and convenience.

7        Abbott's motion to transfer this case turns section 1404(a) on its head.  In the interest of

8    justice and to further the convenience to the parties and witnesses, this Court should deny Abbott's

9    motion.

10                              **STATEMENT OF FACTS**

11        This case involves the extensive harm Abbott has inflicted through its scheme to continue

12    its domination of the market for boosted protease inhibitors.  The relevant allegations in the

13    Complaint are as follows: Protease inhibitors are used to treat patients with HIV/AIDS.

14    Complaint at ¶¶ 12-13.  Through its sales of its own products, Norvir and Kaletra, Abbott has long

15    dominated the market for boosted protease inhibitors and the market for drugs that boost the

16    effectiveness of those protease inhibitors.  *See id.* at ¶¶ 16, 19, 39 & 40.  For years, Abbott allowed

17    its competitors, including GSK, to design, manufacture and sell their own protease inhibitors to be

18    co-prescribed with Abbott's drug, known as Norvir.  *See id.* at ¶ 14-16  When combined with

19    Norvir, other protease inhibitors become more effective drugs because their active ingredient stays

20    in the blood of patients longer.  *Id.* at ¶ 15.  The increased blood levels of the paired protease

21    inhibitor makes that drug more effective at inhibiting replication of the HIV virus and, critically,

22    reduces the ability of the virus to mutate into forms that are resistant to the drug.  *See id.*  Abbott's

23    drug, Kaletra, combines in a single pill the booster Norvir and a protease inhibitor known as

24    lopinavir.  *Id.* at ¶ 19.

25        In 2001, Abbott demanded that its competitors, including GSK, take licenses to its

26    intellectual property or face infringement suits for their actions in promoting and selling their

27    protease inhibitors for coadministration and coprescription with Norvir.  *Id.* at ¶¶ 20 & 22. GSK

28    and other major competitors acquiesced to Abbott's demand and signed license agreements with

- 3 -

1   Abbott, thereby eliminating any ability Abbott might have had to use its intellectual property to

2   exclude those rival boosted products. *Id.* at ¶¶ 20-23. Then, in 2003, shortly after GSK and one

3   other Abbott competitor had introduced two new, more effective protease inhibitors – which relied

4   principally on boosting by Norvir – Abbott implemented a plan to protect Kaletra's dominance of

5   the boosted protease inhibitor market. *Id.* at ¶ 24. After considering and ultimately rejecting as

6   too problematic the idea of physically removing Norvir from the United States market, Abbott

7   took steps to do effectively the same thing through price: it increased the wholesale acquisition

8   cost of Norvir by an unprecedented 400 percent with the goal of making it effectively unavailable

9   to a large segment of the HIV/AIDS population. *Id.* at ¶¶ 24-29. This price increase was orders of

10  magnitude higher than the typical four percent per year increase Abbott had taken on Norvir

11  periodically since its launch. *See id.* at ¶ 30.

12      Despite the change in price of Norvir, Abbott left unchanged the price of its boosted

13  protease inhibitor, Kaletra, which combined Norvir with a different PI, lopinavir. *Id.* To address

14  problems with continued uptake and acceptance of the dramatically higher-priced Norvir among

15  the HIV community, Abbott, among other things, lied to the public about its reasons for taking the

16  Norvir price increase and published misleading price comparisons. *Id.* at ¶¶ 31-34. Abbott's

17  conduct had several harmful effects. It increased costs to HIV patients who used boosted protease

18  inhibitors, extended Abbott's dominance over that market, decreased the choices available to users

19  of boosted protease inhibitors and caused GSK, and other Abbott competitors, to lose sales,

20  profits, market share and other income. *Id.* at ¶¶ 35-37, 45-48, 50.

