IRELL & MANELLA LLP
Alexander F. Wiles (CA 73596) awiles@irell.com
Brian Hennigan (CA 86955) bhennigan@irell.com
Stephanie Kaufman (CA 162644) skaufman@irell.com
Trevor V. Stockinger (CA 226359) tstockinger@irell.com
Joshua Y. Karp (CA 254424) jkarp@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

ARNOLD & PORTER LLP
Kenneth A. Letzler (*Admitted Pro Hac Vice*) Kenneth_Letzler@aporter.com
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:   (202) 942-5000
Facsimile:    (202) 942-5999

Attorneys for Plaintiff
GlaxoSmithKline

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline,<br><br>    Plaintiff,<br><br> v.<br><br>Abbott Laboratories,<br><br>    Defendant. | **Case No. C 07-5702 (CW)**<br><br>*Related per November 19, 2007 Order to* **Case No. C 04-1511 (CW)**<br><br>**PLAINTIFF GLAXOSMITHKLINE'S OPPOSITION TO ABBOTT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>**Date:   July 10, 2008**<br>**Time:   2:00 p.m.**<br>**Courtroom: 2 (4th Floor)**<br>**Judge:  Hon. Claudia Wilken** |

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ON RELEVANT RULINGS. ...................................................................3

III. ARGUMENT .........................................................................................................................5

    A. Certification Of Interlocutory Appeal Is Only Appropriate In Exceptional Circumstances And When All Three Statutory Requirements Are Met. ....................................................................................................5

    B. Abbott Cannot Sustain Its Burden To Show That Any, Much Less All, Of The Statutory Requirements Are Met. ...........................................................6

        1. Abbott Has Not Shown that the Issue Abbott Seeks to Certify is a "Controlling Question of Law." ................................................6

            a. This case cannot be certified because the issue Abbott seeks to appeal is not "controlling." ...................................6

            b. This case cannot be certified because it does not involve a "question of law." ............................................................8

        2. Abbott has not Shown that an Interlocutory Appeal Would Advance Termination of this Litigation. ......................................................10

        3. Abbott Has Not Shown That There is a Substantial Ground for a Difference of Opinion. ...................................................................11

IV. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois*,
   219 F.3d 674 (7th Cir. 2000) ................................................................................. 2, 6, 8, 9

*Aloha Airlines, Inc. v. Mesa Air Group, Inc.*,
   2007 WL 1582707, *2 (D. Hawaii May 31, 2007) ........................................................ 8, 10

*Balisteri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ................................................................................................ 2

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*
   2007 WL 1119193, *2 (N.D. Cal. April 16, 2007) ............................................................... 5

*Breier v. Northern California Bowling Proprietors' Ass'n*,
   316 F.2d 787 (9th Cir. 1963) ................................................................................................ 2

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ..................................................................................................... 12, 13

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) .............................................................................................. 6

*Jackson v. Placer County*,
   2007 WL 2127528, *3 (E.D. Cal. July 24, 2007) ............................................................... 10

*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 n.6 (9th Cir. 2002) ........................................................................................ 5

*Meijer, Inc. v. Abbott Laboratories*,
   544 F. Supp. 2d 995 (N.D. CA 2008) .......................................................................... passim

*Midland Asphalt Corp. v. U.S.*,
   489 U.S. 794 (1989) ............................................................................................................. 5

*Notmeyer v. Stryker Corp.*,
   2007 WL 2688462 at *3 (N.D. Cal.) ..................................................................... 2, 6, 8, 13

*Oliner v. Kontrabecki*,
   305 B.R. 510 (N.D. Cal. 2004) ............................................................................................. 8

*Valdovinos v. McGrath*,
   2007 WL 2023505, *2 (N.D. Cal. July 12, 2007) ........................................................ passim

**Statutes**

28 U.S.C. § 1291 ............................................................................................................................ 5

Fed.R.Civ.P. § 12(b)(6) .................................................................................................................. 9

|   | Page(s) |
|---|---|

**Other Authorities**

19 Moore's Federal Practice
    § 203.31[1] (Matthew Bender 3d ed.) .................................................................................. 7