21      GSK filed this lawsuit on November 9, 2007. Like the plaintiffs in the other Norvir

22  antitrust cases, GSK alleges that Abbott's conduct violates Section 2 of the Sherman Act. GSK

23  further alleges that Abbott's conduct violates North Carolina's anti-monopolization statute,

24  constitutes a breach of the license agreement between GSK and Abbott and violates a provision of

25  North Carolina's Unfair Trade Practices Act prohibiting various forms of unfair competition.

26      GSK's claims are based in part on the harm Abbott has inflicted on GSK and HIV positive

27  persons in California. *See, e.g.*, Complaint at ¶ 10 ("Abbott … has harmed and continues to harm

28  GSK in this District."). Abbott's price increase on Norvir impacted the HIV community and

- 4 -

GlaxoSmithKline's Opposition to Abbott Laboratories' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a)
Case No. C-07-5702 CW

1799042

1   damaged GSK nationally.  It had a disparate impact in California.  For example, almost 59,000
2   residents of California are currently living with AIDS, second only to New York among the 50
3   states.  Declaration of Sara M. Bason ("Bason Decl.") at ¶ 3 & Exs. 1 & 2.  This represents 13.6
4   percent of the total number of people living with AIDS in the United States.  *Id.* at ¶ 3 & Ex. 2.  In
5   addition, through 2005, California accounted for 14.5 percent of cumulative AIDS cases, again
6   second only to New York. *Id.* at ¶ 3 & Ex. 3.  GSK extensively distributes its protease inhibitors in
7   California.  California is the third largest state in the nation for GSK's sales of protease inhibitors.
8   *Id*. at ¶ 4.  In contrast, Illinois has accounted for less than 1 percent of GSK's total gross sales in
9   protease inhibitors in the last three years.  *Id.*  As Abbott acknowledges, "GSK … makes a
10  substantial amount of revenue from its sales of HIV drugs to the other plaintiffs in the related
11  cases," Motion at 4:27-5:1, and many of the members of the direct purchaser and patient class now
12  suing Abbott are California residents.  *See, e.g. Safeway* Complaint at 2:4-10.

13          As the Court is well aware, GSK's suit is but one of many challenging the legality of
14  Abbott's Norvir price increase under the federal antitrust laws.  Lawsuits making allegations
15  similar to GSK's have been pending in this Court for almost four years.  *Doe v. Abbott*
16  *Laboratories*, Case No. 04-1511 CW (filed Apr. 19, 2004); *Service Employees Int'l Union Health*
17  *and Welfare Fund v. Abbott Laboratories*, Case No. 04-4203 CW (filed Oct. 4, 2004).  Both of
18  those are class actions – one on behalf of a class of patients, the other on behalf of a class of third
19  party payors.   In addition, within a month of GSK's filing, direct purchasers of Norvir –
20  pharmacies and wholesale distributors – filed five additional cases seeking redress from harm
21  caused by Abbott's price increase.  *Safeway Inc. et al. v. Abbott Laboratories*, Case No. 07-5470
22  CW (filed Oct. 26, 2007); *Meijer, Inc. v. Abbott Laboratories*, Case No. 07-5985 CW (filed Nov.
23  27, 2007); *Rochester Drug Co-Operative, Inc. v. Abbott Laboratories*, Case No. 07-6010 CW
24  (filed Nov. 27, 2007); *Louisiana Wholesale Drug Co., Inc. v. Abbott Laboratories*, Case No. 07-
25  6118 CW (filed Dec. 3, 2007); *Rite Aid Corp. v. Abbott Laboratories*, Case No. 07-6120 CW
26  (filed Dec. 3, 2007).[1]

27          [1] On January 11, 2008, the putative class representative plaintiffs in the *Meijer, Inc.*,
28  *Rochester Co-Operative, Inc.*, and *Louisiana Wholesale Drug Co., Inc.*, filed a consolidated
    amended complaint on behalf of the direct purchaser class they seek to represent.