Brianna Carignan, *Legalizing Importation of Prescription Drugs: The Economic
    Implications of the Pharmaceutical Market Access and Drug Safety Act of 2005*,
    12 New Eng. J. Int'l & Comp. L. 161 (2005) ...................................................................... 9

Peter K. Yu, *The International Enclosure Movement*,
    82 Ind. L.J. 827 n. 377 (2007) .............................................................................................. 9

## I. INTRODUCTION

The interlocutory appeal sought by Abbott is not proper; Abbott has failed to meet any – much less all – of the statutory requirements for certification. Abbott fails most notably on the first and third requirements for certification: that the issue to be certified must involve a "controlling" "question of law" and that interlocutory review "may materially advance the termination of the litigation." Abbott also cannot meet the second requirement for certification, as it has failed to demonstrate that there is a substantial ground for a difference of opinion on the question it seeks to certify.

Abbott seeks to certify the question of whether this case warrants an exception to *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ("*Cascade*"). Motion at 1:17-23. But, Abbott mischaracterizes the holding of that case in an attempt to create a controlling question of law where none exists.[1] An accurate phrasing of the issue sought to be certified would quote the Ninth Circuit's own description of its holding: "Accordingly, we hold that the exclusionary conduct element of a claim arising under § 2 of the Sherman Act cannot be satisfied by reference to bundled discounts unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Cascade*, 515 F.3d at 903. Despite this plain language, Abbott misconstrues the Ninth Circuit's holding as applying broadly to any exclusionary conduct – not only to bundled discounting – and then presents a strawman argument that this Court's denial of Abbott's "Omnibus" Motion to Dismiss created a new exception to Abbott's fictional rule. Abbott ignores that this Court recognized the case falls outside the purview of *Cascade* all together, finding that "it is far from clear that Abbott's sale of Kaletra represents a bundled discount." *Meijer, Inc. v. Abbott Laboratories*, 544 F. Supp. 2d 995, 1007 (N.D. Cal. 2008). Only after reaching this conclusion did the Court rule that, even if Abbott's sale of Kaletra were a bundled discount, *Cascade* would not apply here, reasoning that application of the below-cost rule

---

[1] Abbott states that it seeks certification "of the following question of law: Whether this case warrants an exception to the Ninth Circuit's decision in *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008), which held that the 'Supreme Court's opinions strongly suggest that, in the normal case, above-cost pricing will not be considered exclusionary conduct for antitrust purposes,' *id.* at 901, and that 'the appropriate measure of costs [in this context] is average variable cost.' *Id.* at 910." Motion at 1:16-23.

enunciated in that case would not prevent the anticompetitive use of bundled discounts to exclude new pharmaceutical products from the market. Thus, if the Ninth Circuit were to overrule this Court and find that the *Cascade* holding applies to bundled discounts on prescription drugs, that ruling "would not likely change the outcome of defendant's motion…, or the case," *Notmeyer v. Stryker Corp.*, 2007 WL 2688462 at *3 (N.D. Cal. Sept. 10, 2007). Abbott's "controlling" question is thus not controlling even on the Sherman Act claim that is common to this case and the others pending before this Court.[2]

Neither is the issue Abbott seeks to certify a "question of law." Fact intensive questions are inappropriate for interlocutory review. *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674 (7th Cir. 2000). This Court's analysis of the issue of whether bundled discounting of prescription drugs warrants an exception to the rule announced in *Cascade* demonstrates that this is just such a case. In making its determination, this Court focused heavily on the factual allegations.

For all of these reasons, certifying this case for interlocutory appeal also would not "materially advance the termination of this litigation." Putting the Sherman Act claim (or some part of it) on hold while the Ninth Circuit considers whether bundled discounting of prescription drugs falls within the holding of *Cascade* would do nothing to speed the termination of this case. The appeal would not resolve the Sherman Act claim, and it would not affect at all GSK's three state law claims. These three claims will stand regardless of the outcome of appeal. Thus, interlocutory appeal will only serve to slow down termination of this lawsuit.