- 5 -

1    Without any objection from Abbott, all of these cases were related to the earliest filed case

2    pursuant to this Court's Local Rules. *See, e.g.*, Related Case Order (Doc. #7) (filed Nov. 19, 2007)

3    in *SmithKline Beecham Corp. v. Abbott Laboratories*, Case No. 07-5702 CW. This Court

4    consolidated the *Doe* and *SEIU* cases for discovery and trial. On December 10, 2007, after the

5    Court had issued an order directing the parties to meet and confer on a schedule that would have

6    allowed the newly filed Norvir antitrust cases to be tried with the *Doe* and *SEIU* cases, Abbott

7    filed a motion to transfer the *GSK* case – and only the *GSK* case – to the Northern District of

8    Illinois.

9    On December 11, 2007, the Court held a joint Case Management Conference in all of the

10    Norvir antitrust cases. When both the plaintiffs in those cases and Abbott agreed that the newly

11    filed cases should not be set for trial with *Doe* and *SEIU*, the Court elected to set them on two

12    separate tracks. For all of the newly filed cases, including the *GSK* case, the Court set a joint

13    discovery and trial schedule. The Court affirmed that it would be "a very undesirable clear

14    choice" to separate the *GSK* action from the remaining actions. *See* Declaration of Trevor V.

15    Stockinger ("Stockinger Decl."), Ex. A at 23:4.

16    Abbott has not acted in a way consistent with its request in its motion to transfer. Abbott

17    did not oppose relating GSK's case to the additional actions, nor did it oppose combining the

18    newly filed cases for discovery, motion practice and trial. During the December 11, 2007 Case

19    Management Conference, Abbott's counsel stated that nothing occurred to him "as an obstacle" to

20    combining the *GSK* and direct purchaser cases for trial. *Id.* at 24:7-8. Indeed, since filing its

21    motion, Abbott has issued numerous discovery requests going to the substance of the claims

22    pending in this Court, has filed an omnibus motion relating to all newly filed cases, including

23    GSK's, and has consented to mediation involving all cases, including GSK's.

24                       **ARGUMENT**

25    Courts consider the following basic factors when determining whether transfer is

26    appropriate under 28 U.S.C. § 1404(a): "(1) the plaintiff's choice of forum; (2) the convenience of

27    the parties; (3) the convenience of the witnesses; and (4) the interests of justice." *Ellis v. Hollister,*

28    *Inc.*, No. S-05-559 LKK/GGH, 2006 WL 1132377, at *2 (E.D. Cal. Apr. 14, 2006); *see Silverlit*

- 6 -

1  *Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.*, No. C 06-7966 CW, 2007 WL 521239, at

2  *5 (N.D. Cal. Feb. 15, 2007) (Wilken, J.) (listing factors, including plaintiff's choice of forum,

3  convenience of the forum, and interests of justice); *Gintz v. Jack in the Box, Inc.*, No. C 06-02857

4  CW, 2007 WL 397306, at *2 (N.D. Cal. Feb. 1, 2007) (Wilken, J.) (same); *see also* 28 U.S.C.

5  § 1404(a).

6      "Under section 1404(a), the moving party has the burden of showing that the balance of

7  conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption

8  in favor of the plaintiff's choice of forum." *Royal Queentex Enter. Inc. v. Sara Lee Corp.*, No. C

9  99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal. Mar. 1, 2000). "[U]nless the balance of the

10  § 1404(a) factors is strongly in favor of the defendants, the plaintiff's choice of forum should

11  rarely be disturbed." *Silverlit Toys*, 2007 WL 521239, at *5 (internal citation omitted); *see Decker*

12  *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (a "strong showing" is

13  necessary "to warrant upsetting the plaintiff's choice of forum."). A motion to transfer may only

14  be granted where "the convenience of parties and witnesses and the interest of justice *require*

15  transfer to another district." *Silverlit Toys*, 2007 WL 521239, at *6 (emphasis added).

16      Abbott has not met, and cannot meet, this heavy burden. When this Court entered the

17  order relating GSK's case to the *Doe* and *SEIU* cases, it applied Local Rule 3-12, which provides

18  that cases be related where "[t]he actions concern substantively the same parties, property,

19  transaction or event" and where there would be "an unduly burdensome duplication of labor and

20  expense or conflicting results if the cases were conducted before different Judges."

21  Civil L.R. 3-12(a). Abbott's transfer motion requires a similar analysis. *Cf. Van Dusen v.*

22  *Barrack*, 376 U.S. 612, 616 (1964) (purpose of section 1404(a) is to "prevent the waste of time,

23  energy, and money and to protect litigants, witnesses and the public against unnecessary

24  inconvenience and expense.") (internal quotations omitted); *Ellis*, 2006 WL 1132377, at *5

25  (refusing to transfer related case because of added burden and risk of inconsistent judgments).