Finally, Abbott cannot show that there is a substantial ground for a difference of opinion on the question it seeks to certify. Abbott has merely registered its disagreement with the Court's Order, but its mere disagreement is not enough to meet its burden for certification. Abbott must

---

[2] Another reason that the issue is not "controlling" even as to the Sherman Act claim is that GSK and others could amend to state a claim even if the Ninth Circuit were to rule that the holding of *Cascade* applies to this case. GSK will not address this issue as it is addressed fully in the opposition submitted by the Direct Purchaser Plaintiffs. GSK notes only that "[t]he standard for granting leave to amend is generous." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990); *see Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963) ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" (internal citation omitted)).

show that there exist opinions that conflict with this Court's decision. Abbott has not done so because no such opinion exists.

This Court already considered and rejected Abbott's request for certification of interlocutory appeal of the same question based on the same arguments in the related *In re Norvir* case. It should do so again here.

## II.   BACKGROUND ON RELEVANT RULINGS.

While Abbott and its expert economist had insisted in the related action, *In re Abbott Labs Norvir Antitrust Litig.*, Case No. C-04-1511-CW ("*In re Norvir*"), that sales of Kaletra were not bundled discounts and that its pricing could not be analyzed as a bundled discount, Abbott abruptly reversed course in the later filed cases. Its "Omnibus" motion sought to dismiss the Sherman Act claim alleged by GSK (and its fellow plaintiffs in related cases) based on Abbott's contention that this case does involve bundled discounts and that the Sherman Act attack on its 400 percent price increase was precluded by the below-cost rule announced for bundled discounts in *Cascade*. On April 11, 2008, this Court denied Abbott's "Omnibus" motion holding that *Cascade* does not apply here. It reasoned first that these cases probably did not even fall within the "general purview of *Cascade*" because it is "far from clear that Abbott's sale of Kaletra represents a bundled discount." *Meijer, Inc. v. Abbott Laboratories*, 544 F. Supp. 2d 995, 1002 (N.D. Cal. 2008). The Court added that, even if Kaletra represents a bundled discount, "the present cases fall within the exception contemplated by *Cascade*…." *Id.* at 1005. In reaching that conclusion, the Court first acknowledged that "the *Cascade* court noted that the Supreme Court has never gone 'so far as to hold that in every case in which a plaintiff challenges low prices as exclusionary conduct the plaintiff must prove that those prices were below cost.'" *Id.* at 1003 (citing *Cascade*, 515 F.3d at 901).

This Court then illustrated why it would not serve the purposes of *Cascade* to apply the below-cost pricing rule here by "apply[ing] the rule to the facts." *Id.* It compared what Abbott belatedly argued was the imputed price of lopinavir to what Abbott argued, without record support, was the potentially low "cost of manufacturing Kaletra pills," *id.*, but also acknowledged as a "valid argument," without deciding the issue, that other costs could be included in average

- 3 -
GSK'S OPP. TO ABBOTT'S MOTION FOR § 1292(b) CERTIFICATION
CASE NO. C-07-5702 (CW)
1884489

1  variable costs "rais[ing] the average variable cost above the pennies-per-pill cost of
2  manufacturing," *Id.* at 1003 n.6.  The Court further considered the "unique structural
3  characteristics of the pharmaceutical industry…." *Id.* at 1004.  Based on its analysis, the Court
4  concluded that if bundled discount analysis were appropriate to Kaletra pricing, the *Cascade*
5  below-cost pricing test still would not be appropriate as applied to the Sherman Act claim brought
6  in this case because that rule focuses on "promoting manufacturing efficiency" rather than
7  "promot[ing] the introduction of new medicines to compete with a patented drug." *Id.* at 1004.

8  In the same April 11, 2008 Order, the Court also denied Abbott's separate motion to
9  dismiss, which was targeted primarily at GSK's three independent state law causes of action: one
10 based on breach of contract, one under the North Carolina Unfair Trade Practices Act, and the
11 third under the North Carolina Anti-Monopolization Act.  The Court first held that GSK
12 "sufficiently plead a claim for breach of an implied term of the license agreement" and that
13 Abbott's argument to the contrary was wrong. *Id.* at 1007.  Second, the Court held that GSK had
14 properly alleged its two North Carolina statutory claims. *Id.* at 1008.  It rejected Abbott's
15 contention that the North Carolina Supreme Court would reject GSK's monopolization theory. *Id.*
16 The Court recognized that it must predict how the North Carolina Supreme Court would rule, that
17 Abbott provided no basis for the Court to make that predication, and that in any case, "even if the
18 North Carolina Supreme Court would not recognize monopoly leveraging as a form of
19 anticompetitive conduct, GSK has alleged conduct that could be considered 'unfair' or 'deceptive'
20 under the Act." *Id.*