26  Abbott did not contest the motions of GSK or any other related plaintiff to relate these cases. Nor

27  did Abbott oppose combining the newly filed cases on a single track for discovery and trial,

28  something the Court explicitly stated it was doing to promote the efficient resolution of these

- 7 -

1   cases. Stockinger Decl., Ex. A at 11:19-22. Abbott's motion to transfer presents no arguments or

2   facts requiring this Court to revisit those determinations. GSK's choice of forum, the Northern

3   District of California, remains the most efficient and convenient forum in which to resolve this

4   dispute.

5   **I.      GSK's Choice Of Forum Should Not Be Disturbed.**

6          The very cases Abbott cites recognize that "[a]s a general rule, the plaintiff's choice of

7   forum is given significant weight and will not be disturbed unless other [convenience or interest of

8   justice] factors weigh substantially in favor of transfer." *Gintz*, 2007 WL 397306, at *2; *see Ellis*,

9   2006 WL 1132377, at *1 ("Generally, the court affords plaintiff's choice of forum great weight.").

10  Abbott seeks to diminish the import of GSK's choice of forum by claiming that "none of the

11  transactions giving rise" to its claims occurred in this District and by asserting that GSK is

12  "blantant[ly] forum shopping." Motion at 2:24-3:4; 8:10-28, 9:14-9:28. These arguments are

13  wrong.

14         Abbott is incorrect when it argues that GSK's choice of forum should be discounted

15  because GSK is not a California corporation. *See Id*. at 8:10-12. In *Dennison v. Metro. Life*

16  *Insurance Co.*, No. C 07-0796 MMC, 2007 WL 2221055 (N.D. Cal. Aug. 1, 2007), a less than

17  one-page opinion cited by Abbott, the court gave no weight to the choice of forum only because

18  *none* of claims arose in the district, and the plaintiffs admitted that in their complaint. "[P]laintiff's

19  choice of the instant forum is not entitled to deference, because none of the transactions giving rise

20  to plaintiff's claims occurred in this District. Indeed, in her complaint, plaintiff alleges '[t]his

21  action arises outside the state of California.'" *Id.* at *1 (second alteration in original). Similarly, in

22  *Gintz*, this Court gave only minimal consideration to the choice of forum of a class of non-

23  California employees where *none* of the transactions leading to their claims occurred in California.

24  *Gintz*, 2007 WL 397306, at *3.

25         These cases are not at all like GSK's. As an initial matter, GSK's Complaint alleges that its

26  claims arise from conduct in this District: "Abbott has business locations in this District, has

27  transacted and continues to transact business in this District, has committed and continues to

28  commit anticompetitive acts in this District, and has harmed and continues to harm GSK in this

- 8 -

1    District."  Complaint ¶ 10.  Indeed, Abbott has four corporate facilities in California, more

2    locations than in any other state.  Stockinger Decl., Ex. B.  GSK has two regional service offices

3    and 1,000 employees in California.  Bason Decl. at ¶ 5.  It provided $21 million in clinical grants

4    to California in 2006 – more than any other state in the nation.  Id.  And, GSK provided $15

5    million for patient assistance programs, including HIV/AIDS related programs, in 2006.  Id.

6    California has the second largest population of individuals living with AIDS of any state.  Id. at

7    ¶ 3.  As a consequence, California is the third largest state in the nation for sales of GSK's

8    protease inhibitors.  Id.  By contrast, Illinois – the forum which Abbott avers has closer

9    connections to this dispute than California – only accounts for less than one percent of GSK's

10   protease inhibitor sales,  about one-eighth of the value of sales made in California.  Id.