21 In *In re Norvir*, Abbott moved for summary judgment based on the same *Cascade* theory
22 articulated in Abbott's "Omnibus" Motion to Dismiss in this case.  On April 25, 2008, Abbott
23 sought leave to file a supplemental brief to address the Court's denial of its motion to dismiss in
24 this case.  In that brief, Abbott asked the Court, in the event that it denied Abbott's motion for
25 summary judgment, to certify for interlocutory appeal the same questions based on the same
26 arguments presented here. *See* Abbott Laboratories' Motion to Seek Leave to File Supplemental
27 Brief in Support of its Summary Judgment Motion, Docket No. 491, at Exh. A, 15-16, filed in *In*
28 *re Norvir*.  On April 28, 2008, this Court denied Abbott's motion for leave to file that brief stating

that Abbott was "misreading" the Court's decision and that its briefs were "premised on [an] incorrect assumption." Order Denying Abbott's Motions for Leave to File Supplemental Brief and For Leave to File Motion for Reconsideration; and Deferring Ruling on Abbott's Motions for a Continuance of Trial Date and for Certification of Interlocutory Appeal, Docket No. 492, at 2:7 & 3:16, filed in *In re Norvir*. The Court deferred ruling on the request for certification of interlocutory appeal. *Id.* at 4:10-12. On May 16, 2008, this Court denied Abbott's motion for summary judgment on the *Cascade* issue for the same reasons articulated in its April 11, 2008 Order in this case. Order Granting in Part Abbott's Motion for Summary Judgment and Granting Plaintiffs' Cross-Motion for Summary Adjudication of Patent Invalidity, Docket No. 516, at 11:6-19, filed in *In re Norvir*. The Court also denied Abbott's motion for certification of interlocutory appeal concluding that the "appeal would unjustifiably delay trial." *Id.* at 19:14. The Court noted that it would "entertain the possibility of Abbott pursuing an interlocutory appeal in the related cases," *id.* at 19:5-6, which Abbott now takes as an "invitation" for its current motion, Motion at 1:15.

## III.  ARGUMENT

### A.  Certification Of Interlocutory Appeal Is Only Appropriate In Exceptional Circumstances And When All Three Statutory Requirements Are Met.

Section 1292(b) provides an exception to the normal rule that an appeal may only be pursued after there is a final judgment. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 2007 WL 1119193, *2 (N.D. Cal. April 16, 2007) (*citing* 28 U.S.C. § 1291; *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798 (1989); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002)).[3] To merit certification of interlocutory appeal, Section 1292(b) requires a showing that: (1) the issue to be certified involves a controlling question of law; (2) there exists a substantial ground for difference of opinion; and (3) an

---

[3]  Section 1292(b) provides:

> When a district judge, in making an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

interlocutory appeal will likely materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b). "The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances," *Notmeyer*, 2007 WL 2688462 at *2, and "[t]he court should construe the requirements for certification strictly…." *Valdovinos v. McGrath*, 2007 WL 2023505, *2 (N.D. Cal. July 12, 2007) (Wilkin, J.). "The criteria [for § 1292(b)] are conjunctive, not disjunctive" so that the movant must show that all three requirements are met. *Ahrenholz*, 219 F.3d at 676. Plaintiff's motion should be denied because it fails to meet any of the requirements necessary to pursue an interlocutory appeal, let alone all three.

      B.    <u>Abbott Cannot Sustain Its Burden To Show That Any, Much Less All, Of The Statutory Requirements Are Met.</u>

          1.    Abbott Has Not Shown that the Issue Abbott Seeks to Certify is a "Controlling Question of Law."

Resolution of the issue Abbott seeks to certify – whether this case warrants an exception to the holding of *Cascade* – will not materially affect the outcome of this litigation and cannot be decided quickly and cleanly by the appellate court. Thus, Abbott has failed to seek certification of a "controlling question of law," as required by section 1292(b).

          a.    This case cannot be certified because the issue Abbott seeks to appeal is not "controlling."