11       Abbott itself acknowledges the strong connection of California to this suit when it admits

12   that GSK sells its protease inhibitors to the other plaintiffs in this suit, many of whom are

13   California residents.  Rite Aid Complaint at ¶¶ 1-4; Doe v. Abbott Complaint 3:7-10; Safeway

14   Complaint at 2:4-10, 2:26-3:3.  Abbott's pricing misconduct directly and negatively impacted

15   GSK's ability to generate revenues and sell its life saving drugs in California.[2]  It is simply not the

16   case, as Abbott repeatedly and incorrectly asserts, that GSK's case "lacks any connection to

17   California whatsoever" or "has nothing to do with California."  Motion at 3:5-6 & 2:3.[3]

18       Abbott's repeated forum shopping accusation – "GSK's lawsuit is the epitome of forum

19   shopping," id. at 8:18; "GSK's forum shopping is transparent," id. at 9:28 – is equally baseless.[4]

20

21       [2] Along these lines, GSK has not admitted that it was only harmed in North Carolina, as

22   Abbott argues.  E.g., Motion at 7:24-25.  While GSK "has been harmed in North Carolina," as the
     Complaint alleges, it was also harmed in this District.  See Complaint at ¶ 10.

23       [3] Further, as is evident from the facts recited above concerning California's large AIDS

24   population, Abbott is wrong when it suggests that California has no interest in resolving this
     dispute.  See Motion at 9:7-13.  Indeed, in 2004 the California Attorney General, Bill Lockyer,
     opened an investigation into Abbott's Norvir price increase.  And, it is of no moment that Illinois

25   may also have an interest in resolving an action.  Where several states have an interest in resolving an
     action, this factor does not favor transfer.  See, e.g., Royal Queentex, 2000 WL 246599 (finding

26   that when both forums have a significant interest, this factor does not weigh in favor of transfer).

27       [4] Indeed, a similar accusation against Abbott could be leveled.  Its motion to transfer seeks
     to move this case to the Northern District of Illinois, where Abbott has received a favorable

28   disposition against a plaintiff asserting an antitrust claim based on the Norvir price hike.  Motion
     at 4:18-22.

- 9 -

GLAXOSMITHKLINE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(A)
CASE NO. C-07-5702 CW

1799042

1   Abbott attempts to support its accusation with one case that is prominently marked "not designated

2   for publication and may not be cited," *Harms v. Experian Info. Solutions, Inc.*, No. C 07-0697 JF,

3   2007 WL 1430085, at n.1 (N.D. Cal. May 14, 2007), and another case that has nothing to do with

4   the facts here. In the latter case, *Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL

5   1033472 (N.D. Cal. Apr. 4, 2007), the court found "a textbook case of forum-shopping." *Id.* at *7.

6   There, the court found that "Plaintiffs Gerin and Hughes, having utterly failed in the Georgia

7   Action, have chosen to simply re-file their dismissed complaint in another forum – a forum which

8   Plaintiffs concede is more favorable to securities class-actions. To add insult to injury, Gerin and

9   Hughes have shopped for another forum while review of the first-filed case is still pending before

10  the Eleventh Circuit." *Id.* (internal citation omitted).

11      Abbott has presented no facts suggesting that GSK has engaged in any forum shopping –

12  let alone "textbook" forum shopping as in *Gerin*. The only possible support Abbott musters is its

13  speculation that GSK employed a "wait-and-see strategy" in filing suit. Motion at 9:17-19. It

14  apparently fails to occur to Abbott that GSK's suit came only after the Wall Street Journal

15  disclosed internal Abbott documents suggesting that Abbott had demanded millions of dollars in

16  upfront fees from GSK for the right to promote Lexiva with Norvir and then, with the ink barely

17  dry, plotted to take Norvir off the market and deny GSK the benefit of its paid-for rights once

18  GSK's check had cleared the bank. It turns out that the truth is worse than the newspaper story.

19  Once GSK had access to documents produced in this Court – something that would not have

20  happened so quickly if GSK had inefficiently filed in another court – it learned that Abbott hadn't

21  waited until the ink was dry to hatch plans to undercut the benefit GSK expected to get from the

22  contract. In the fall of 2002, Abbott's negotiating team in one room was demanding millions of

23  dollars in upfront fees from GSK plus royalties measured by Lexiva sales, whether for boosted or

24  unboosted use, while in another room, Abbott was planning to pull Norvir from the market.