Abbott has not met its burden to show that the issue it seeks to certify is controlling. "Establishing that a question of law is controlling requires a showing that 'the resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" *Valdovinos*, 2007 WL 2023505 at *2 (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). Abbott's assertion that resolution of the questions on appeal could "radically alter this case" is incorrect, and in any case, does not meet its burden of showing a material affect on the outcome of the litigation. Motion at 3:10-11.

The *Notmeyer* case is instructive. In that case, Stryker Corp. moved for summary judgment on a product defect claim for personal injuries sustained when Notmeyer's hip replacement device shattered. 2007 WL 2688462 at *1. Stryker Corp. argued that the FDA's premarket approval

1  ("PMA approval") of the device preempted the claim. *Id.* The Court denied that motion holding
2  that PMA approval does not give rise to preemption and further noting that, even if PMA approval
3  did create preemption, such preemption would not necessarily apply. Stryker Corp. sought
4  interlocutory appeal. *Id.* at *2. The Court denied the motion finding that PMA approval
5  preemption was not a controlling issue of law because "even if PMA approval did create
6  preemption, such preemption would not necessarily apply in the instant case." *Id.* at *2. "Thus,
7  an appellate ruling that the PMA approval process gives rise to preemption would not likely
8  change the outcome of defendants' motion for summary judgment, or the case." *Id.* at *3.[4]

9  Similarly, here, the question Abbott seeks to certify is not controlling. Even if the Ninth
10 Circuit were to rule that there are no exceptions to *Cascade*'s below-cost rule for bundled discount
11 cases, that rule would not necessarily apply to this case, which likely does not involve bundled
12 discounts. The Ninth Circuit in *Cascade* held only that the "exclusionary conduct element of a
13 claim arising under § 2 of the Sherman Act cannot be satisfied by reference to bundled discounts
14 unless the discounts result in prices that are below an appropriate measure of the defendant's
15 costs." 515 F.3d at 903. In its ruling on Abbott's motion to dismiss, this Court noted that "it is far
16 from clear that Abbott's sale of Kaletra represents a bundled discount" such that *Cascade* would
17 apply "[a]s an initial matter." *Meijer*, 544 F. Supp. 2d at 1002 (noting that "it is not readily
18 apparent that Kaletra consists of two products at all" and "Abbott's marketing of Kaletra reveals
19 that Abbott itself does not treat the drug as a package of multiple products").[5]

20 The Court then went on to consider whether, assuming the sale of Kaletra was a bundled
21 discount, the holding of *Cascade* applied to this case. On that issue, it concluded that, the below

---

[4] For a similar reason, the Court held that the third factor – that the interlocutory appeal would materially advance the termination of the litigation – was not met. This Court has noted that the third factor "is linked to whether an issue of law is 'controlling' in that the court should consider the effect of a reversal by the court of appeals on the management of the case." *Valdovinos*, 2007 WL 2023505 at *2. *See* 19 Moore's Federal Practice § 203.31[1] (Matthew Bender 3d ed.) ("[I]n practice the courts treat the statutory criteria as a unitary requirement….").

[5] Abbott's own expert in *In re Norvir* asserted that no issue of bundled pricing was present in the case, and discovery will likely shed additional light on the issue. As noted at argument, lopinavir is not FDA approved for sale as a stand alone product. Discovery may well show that , unlike Reyataz and Lexiva, which are FDA approved to treat HIV/AIDS in boosted and unboosted forms, and thus are stand alone products, the amount of lopinavir needed to treat HIV unboosted would be toxic and the amount of lopinavir that is not toxic is not effective in unboosted form.

cost rule in *Cascade* did not apply to the plaintiffs' antitrust claims because of unique attributes of the pharmaceutical industry. *See Meijer*, 544 F. Supp. 2d at 1004. As in *Notmeyer*, therefore, an appellate ruling that this case is no exception to the *Cascade* below-cost pricing rule would not likely change the outcome of Abbott's motion to dismiss because Abbott's sale of Kaletra is not a bundled discount. Thus, this case factually – as alleged by the plaintiffs and construed by this Court – does not fall within the purview of *Cascade*, and the question Abbott seeks to certify is not controlling.

     b.  This case cannot be certified because it does not involve a "question of law."