25  Stockinger Decl., Ex. C. It is hard to fathom what is more astounding: Abbott's duplicitous

26  conduct or the fact that it complains that GSK took so long to sue.

27      But, even assuming GSK waited in filing suit, *when* GSK filed suit is not germane to the

28  question of *where* GSK filed suit, or the reasons for doing so. Abbott's baseless accusation of

- 10 -

forum shopping – like the rest of its motion – overlooks the obvious judicial efficiencies inherent in GSK's choice of forum.  GSK's choice should be honored.

**II.      Because This Court Has Already Combined For Discovery Purposes And Trial A Host Of Norvir Antitrust Cases, The Interests Of Justice Weigh Heavily Against Transferring GSK's Case.**

Because seven other cases are already pending in this district, the interests of justice clearly favor keeping GSK's case here.  Abbott's request to transfer would waste time, energy and money.  One of the very cases Abbott cites from this Court makes clear that, on the facts presented by this case, this factor compels denial of a transfer request:

> The "interests of justice" consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way.  A major consideration is the desire to avoid multiplicity of litigation from a single transaction.  In dictum, the Supreme Court has suggested that courts should give great weight to this consideration:  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."

*London and Hull*, 1996 WL 479013, at *3 (quoting *Cont'l Grain,* 364 U.S. at 26) (internal citations omitted)); *see also A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) ("The feasibility of consolidation is a significant factor in a transfer decision although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." (internal citations omitted)).  Transfer of the *GSK* case would lead to the very result the Supreme Court admonished against:  GSK's case, on the one hand, and the remaining direct and indirect purchaser actions, on the other, all stem from the same transaction – Abbott's illegitimate Norvir price – but would be simultaneously pending in different districts.

*Ellis v. Hollister, Inc.*, Case No. S-05-559 LKK/GGH, 2006 WL 1132377, is instructive. In that case, Hollister, Inc. and other defendants, moved to transfer two cases, *Dimaro v. Hollister*

1    and *Ellis v. Hollister*, from the Eastern District of California to Illinois.  *Id.* at *1.  A third case,

2    *DeFazio v. Hollister* was already pending in the Eastern District of California, and the Court had

3    previously rejected a request to transfer that case to Illinois.  *Id.* at *2.  All three cases alleged that

4    Hollister, Inc. violated provisions of ERISA, although the *Ellis* action also included an additional

5    issue unrelated to the other suits. *Id.* at *2.

6          First, the Court denied defendants' motion to transfer the *Ellis* case, highlighting the

7    importance of it being related to the *DeFazio* action:

8          [T]hese cases have now been related and it is clear that there is thus even less

9          reason to transfer this case to Illinois, as doing so may result in inconsistent

10         decisions as the facts and law at issue are very similar.

11   *Id.* at *3.

12         Then, the Court rejected transferring the *Dimaro* case despite the Court's

13   acknowledgement that none of the operative facts in *Dimaro* occurred in the Eastern District.  *See*

14   *id.*  "The fact that this case has now been related to *DeFazio* and *Ellis* weighs heavily against

15   defendants' motion.  Although plaintiffs' case will vary due to the individual circumstances of each

16   plaintiff, the general questions raised appear to be the same and will likely involve the same level

17   of discovery, etcetera."  *Id.* at *5.  The Court concluded:

18         Ultimately, the fact that *Ellis* and *DeFazio* must be tried here compels this court

19         to deny the motion for *Dimaro*.  Although the nucleus of *Dimaro* is in Illinois, it

20         just makes more sense to have all three of these cases heard in the same district by

21         the same judge.  Judicial resources are scarce and there is no need to burden a

22         second district with these cases.  Additionally, there is no need to expose the

23         parties to the risk of inconsistent decisions when the facts are so similar.  Since

24         the defendants will be litigating the other two cases here, the burden will not be

25         that much greater on them.