Abbott's motion also fails because, contrary to its contention, Abbott is not seeking certification of a question that the appellate court can decide "as a matter of law." Motion at 2:28.

A "question of law" in the context of an interlocutory appeal refers to "a 'pure' question of law, rather than merely to an issue that might be free from factual context." *Ahrenholz*, 219 F.3d at 677 (citing examples of pure questions of law: the meaning of statutory or constitutional provisions, regulations or common law doctrines); *see also Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, 2007 WL 1582707, *2 (D. Hawaii May 31, 2007) (refusing to certify question on preemption because it was not pure question of law); *Oliner v. Kontrabecki*, 305 B.R. 510, 528 (N.D. Cal. 2004) (refusing to grant leave to appeal under § 1292(b) standard because issue of whether contempt order is coercive or punitive is fact-based). "[Congress] used 'question of law' in much the same way a lay person might…. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 676-77.

For example, in *Aloha Airlines, Inc.*, the court rejected a motion for certification of an interlocutory appeal of its denial of Mesa's motion to dismiss Aloha's contract and fraud claims. The court ruled that, because it had made a fact-specific inquiry in denying the motion to dismiss, the question was not appropriate for interlocutory appeal. 2007 WL 1582707 at *2. It rejected Mesa's contention that a fact-intensive analysis is inappropriate on a motion to dismiss:

> To claim that a fact-intensive inquiry is not permitted under Fed.R.Civ.P. § 12(b)(6) is misleading, as the Court must analyze the facts pled in relation to the law to reach a determination. A court cannot determine whether a plaintiff has failed to state a claim upon which relief can be granted without looking to the facts in the complaint underlying the claim. To review the law without the facts would be nonsensical and inappropriate.

*Id.* at *2.

This Court similarly engaged in a fact-intensive inquiry in denying Abbott's motion to dismiss. This Court acknowledged that "[t]o illustrate why [this case falls outside of the *Cascade* rule,] it is instructive to *apply the rule to the facts*." *Meijer, Inc.*, 544 F. Supp. 2d at 1003 (emphasis added). This Court then engaged in an extensive analysis of factual allegations regarding pricing, as well as an analysis of the unique "structural characteristics of the pharmaceutical industry." *Meijer, Inc.*, 544 F. Supp. 2d at 1004; *see also id.* at 1004 n. 7 (relying on Peter K. Yu, *The International Enclosure Movement*, 82 Ind. L.J. 827, 898 n. 377 (2007) and Brianna Carignan, *Legalizing Importation of Prescription Drugs: The Economic Implications of the Pharmaceutical Market Access and Drug Safety Act of 2005*, 12 New Eng. J. Int'l & Comp. L. 161, 165 (2005)).

Indeed, a full resolution of these issues may require analysis of facts beyond those the Court has already considered. For example, the pharmaceutical industry is highly regulated. A statutory framework exists that confines GSK's pricing decisions for government payers. This framework provides penalties and disincentives which would affect an analysis of whether GSK could ever effectively respond to Abbott's decision to increase the Norvir price by 400 percent. Clearly, the issue Abbott seeks to certify is fact-intensive and not the type of question a court of appeals can "quickly and cleanly" resolve without a record on an interlocutory appeal. *See also Ahrenholz*, 219 F.3d at 677 (noting that even a question of contract interpretation may not be a question of law appropriate for interlocutory appeal).

2.  Abbott has not Shown that an Interlocutory Appeal Would Advance Termination of this Litigation.

Relatedly, Abbott cannot satisfy the third statutory requirement for certification – that "an interlocutory appeal must be likely material to advance the ultimate *termination* of the litigation." *Valdovinos*, 2007 WL 2023505 at *2 (emphasis added). Resolution of the question Abbott seeks to certify does not "potentially end[]" the case, as Abbott claims. Motion at 2:9. GSK's non-Sherman Act claims would remain regardless of the outcome of an appeal, and even if this Court's ruling on the question Abbott seeks to certify were reversed, the Sherman Act claim would not be terminated.[6]