26   *Id.*; *see also U.S. v. Approx. $15,630.00 in U.S. Currency*, No. Civ. 07-0452 FCD KJM, 2007 WL

27   1831143 (E.D. Cal. June 25, 2007) (denying motion to transfer where eleven cases arising out of

28   the same federal investigation were all pending in the same court); *Silverlit Toys,* 2007 WL

- 12 -

GLAXOSMITHKLINE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(A)
CASE NO. C-07-5702 CW

1799042

521239, at *12 ("The interests of justice and judicial efficiency weigh against transfer because Defendants' blatant copying has required this Court to familiarize itself early with the case . . . It would be inefficient to require a judge in Utah to duplicate this effort.").

As in *Ellis*, it just "makes more sense" for this Court to retain the *GSK* case. GSK's case and the direct purchasers' cases have now been combined for discovery and trial, and thus are not at "substantially different stages of the litigation" as Abbott asserts. Motion at 10:6. Moreover, notwithstanding Abbott's argument to the contrary, these cases involve similar parties. Abbott is a defendant in each of the eight actions, and GSK and the direct purchaser plaintiffs are economically related. As Abbott's motion admits, GSK "makes a substantial amount of revenue from its sales of HIV drugs to the other plaintiffs in the related cases." *Id.* at 4:28-5:1. Thus, again notwithstanding Abbott's claims otherwise, there will be evidentiary overlap among these cases. For example, although GSK seeks lost profits and direct purchasers seek damages based on the amount of Abbott's overcharges, all parties will look to similar financial and market information. Further, and again contrary to Abbott's assertions, should Abbott assert a "patent immunity defense" in this case, the parties will look to similar evidence and make similar arguments in response. It is not the case that by taking a license to Abbott's intellectual property purportedly covering Norvir that GSK "has recognized" that Abbott's patent rights allow it unchecked pricing discretion in the relevant markets. *See id.* at 11:19-24. As this court has recognized: "People take licenses to things that they don't need to sometimes." Stockinger Decl., Ex. D at 20:14-16. In sum, on nearly every issue, the same thing is true: evidentiary and legal matters significantly overlap such that transferring this case would only lead to duplicated efforts – to the inconvenience of the Court and the parties. There is "no need to burden a second district" with GSK's case. *Ellis*, 2006 WL 1132377, at *5.

In fact, Abbott seems to concede that there are efficiencies when cases with similar facts and legal theories are handled in a single court. Yet, it claims that "placing separate cases before a single judge is a matter for the multi-district panel," not something for this Court to decide on a motion to transfer. Motion at 2:6-9. Such a suggestion is representative of the flawed logic throughout Abbott's motion. Abbott's suggestion seems to be that this case should be transferred

- 13 -

1  to Illinois whereupon a multidistrict panel could then transfer it back to this Court for pre-trial

2  proceedings only to eventually return to Illinois for a separate trial.  Such an inefficient approach

3  is plainly not in the interests of justice.

4  **III.    As California Is Convenient For The Parties And Witnesses, This Case Should Not Be**

5  **Transferred To Illinois.**

6  Not only is it more economical to litigate GSK's suit in this District, it is also more

7  convenient for both the parties and the witnesses.  Abbott's assertion that GSK has acted "in

8  complete disregard for the convenience of the parties and witnesses" by filing its action in a forum

9  where seven-related suits are pending makes no sense.  *Id.* at 3:4.

10  First, Abbott "is a large corporation with business contacts in California. [It] should not be

11  surprised or prejudiced by having suits brought against it in California."  *Manchak v. Bio Gro*

12  *Systems, Inc.*, No. CV 93-4108 DT (EX), 1993 WL 726863, at *2 (C.D. Cal. Nov. 29, 1993).  As a

13  multinational corporation, Abbott has significant contacts in this District.  Abbott has four

14  facilities in California, and California is one of the most important states for sales of protease

15  inhibitors in the nation, with the second largest population of AIDS patients.  Stockinger Decl.,

16  Ex. B; Bason Decl. ¶¶ 3-4.  Neither Abbott nor GSK is a stranger to California, and Abbott should

17  not be heard to claim that California is an inconvenient forum.  This is especially so when seven

18  other related cases are filed in this District, and Abbott has not challenged venue in any of those

19  cases.