This Court has ruled that it is inappropriate to certify a question for interlocutory appeal where – as here – other claims would remain even if the appealed ruling is reversed. In *Valdovinos*, this Court rejected the certification of questions pertaining to some, but not all, claims asserted by a habeas corpus petitioner. This Court reasoned that, because some claims would remain in the suit, interlocutory appeal would not materially advance termination of the litigation:

> If an interlocutory appeal were granted and the Ninth Circuit reversed this Court's … Order, it would simplify the resolution of this case but would not end the litigation of Petitioners' remaining claims. If the Ninth Circuit affirmed the Order, the interlocutory appeal would have delayed the ultimate termination of this case rather than advanced it. Moreover, whatever the outcome of an interlocutory appeal, the other claims will go forward and one party may take a second appeal, thus burdening the court of appeals with two appeals in the same case.

2007 WL 2023505 at *4; *see also Aloha Airlines, Inc.*, 2007 WL 1582707 at *3 (denying certification for interlocutory appeal in part because "even if this Court were to find that the ADA preempts Aloha's contract and fraud claims, Aloha's first cause of action still would stand.").

---

[6] Abbott's further assertion that an interlocutory appeal would provide "much-needed appellate guidance" falls well-below the standard required for certification. S*ee, e.g., Jackson v. Placer County*, 2007 WL 2127528, *3 (E.D. Cal. July 24, 2007) (concluding that plaintiff does not meet standard of interlocutory appeal simply because resolution would lead to one trial rather than two).

Similarly, GSK has asserted a contract claim and two North Carolina statutory claims that will go forward regardless of the Ninth Circuit's decision on the *Cascade* issue raised by Abbott. This Court has ruled that GSK has sufficiently alleged these independent state law claims. It has ruled that "GSK has sufficiently plead a claim for breach of an implied term of the license agreement," *Meijer, Inc.*, 544 F. Supp. 2d at 1007, and Abbott itself has asserted the validity of GSK's contract claim: "GSK may have a contract action…. GSK's sole remedy for any alleged exclusionary conduct is limited by the parties' contract, not the antitrust laws." Abbott's Reply in Support of its Motion to Dismiss, Docket No. 73, at 6:25-7:10. Further, this Court has recognized that GSK has also properly plead a claim under North Carolina's Unfair Trade Practices Act that is independent of GSK's antitrust theory. *Meijer, Inc.*, 544 F. Supp. 2d at 1008 ("In addition, even if the North Carolina Supreme Court would not recognize monopoly leveraging as a form of anticompetitive conduct, GSK has alleged conduct that could be considered 'unfair' or 'deceptive' under the Act."). And, even as to GSK's North Carolina anti-monopolization claim, this Court has recognized that it must "predict how the North Carolina Supreme Court would resolve" the issue, rather than necessarily follow Ninth Circuit decisions. *Id.* Thus, an interlocutory appeal is not proper here because it would "delay the ultimate termination of the case" and because "other claims will go forward and one party may take a second appeal, burdening the court of appeals." *Valdovinos*, 2007 WL 2023505 at *4.

        3.      Abbott Has Not Shown That There is a Substantial Ground for a Difference of Opinion.

Abbott also fails to show that there are *substantial* grounds for a difference of opinion regarding this Court's conclusion – after extensive analysis – that if Kaletra pricing were to be analyzed as a bundled discount this case falls into an exception to *Cascade*. The most Abbott offers is mere disagreement and that "in Abbott's view" this Court wrongly decided the issues. Motion at 5:22. That is not enough to meet its burden.

"A substantial ground for difference of opinion is not established by a party's strong disagreement with the court's ruling; the party seeking an appeal must make some greater showing." *Valdovinos*, 2007 WL 2023505 at *2. A showing that there is a dearth of case law on

1  the issue is not enough to meet this standard. *Id.* at *5. Rather, Abbott must show that there are
2  conflicting decisions on point. *Id.* For example, in *Valdovinos*, this Court considered whether
3  there was substantial ground for disagreement regarding its ruling that seeking to exhaust habeas
4  corpus claims within 9 months was a reasonable time. The Court held that there was not. *Id.* at
5  *3-4. While a Supreme Court opinion had held that habeas petitioners must exhaust state law
6  remedies within a reasonable time and cited law suggesting that it should be done in 30 days, the
7  Court concluded there was no conflict because that Supreme Court opinion did not expressly set
8  the outer bounds for a reasonable time and no Ninth Circuit case had either. *Id.* at *4.