20  Second, while "the location of the evidence and witnesses . . . is no longer weighed heavily

21  given the modern advances in communication and transportation," California is still the best forum

22  because of conveniences gained by litigating the related cases together.  *Silverlit Toys*, 2007 WL

23  521239, at *11 (internal alteration in original), *quoting Panavision Int'l, L.P. v Toeppen*, 141 F.3d

24  1316, 1323 (9th Cir. 1998).  For example, significant related document productions and written

25  discovery have already been served in this District in the *Doe/SEIU* matter.  The parties benefit

26  from the convenience of obtaining that discovery in this District where the Court is familiar with

27  the facts and has jurisdiction over the protective orders governing disclosure of this discovery.  *See*

28  *Bratton v. Schering-Plough Corp.*, No. CV 07-0653 PHX-JAT, 2007 WL 2023482, at *5 (D. Ariz.

- 14 -

1   July 12, 2007) (convenience factor weighs toward district with related cases because it is "the

2   center of discovery"); *Ellis*, 2006 WL 1132377, at *5 ("This argument [that the relevant

3   documents and witnesses are outside the forum] is again less convincing in light of the fact that

4   defendants will be litigating two cases using similar facts and documents here in California.").

5       Further, keeping GSK's action in this District will be less burdensome on witnesses than

6   transferring it to Illinois. For example, both GSK's and Abbott's employees will likely need to be

7   deposed in the direct purchaser cases. By retaining the *GSK* action in this District, these

8   witnesses' depositions (wherever they occur) will only be held in one location for one deposition

9   in the combined actions, rather than separately in actions pending in California and Illinois. This

10  will reduce the burden of travel and time, rather than increase it as Abbott suggests. And, Abbott

11  has already retained experts in the *Doe/SEIU* case that it will presumably use in the *GSK* and

12  direct purchaser actions. Two of these experts are California residents, and this District will thus

13  be more convenient for them than Illinois.

14      Tellingly, Abbott has not identified a single specific witness, or even group of witnesses,

15  who would be inconvenienced by denial of Abbott's motion to transfer. "[M]ere con[c]lusory

16  statements regarding inconvenience to potential witnesses are insufficient." *Reynolds v. Fortis*

17  *Benefits Ins. Co.*, No. C 06-06216 SI, 2007 WL 484782, at *6 (N.D. Cal. Feb. 9, 2007). Abbott

18  has not even attempted to meet the requirement that it show: 1) the identity of the witnesses to be

19  called, 2) where these witnesses are located, 3) the content of their testimony, and 4) why such

20  testimony is relevant to the case. *See Lopez v. Chertoff*, No. C 06-5000 RMW, 2007 WL

21  2113494, at *3 (N.D. Cal. July 20, 2007); *Jarvis v. Marietta Corp.*, No. C 98-4951 MJJ, 1999 WL

22  638231, at *4 (N.D. Cal. Aug. 12, 1999). Instead, Abbott merely asserts in an unspecified manner

23  that "all potential witnesses" are located in either Illinois, North Carolina, or Pennsylvania, which

24  are all locations "far away from California." Motion at 7:27. Such generalized statements are

25  insufficient to meet its burden, and thus even on its own terms Abbott has failed to demonstrate

26  that the "convenience of witnesses" factor weighs in favor of transfer. *See Reynolds*, 2007 WL

27  484782, at *6 (holding that defendants could not meet burden where they simply "point[ed] out"

28  that none of the potential witnesses resided in the Northern District of California).

1    **IV.    Conclusion**

2          For the foregoing reasons, GSK respectfully requests that this Court deny Abbott's motion

3    to transfer this case to Illinois.  The Northern District of California, where GSK chose to file suit,

4    is the most efficient and convenient forum for resolving this dispute.

5

6    Dated:  February 14, 2008                    IRELL & MANELLA LLP

7

8                                                By:  _____/s/ Trevor V. Stockinger_____

9                                                     Trevor V. Stockinger
                                                     Attorneys for GlaxoSmithKline
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GlaxoSmithKline's Opposition to Abbott Laboratories' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a)
Case No. C-07-5702 CW

1799042