9        The situation is the same here. Abbott has cited no case law with which this Court's
10 opinion conflicts. Neither *Cascade* nor *Brooke Group Ltd. v. Brown & Williamson Tobacco*
11 *Corp.*, 509 U.S. 209 (1993) – the two potentially controlling cases upon which Abbott relies –
12 conflicts with this Court's holding. As to *Cascade,* Abbott ignores that court's recognition that the
13 Supreme Court has never gone "so far as to hold that in every case in which a plaintiff challenges
14 low prices as exclusionary conduct the plaintiff must prove that those prices were below cost."
15 *Cascade*, 515 F.3d at 901, cited in *Meijer*, 544 F. Supp. 2d at 1003. As to *Brooke Group,* Abbott
16 ignores the fact that the Court there did not even consider discount bundling. Rather, the Court in
17 that case held that a plaintiff in a "single product predatory pricing case" must establish that the
18 defendant priced below cost. *Cascade*, 515 F.3d at 900; *see Brooke Group Ltd.*, 509 U.S. at 222.

19       Indeed, Abbott seems to acknowledge that no case has ever foreclosed possible exceptions
20 to *Cascade*'s below cost pricing rule for bundled discounting cases when it argues that the door
21 for exceptions is only "very close" to being shut – rather than completely shut. Motion at 3:21.
22 Abbott's argument that there is substantial ground for a difference of opinion is reduced to nothing
23 more than a regurgitation of rejected arguments for why this case cannot fit through that open
24 door. *See, e.g.*, *id*. at 5:20-6:21. For example, in its current motion, Abbott contends that there is
25 a difference of opinion because "the high cost of R&D for pharmaceutical products" "are, in
26 Abbott's view, logically irrelevant to determining whether prices are exclusionary." Motion at
27 5:21-22. In its motion to dismiss papers, Abbott argued the same thing: "The producer's fixed
28 costs – here, most significantly, research and development costs – will be irrelevant…." Abbott's

Supplemental Brief in Support of Its Omnibus Motion to Dismiss Plaintiffs' Sherman Act, Docket No. 68, at 5:9-10.[7] Abbott's disagreement with this Court's ruling is not enough to meet the high standard for certification of an interlocutory appeal. *Valdovinos*, 2007 WL 2023505 at *2 (Wilken, J.); *Notmeyer*, 2007 WL 2688462 at *2.[8]

## IV. CONCLUSION

Abbott has failed to meet its burden to show that any, let alone all three, of the requirements for an interlocutory appeal are met here. In fact, an appeal in this case would delay, rather than speed the termination of this litigation – the opposite of the intended result of section 1292(b). Abbott's motion should be denied.

Dated: June 19, 2008

IRELL & MANELLA LLP

By: /s/ Alexander F. Wiles
Alexander F. Wiles
Attorneys for GlaxoSmithKline

Pursuant to General Order No. 45, Section X, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Alexander F. Wiles.

Dated: June 19, 2008

By: /s/ Joshua Y. Karp
Joshua Y. Karp

---

[7] Abbott also resurrects its rejected argument that *Cascade* and this case are similar because the market for hospital services purportedly has high fixed costs just like the pharmaceutical industry. *Compare* Motion at 6:14-21 *with* Abbott's Supplemental Brief in Support of its Omnibus Motion to Dismiss, Docket No. 68, at 4:8-13.

[8] As a substantive matter, the cases cited by Abbott are distinguishable. They are concerned with situations where "price cutting" is alleged to be anticompetitive such that the court must be concerned about overdeterring competitive behavior because "[l]ow prices benefit consumers regardless of how those prices are set...." *Brooke Group Ltd.*, 509 U.S. at 223 (internal citations omitted); *see also Cascade*, 515 F.3d at 901 . Yet, this case concerns the anticompetitive impact of the exact opposite behavior: Abbott's massive 400 percent price hike of Norvir, which disrupted the market position of GSK's Lexiva at launch, thereby crippling its ability to compete and driving consumers to Abbott's rival protease inhibitor, Kaletra.