

Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA  94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:    312-558-5600
Facsimile:    312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com;
spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20007
Telephone:    202-282-5000
Facsimile:    202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, <br><br> Plaintiff, <br><br> vs. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. <br><br><br> [caption continues next page] | **Case No. C 07-5702 CW** <br><br> **Related Per November 19, 2007 Order to Case No. C 04-1511 CW** <br><br> **ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)** <br><br> **Date:        July 10, 2008** <br> **Time:        2:00 p.m.** <br> **Courtroom: 2 (4th Floor)** <br> **Judge:       Hon. Claudia Wilken** |

*Winston & Strawn LLP*
*35 W. Wacker Drive*
*Chicago, IL 60601-9703*

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

| | |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP, | No. C 07-5470 CW |
| Plaintiffs, | Related Per October 31, 2007 Order to Case No. C 04-1511 CW |
| vs. | ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b) |
| ABBOTT LABORATORIES, | |
| Defendant. | |
| | Date:       July 10, 2008 |
| | Time:       2:00 p.m. |
| | Courtroom: 2 (4th Floor) |
| | Judge:      Hon. Claudia Wilken |
| | No. C 07-6120 CW |
| RITE AID CORPORATION; RITE AID HDQTRS, CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC. d/b/a BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; and CAREMARK, L.L.C., | Related Per October 31, 2007 Order to Case No. C 04-1511 CW |
| Plaintiffs, | ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b) |
| vs. | |
| ABBOTT LABORATORIES, | Date:       July 10, 2008 |
| Defendant. | Time:       2:00 p.m. |
| | Courtroom: 2 (4th Floor) |
| [caption continues next page] | Judge:      Hon. Claudia Wilken |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| ABBOTT LABORATORIES, | ) ) ) |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No. C 07-5985 CW**

**Related Per October 31, 2007 Order to Case No. C 04-1511 CW**

**ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)**

The Honorable Judge Wilken

**Date:    July 10, 2008**
**Time:    2:00 p.m.**
**Courtroom: 2 (4th Floor)**
**Judge:    Hon. Claudia Wilken**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 3

    A.  There Is Substantial Ground For Difference Of Opinion As To Whether Abbott's Pricing Conduct Is Subject To *Cascade*'s Above-Cost Safe Harbor. ............ 3

    B.  The Issue For § 1292(b) Certification Raises A "Controlling Question Of Law." ................................................................................................................... 4

        1.  The Question For Certification Raises The Purely Legal Question Of Whether *Cascade*'s Above-Cost Safe Harbor Applies Here. ........................... 5

        2.  Application Of The Above-Cost Safe Harbor Would Preclude All Alternative Theories Of Boosted Market Monopolization. ............................. 7

    C.  The Proposed Interlocutory Appeal Would Materially Advance The Ultimate Termination Of This Case. ............................................................................... 8

        1.  Application Of The Above-Cost Safe Harbor In This Case Would Terminate At Least Two Of The Four Cases. ................................................. 8

        2.  Application Of The Below-Cost Rule Would, At Least, Substantially Narrow The Issues And Make Summary Judgment Unavoidable. ................... 9

    D.  Although Irrelevant To Abbott's Motion, Abbott Disputes Meijer's Position On The Current Application Of *Cascade* In This Case. ............................................. 13

III.  CONCLUSION .................................................................................................. 15

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Analogic Technologies, Inc. v. Linear Technology Corp.*,
  2006 U.S. Dist. LEXIS 75084 (N.D. Cal. Oct. 4, 2006)...................................................... 9

*Ahrenholz v. Bd. of Trustees*,
  219 F.3d 674 (7th Cir. 2000) ............................................................................................ 5, 6

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991) ................................................................................................ 7

*Aloha Airlines, Inc. v. Mesa Air Group, Inc.*,
  2007 WL 1582707 (D. Haw. May 31, 2007) ........................................................................ 6

*Bagsby v. Gehres*,
  225 Fed. Appx. 337 (6th Cir. 2007) ..................................................................................... 9

*Batt v. City of Oakland*,
  2006 U.S. Dist. LEXIS 77087 (N.D. Cal. Oct. 11, 2006) ................................................... 10

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)................................................................................................... 1, 3, 5

*Cascade Health Solutions v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ...................................................................................... passim

*Cost Mgmt. Servs. v. Washington Natural Gas Co.*,
  99 F.3d 937 (9th Cir. 1996)................................................................................................. 8

*Image Technical Services, Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997)........................................................................................ 7, 8

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  442 F. Supp. 2d 800 (N.D. Cal. 2006) ................................................................................ 8

*In re Cement Antitrust Litigation*,
  673 F.2d 1020 (9th Cir. 1982) ........................................................................................... 4

*Kidneigh v. UNUM Life Ins. Co. of Am.*,
  345 F.3d 1182 (10th Cir. 2003) .......................................................................................... 9

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003) (en banc)....................................................................... 1, 3, 4

*McKinney v. Fisher*,
  2006 U.S. Dist. LEXIS 28512 (D. Idaho May 9, 2006)..................................................... 10

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

*Meeker v. Belridge Water Storage Dist.*,
  2007 U.S. Dist. LEXIS 22673 (E.D. Cal. Mar. 12, 2007) ..................................... 10

*Meijer v. Abbott Labs.*,
  544 F. Supp. 2d 995 (N.D. Cal. 2008) ................................................................ 4

*Oliner v. Kontrabecki*,
  305 B.R. 510, 528 (N.D. Cal. 2004) ................................................................. 6

*Palmer v. Sanderson*,
  9 F.3d 1433 (9th Cir. 1993) .......................................................................... 12

*R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*,
  462 F.3d 690 (7th Cir. 2006) ........................................................................ 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ........................................................................ 12

*U.S. Rubber Co. v. Wright*,
  359 F.2d 784 (9th Cir. 1966) .......................................................................... 3

*United States ex rel. Huangyan Imp. & Exp. Corp v. Nature's Farm Prods.*,
  370 F. Supp. 2d 993 (N.D. Cal. 2005) .............................................................. 9

*Wallace v. IBM Corp.*,
  467 F.3d 1104 (7th Cir. 2006) ....................................................................... 11

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  127 S. Ct. 1069 (2007) ............................................................................. 1, 3

**STATUTES**

28 U.S.C. § 1292(b) ........................................................................... passim

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **I.    INTRODUCTION**

2    Plaintiffs cannot credibly dispute that this a classic situation for an interlocutory appeal under

3    § 1292(b).  In this massive antitrust case, eighteen plaintiffs are seeking "billions" through the claim

4    that Abbott Laboratories violated the antitrust laws based on its unilateral pricing decisions for two

5    drugs—a claim that would fail as a matter of law if the Ninth Circuit declines to adopt this Court's

6    decision creating an exception to the below-cost rule.  Under these circumstances, there can be no

7    doubt that Abbott has satisfied the three-part standard for an interlocutory appeal under § 1292(b).

8    <u>First</u>, there certainly is a substantial ground for a difference of opinion concerning whether

9    this case merits a new exception to the below-cost rule.  Plaintiffs summarily argue no such ground

10    exists, but have failed to cite any case adopting any exception to that rule in any context for any

11    industry.  Indeed, none of the three decisions controlling this issue—*Brooke Group*, *Weyerhaeuser*

12    and *Cascade*—identifies a single exception to the below-cost rule, let alone an exception that turns

13    on the cost structure of a particular industry.  And the Ninth Circuit specifically rejected the only

14    case identifying a theoretical exception, *LePage's*, thus creating substantial doubt about whether this

15    Court's exception to the below-cost rule will survive appellate scrutiny.

16    <u>Second</u>, the proposed appellate question is also controlling because it could resolve the main

17    claim in this litigation *on the pleadings* for three of the four cases (the original six cases have been

18    reduced to four through consolidation).  None of the complaints for those three cases alleges below-

19    cost pricing.  Moreover, the proposed question goes to the heart of whether Abbott engaged in

20    exclusionary conduct and, thus, the question controls a central issue in this case.

21    GSK obfuscates the issue by arguing that the issue turns on disputed factual allegations,

22    including its assertion that Abbott's pricing is not bundled discounting.  But that is the very reason

23    that obtaining appellate guidance makes so much sense.  In Abbott's view, the application of the

24    below-cost rule does not turn on any factual issues, including the issue of whether this case involves

25    bundled discounting.  It applies to all unilateral pricing behavior regardless of the particular

26    circumstances.  This is a pure issue of law.

27    Alternatively, GSK argues that the proposed question is not controlling because its state law

28    claims would survive an appellate ruling applying the below-cost rule.  The Direct Purchasers

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

similarly argue that their Boosting Market monopolization claim would survive. But the below-cost rule would, in fact, defeat that claim as well. The Boosting Market claim, for instance, turns on whether Abbott's unilateral pricing was exclusionary, which is only possible with below-cost pricing. In any event, courts routinely grant § 1292(b) relief where appellate guidance would materially streamline the litigation, even if the appeal would not necessarily affect every single claim.

Finally, resolution of the proposed question would materially advance the termination of this litigation. In fact, as noted, it would end the main claim in three of the four cases on the pleadings. Meijer argues that their individual case could survive because they have alleged below-cost pricing in violation of *Cascade*. In addition to betraying their lack of confidence in their proposed below-cost exception, Meijer ignores the reality that proving exclusionary conduct through below-cost pricing is almost impossible. In fact, even under their own manipulated calculations, they effectively *concede* that Abbott is *not* currently charging below-cost prices, which, by itself, would mandate summary judgment under controlling law and, thus, plainly would materially advance the litigation's termination.

Moreover, absent an interlocutory appeal, the jury would never consider the below-cost issue, which raises the serious risk of a massive waste of time and resources in the form of a protracted multi-party jury trial followed by a remand and a new trial under a revised legal standard. Avoiding that risk would also advance the ultimate termination of this litigation.

In sum, all three § 1292(b) requirements are satisfied here and the proposed interlocutory appeal makes abundant sense. This is a complex antitrust case involving eighteen plaintiffs, a proposed class action, and damages claims allegedly totaling "billions" of dollars that will be tried before a jury—the exact type of protracted case for which interlocutory appeals were intended. The Court should grant Abbott's motion.

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

## II.    ARGUMENT

Whether the below-cost rule applies here raises a "controlling question of law" over which "there is substantial ground for difference of opinion," and "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  As the Ninth Circuit has noted, the statute's legislative history makes it clear that interlocutory appeal is warranted where, as here, "a decision of the appeal may avoid protracted and expensive litigation, *as in antitrust and similar protracted cases*, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided."  *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (citing S. Rep. No. 2434, 85th Cong. 2nd Sess., 1958 U.S. Code Cong. & Ad. News, pp. 5255, 5260) (emphasis added).

### A.    There Is Substantial Ground For Difference Of Opinion As To Whether Abbott's Pricing Conduct Is Subject To *Cascade*'s Above-Cost Safe Harbor.

Plaintiffs offer no credible basis for disputing that Abbott is raising an issue over which there is a substantial ground for a difference of opinion.  At Plaintiffs' urging, this Court has created the first and only exception to the below-cost rule in the Ninth Circuit for unilateral pricing behavior.  And other than the Third Circuit's now-rejected exception for bundled discounting in *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc), Plaintiffs have failed to cite a single case recognizing *any* exception for *any* industry in *any* circuit in *any* context.  Thus, this Court's exception for this particular case against Abbott is, at the very least, reasonably debatable.

When arguing otherwise, Plaintiffs ignore the fact that the Supreme Court has allowed only the tiniest sliver of an opening for any possible exception to the below-cost rule and, arguably, left no opening at all.  In *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, the Court stated that although its earlier cases "reserved *as a formal matter* the question whether recovery should *ever* be available . . . when the pricing in question is above some measure of incremental cost, the *reasoning in [those cases] suggests that only below-cost prices should suffice*."  509 U.S. 209, 223 (1993) (internal quotations omitted) (emphasis on "ever" in original).  The Court thus held that plaintiffs seeking to prove exclusionary conduct "*must prove* that the prices complained of are below an appropriate measure of its rival's costs."  *Id*. at 222 (emphasis added); *see also Weyerhaeuser Co.*

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    *v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069, 1078 (2007) (extending below-cost rule to

2    predatory bidding).

3        As the Ninth Circuit noted in *Cascade*, the Supreme Court's decisions "strongly suggest that,

4    in the normal case, above-cost pricing will not be considered exclusionary conduct for antitrust

5    purposes." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir. 2008).  The Ninth

6    Circuit thus confirmed that the below-cost rule applied by the Supreme Court in single-product cases

7    applies equally in the bundled discounting context.  *Id*. at 903.  And it failed to identify any case that

8    would not be "normal."

9        In its order denying Abbott's motion to dismiss, this Court quoted the passage in *Cascade*

10    noting that the Supreme Court has never gone "so far as to hold that in every case in which a

11    plaintiff challenges low prices as exclusionary conduct the plaintiff must prove that those prices

12    were below cost." *Meijer v. Abbott Labs.*, 544 F. Supp. 2d 995, 1003 (N.D. Cal. 2008) (quoting

13    *Cascade*, 515 F.3d at 901).  But the Supreme Court has never recognized a single exception to that

14    rule.  In fact, Abbott is aware of only one case other than this one finding any exception to the

15    below-cost rule, and the Ninth Circuit expressly rejected that exception when declining to follow

16    *LePage's Inc*.

17        Under these circumstances, Plaintiffs cannot credibly deny that there is, at least, a substantial

18    ground for a difference of opinion over whether a new exception to the below-cost rule is warranted

19    for this case.

20    **B.    The Issue For § 1292(b) Certification Raises A "Controlling Question Of Law."**

21        Plaintiffs also fail to seriously contest the second element.    The proposed question for

22    § 1292(b) certification—*i.e.*, whether the Court should have applied the above-cost safe harbor in

23    this case—is controlling because it raises a pure question of law that "could materially affect the

24    outcome of litigation in the district court." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026

25    (9th Cir. 1982).  Plaintiffs offer various responses to this argument, none of which has any merit.

26

27

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1

### 1.    The Question For Certification Raises The Purely Legal Question Of

2

### Whether *Cascade*'s Above-Cost Safe Harbor Applies Here.

3          GSK argues that the proposed question is not a "pure" issue of law and, thus, not an

4   appropriate question for an interlocutory appeal.  Specifically, GSK argues that that application of

5   the below-cost rule turns on the facts of each case, thus rendering the proposed question unsuitable

6   for § 1292(b) certification.  But that is *precisely* the question of law on which Abbott seeks appellate

7   guidance—that is, Abbott seeks to confirm that the below-cost rule does *not* turn on individual facts

8   and, thus, applies to *all* unilateral pricing behavior regardless of the particular industry involved,

9   whether the pricing qualifies as bundled discounting, or the relationship between average variable

10  costs and R&D expenses.

11          Indeed, that is the whole point of the below-cost rule, *i.e.*, to establish a bright-line test that

12  does *not* turn on the individual facts of each case.  As the Supreme Court has explained, the below-

13  cost rule is designed to be a predictable safe harbor, one that avoids unduly restricting "competition

14  on the merits" or adjudicating pricing questions "beyond the practical ability of a judicial tribunal to

15  control[.]"  *Brooke Group*, 509 U.S. at 223.  The Court thus held, without equivocation and without

16  limitation, that plaintiffs "must prove" below-cost prices to proceed with an antitrust action based on

17  unilateral pricing conduct.  *Id.* at 222.

18          Given that holding, Abbott is proposing a perfectly appropriate question for an interlocutory

19  appeal.  In support of its contrary argument, GSK cites no Ninth Circuit case and, instead, relies on a

20  Seventh Circuit case that merely states that a "question of law" refers to "something the court of

21  appeals [can] decide quickly and cleanly without having to study the record," which "the court

22  should be enabled to do so without having to wait till the end of the case."  *Ahrenholz v. Bd. of*

23  *Trustees*, 219 F.3d 674, 677 (7th Cir. 2000).

24          But that is precisely the situation here.  The proposed question is whether there is *any*

25  exception to the prevailing below-cost rule that could possibly apply here.  The Ninth Circuit need

26  not resolve any fact issues to resolve that pure question of law.  This analysis is no different than the

27  routine entry of summary judgment, where the question is deemed one of pure law in the absence of

28  a genuine issue of material fact.  Fed. R. Civ. Pro. 56.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    Moreover, unlike the Seventh Circuit, the Ninth Circuit does not even give lip service to the

2    notion of requiring "abstract" questions of law entirely divorced from the facts of the case.   In

3    *Palmer v. Sanderson*, for example, the Ninth Circuit agreed to hear an interlocutory appeal on the

4    following "purely legal" issue despite its relation to the alleged facts:  "The questions before us are

5    purely legal:  first, whether the right to be free from the degree of force allegedly used by Sanderson

6    was clearly established on the date of Palmer's arrest, and second, whether there is any genuine issue

7    of material fact as to whether a reasonable deputy could believe that his conduct in arresting Palmer

8    was constitutional."  9 F.3d 1433, 1435 (9th Cir. 1993).  These questions hardly raise "abstract"

9    issues without any reference to the underlying facts.  They turn specifically on whether certain facts

10   were "clearly established" in the summary judgment record, and what a "reasonable deputy could

11   believe" in the context of the unique circumstances of that case.  *Id.*

12       Many Ninth Circuit cases reach similar conclusions when approving fact-laden questions for

13   interlocutory appeal.  For example, the Court in *Aloha Airlines, Inc. v. Mesa Air Group, Inc.*

14   addressed the fact-specific question of whether Aloha's state law claims were only "tenuously,

15   remotely, or peripherally related to the airlines prices, routes, or services" and thereby not preempted

16   by federal law.  2007 WL 1582707, *2 (D. Haw. May 31, 2007).  And the bankruptcy court in

17   *Oliner v. Kontrabecki* construed a pure question of fact—namely, the level of control or authority

18   that the defendant could exercise over a third party.  305 B.R. 510, 528 (N.D. Cal. 2004).  Thus,

19   Abbott's proposed question is a properly framed question under § 1292.

20       GSK particularly confuses the proposed question for appeal by arguing that it turns on

21   whether its complaint alleges bundled discounting.  Again, GSK misses the point.  Abbott seeks

22   appellate guidance as to whether the above-cost safe harbor applies *regardless* of whether this case

23   involves bundled discounting or its close cousin.  In *Cascade*, the Ninth Circuit *extended* the below-

24   cost rule from single-product discounts to bundled discounts, which means the below-cost rule

25   applies in *both* circumstances.  Abbott's arguments therefore in no way depend on whether its

26   pricing qualifies as a bundled discount.

27       In fact, GSK's own arguments make Abbott's point.  According to GSK, its complaint does

28   not allege bundled discounting because "lopinavir is not FDA approved for sale as a stand alone

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

product," and this fact alone is sufficient to except this case from *Cascade*'s above-cost safe harbor. (GSK Opp'n at 7 & n.5). Under GSK's reasoning, therefore, Abbott has the power to radically alter the applicable legal standard by obtaining FDA approval for lopinavir and offering it as a separate product. That makes no sense. There is no principled reason for having the exclusionary conduct standard—the very heart of the Section 2 claim—turn on whether Abbott received FDA approval for lopinavir, which would be prescribed with Norvir anyway. This explains why the term "bundled discounting" does not appear in the proposed question for certification.

**2.    Application Of The Above-Cost Safe Harbor Would Preclude All Alternative Theories Of Boosted Market Monopolization.**

Unlike GSK, the Direct Purchasers argue that the proposed question for § 1292(b) certification would not be controlling because they have alleged alternative theories of Boosted Market monopolization. This, too, misses the point of the below-cost rule. If applicable, that legal principle would preclude Plaintiffs from proving, *under any theory*, that Abbott's unilateral pricing conduct is exclusionary absent a showing of below-cost pricing.

The crux of Plaintiffs' Boosting Market monopolization claims is that Abbott charged too little for Norvir before December 2003 and, thus, discouraged others from developing competing boosting products. But, under the below-cost rule, Abbott's pricing behavior is *per se* lawful as long it is above cost. Thus, the below-cost test would preclude *both* the Boosted Market monopolization claim *and* the Boosting Market monopolization claim.

The Direct Purchasers alternatively argue that application of the above-cost safe harbor would not affect their ability to proceed with an alternative monopoly leveraging theory under *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997). (DP Opp'n at 3, 10). But Plaintiffs cannot circumvent the below-cost rule with allegations that do not support an independent cause of action.

The Ninth Circuit has expressly rejected the "monopoly leveraging doctrine as an independent theory of liability under Section 2." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991). "Monopoly leveraging" is merely a description of the type of antitrust case. Even under a "monopoly leveraging" theory, a plaintiff still "must establish each of

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

7

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1   the elements normally required to prove an attempted monopolization claim under section 2 of the

2   Sherman Act." *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 952 (9th Cir. 1996).

3   That includes the exclusionary conduct element.

4          In *Kodak*, the exclusionary conduct was a refusal to deal.  Specifically, the Ninth Circuit

5   "endorse[d] the [plaintiffs'] theory that § 2 of the Sherman Act prohibits a monopolist from *refusing*

6   *to deal* in order to create or maintain a monopoly absent a legitimate business justification." *Kodak*,

7   125 F.3d at 1209 (emphasis added).  Here, in contrast, this Court has correctly held that this case is

8   *not* a "failure to deal, or failure to cooperate" case.  *In re Abbott Labs. Norvir Anti-Trust Litig.*, 442

9   F. Supp. 2d 800, 807 (N.D. Cal. 2006).

10         Nothing in *Kodak* relieves Plaintiffs of their burden of proving that Abbott has engaged in

11  some legally-cognizable exclusionary conduct.   In an effort to make that showing, Plaintiffs are

12  pursuing the theory that Abbott's unilateral pricing is exclusionary.  If the Court of Appeals adopts

13  Abbott's interpretation of *Cascade*, however, that theory fails as a matter of law.  *See Cascade*, 515

14  F.3d at 903.

15         **C.     The Proposed Interlocutory Appeal Would Materially Advance The Ultimate**

16         **Termination Of This Case.**

17         Finally, there can be no doubt that the proposed question for § 1292(b) certification "may

18  materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Plaintiffs'

19  arguments to the contrary are meritless.

20         **1.     Application Of The Above-Cost Safe Harbor In This Case Would**

21         **Terminate At Least Two Of The Four Cases.**

22         None of the GSK, Rite Aid and Safeway complaints contain any allegations of below-cost

23  pricing.  Therefore, were the Ninth Circuit to hold that the below-cost rule applies here, the Sherman

24  Act claims in those complaints would be dismissed for failure to state a claim.  The Rite Aid and

25  Safeway complaints state no other claims for relief and, therefore, those two cases would be

26  terminated in their entirety.

27         The below-cost rule also would substantially streamline, if not terminate, the entire GSK

28  complaint, which also does not allege below-cost pricing.  GSK argues, however, that its state law

claims could survive the below-cost rule.  But a finding that Abbott's pricing conduct was lawful would almost certainly eliminate the state antitrust allegations, and likely would affect the implied covenant claim as well.  In any event, courts may grant interlocutory appeals that do not affect all claims.  *See, e.g., Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003) (accepting interlocutory appeal on whether two state law claims were preempted by federal law claim that would not be affected by appeal);  *Bagsby v. Gehres*, 225 Fed. Appx. 337, 357 (6th Cir. 2007) (resolving interlocutory appeal on motion to dismiss claims without resolving motion to dismiss counterclaims, which are "not properly before the Court on appeal").

Courts also have certified interlocutory appeals on federal claims despite the presence of unrelated state law claims.  In *Advanced Analogic Technologies, Inc. v. Linear Technology Corp.*, 2006 U.S. Dist. LEXIS 75084, *3 (N.D. Cal. Oct. 4, 2006), for example, the Court certified an issue for interlocutory appeal even though it did not reach the plaintiffs' state law claims.  After the court denied the defendant's motion to dismiss for lack of subject matter jurisdiction over claims for patent infringement, the defendant sought an interlocutory appeal.  *Id.* at *1.  The Court found at such an appeal "may materially advance the ultimate termination of the instant action, irrespective of whether the state law claims are affected."  *Id.* at *3.  Similarly, GSK cannot hide behind its state law claims as a basis to deny Abbott's motion. *See United States ex rel. Huangyan Imp. & Exp. Corp v. Nature's Farm Prods.*, 370 F. Supp. 2d 993, 995 (N.D. Cal. 2005) (certifying False Claims Act question under § 1292(b) even though appeal would not address remaining claims for fraud and unjust enrichment).

### 2. Application Of The Below-Cost Rule Would, At Least, Substantially Narrow The Issues And Make Summary Judgment Unavoidable.

In an effort to minimize the importance of Abbott's proposed appeal, GSK also implies that plaintiffs might consider amending their complaints to add a below-cost allegation.  But aside from Meijer, no plaintiffs have actually made any such allegation.  In Abbott's view, they have not done so for good reason:  There is no credible basis for alleging below-cost pricing in this case.

Meijer has nevertheless alleged below-cost pricing.  But even if Meijer's claim could somehow survive summary judgment under the below-cost rule (which it cannot), a jury will never

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

address any such issue because this Court has rejected below-cost pricing as the applicable standard. A jury obviously cannot be instructed with dueling standards, one that makes no reference to below-cost pricing and one that focuses on below-cost pricing. How would any resulting verdict be reviewed on appeal? And what would the jury be told about the relevance of the below-cost issue? Not to mention the massive potential for confusion, the jury would essentially be acting in an advisory capacity on the below-cost issue given this Court's prior ruling. The parties' case presentations also would be entirely different depending on whether the below-cost test applies, which means that dueling standards would force the parties to try two very different cases at the same time. Therefore, certifying an interlocutory appeal now would clearly advance the ultimate termination of this litigation by avoiding the risk of protracted discovery, multiple trials, and multiple appeals.

At the very least, the below-cost rule would substantially narrow the issues for, and likely avoid, any trial on the monopolization claims. That alone is enough to satisfy this prong of the § 1292 analysis. A party can show that an appeal will material advance the litigation if "the strength of their overall case would be greatly enhanced" if successful on appeal. *Meeker v. Belridge Water Storage Dist.*, 2007 U.S. Dist. LEXIS 22673, *19 (E.D. Cal. Mar. 12, 2007); *accord*; *Batt v. City of Oakland*, 2006 U.S. Dist. LEXIS 77087, *15 (N.D. Cal. Oct. 11, 2006) (holding that interlocutory appeal "would certainly advance the ultimate disposition of the litigation, *or at least a portion of it*") (emphasis added); *McKinney v. Fisher*, 2006 U.S. Dist. LEXIS 28512, *3 (D. Idaho May 9, 2006) (holding that interlocutory appeal was appropriate on whether standards from particular federal law apply to case when reversal "could save substantial time and resources that would otherwise be expended while litigating the case under [the wrong] standards").

There is no question Abbott has made that showing here. Under the below-cost rule, plaintiffs face an incredibly difficult burden in attempting to show that Abbott's pricing is exclusionary. In Abbott's view, that rule will stop the case in its tracks through summary judgment. This has not been lost on Meijer, which has resorted to taking inconsistent positions, misrepresenting Abbott's positions, and relying on pie-in-the-sky calculations in an effort to lessen their burden.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

At that outset, Meijer fails to address a core inconsistency in their position: Meijer's arguments squarely contradict the Court's rational for creating an exception to the below-cost rule. This Court created that exception based on the reasoning that, with an exceedingly low average variable cost for pharmaceuticals ($0.05 in the court's hypothetical example), "no newly developed PI could ever be sold profitably at such a price, because the manufacturer would never be able to recoup its huge research and development costs." (Op. at 14-15). The Court noted, for instance, that "the cost of manufacturing Kaletra pills is negligible—most likely only a few cents per pill." (Op. at 14). But Meijer is now arguing that proper number is "$4.62 for Abbott's variable cost of producing and distributing lopinavir." (Class Certification Decl. of Hal Singer, Ph.D. dated May 5, 2008, at 18). If so, the very rationale for the Court's below-cost exception would disappear.

And even if the Court's exception could somehow be reconciled with Meijer's arguments, Meijer cannot avoid the reality that *even under their own calculations, Abbott is not pricing below cost*. Meijer alleges that the implicit price of lopinavir is $1.64 and, thus, below the alleged variable cost of $4.62. But Meijer based its calculations on Kaletra's price in December 2003. Kaletra's current price is $4.62 higher (coincidently the same amount Meijer cites as Abbott's average variable cost), while Norvir's price remains the same. That means that implicit price of lopinavir is $4.62 higher, or $6.26, which is far higher than the alleged average variable cost of $4.62. Thus, Meijer concedes that Abbott is now charging an above-cost price for lopinavir. In fact, Meijer takes the position in this case that Kaletra is currently priced at a *supra*-competitive level. (*See* Mot. for Class Cert., May 5, 2008, at 4, 6 ("Abbott . . . has been able to charge supra-competitive prices for Norvir *and Kaletra*[.]" (emphasis added)).

It does not help Meijer, of course, to argue that Abbott temporarily charged a below-cost price in the past, which is one of the reasons why an interlocutory appeal will so clearly advance this litigation's termination. Pricing is exclusionary only when the below-cost pricing actually excludes, or at least comes dangerously close to excluding, competitors. "When exit does not occur, or recoupment is improbable even if some producers give up the market, *there is no antitrust problem*." *Wallace v. IBM Corp.*, 467 F.3d 1104, 1106 (7th Cir. 2006) (emphasis added). In other words, "the plaintiff must establish not only that the defendant has sold products below cost *but also that exit*

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

11

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

*from the market has occurred or is imminent*, enabling the aggressor to recoup by setting monopoly prices that injure consumers." *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690, 695 (7th Cir. 2006); *accord* Phillip Areeda, *Monopolization, Mergers, and Markets: A Century Past and the Future*, 75 Cal. L. R. 959, 965-966 (May 1997) (same); *Cascade*, 515 F.3d at 902 (noting that courts should "leave unhampered pricing practices that might benefit consumers, absent *the clearest showing* that an injury to the competitive process will result") (emphasis added).

That was also the exact basis for summary judgment in *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), where ARCO's purported predatory prices failed to vanquish key competitors. As a result, the Ninth Circuit explained that ARCO's below-cost prices were of "*no concern to the antitrust laws*"—even if they caused competitors to suffer "financial losses"— because they did not exclude existing competitors capable of continuing to compete profitably. *Id.* at 1433 (emphasis added).

That is dispositive here. Even if Abbott had temporarily charged below-cost prices in December 2003—which Abbott denies—no competitors left the market as a result and, in fact, Abbott now has two new competitors. That alone would mandate summary judgment. Accordingly, the fact that Meijer admits that Abbott is not currently charging below-cost prices should end this case as a matter of law, which means that the interlocutory appeal, if Abbott prevails, would materially expedite the resolution of this case.

Meijer's below-cost arguments fail for many additional reasons. For instance, lopinavir's implicit price—even in December 2003—was actually much higher than the $1.64 that Meijer claims. Meijer contends that Abbott has "conceded" that $1.64 was lopinavir's imputed price in December 2003. (DP Opp'n at 6-8). That is not true. The very page of the Abbott pleading Meijer relies on for this purported concession expressly states that "***lopinavir's imputed price is not $1.64.***" (Abbott Mot. for Leave, Ex. A at 3 n.1 (emphasis added)). Although Abbott used the $1.64 figure as a guide in the motion to dismiss context—where it had to accept the allegations as true—Abbott made it abundantly clear that: (1) "[a]t the very worst-case scenario," the imputed price for lopinavir is $1.64 based on the allegations in the complaint (Mot. to Dismiss Consol. Am. Compl. at 6); (2) "the Meijer Plaintiffs must plead *at least* that it costs Abbott more than $1.64 to manufacture just the

12

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1   lopinavir portion of a Kaletra pill" (*id.* (emphasis in original)); and (3) "the imputed, or 'effective,'

2   price for the lopinavir portion of Kaletra in 2003 was $1.64 *at the very minimum* under any possible

3   calculation" (Reply in Supp. of Mot. to Dismiss Consol. Am. Compl. at 6 (emphasis added).

4          The correct imputed price is much higher than $1.64 for a number of reasons.  As discussed

5   in detail in Abbott's opposition to Plaintiffs' Motion for Class Certification (pp. 19-21) and the

6   supporting Declaration of Dr. Joel Hay (¶¶ 37-43), the $1.64 price that Meijer used in its motion to

7   dismiss context was based on the Wholesale Acquisition Costs for Norvir and Kaletra—a price that

8   does not take into account rebates and chargebacks.  The correct imputed price must be based on real

9   prices, not list prices, and the real prices result in a substantially higher imputed prices—at times

10  more than $3 higher—mainly because the rebates and chargebacks for Norvir were larger than those

11  for Kaletra.  (Hay Decl. ¶ 42).  Moreover, the imputed price must be based on the 100 mg dose of

12  ritonavir used by competing PIs, not the 200 mg dose of ritonavir in Kaletra, which results in an

13  even higher imputed price.

14         Finally, Meijer's math is incorrect even assuming that the imputed price of lopinavir is $1.64.

15  Meijer argues that because this imputed price is only 9% of the cost of Kaletra as of December 3,

16  2003, "Abbott would need roughly 92% margins on lopinavir in order to avoid liability under

17  *Cascade.*"  (DP Opp'n at 6-7).  By using a 92% profit margin benchmark, Meijer attributes to the

18  lopinavir portion all of the costs of producing Kaletra—whether or not they relate to the ritonavir or

19  lopinavir portions.  In other words, Meijer assumes that the ritonavir portion of Kaletra is costless.

20  That assumption is not supported by evidence or common sense.

21         For all of these reasons, application of the below-cost rule would—at the very least—

22  substantially increase the likelihood that Meijer's monopolization claims will be resolved on

23  summary judgment and, therefore, will never make it to trial.  That is sufficient to show that an

24  interlocutory appeal will materially advance the litigation's termination.

25         **D.     Although Irrelevant To Abbott's Motion, Abbott Disputes Meijer's Position On**

26                 **The Current Application Of *Cascade* In This Case.**

27         When opposing Abbott's Omnibus Motion to Dismiss addressing *Cascade*, Plaintiffs—

28  including Meijer—repeatedly emphasized that "*Cascade* is irrelevant here," "*Cascade* is

1    inapposite," and "*Cascade* does not apply to these cases." (Pls.' Opp'n to Mot. to Dismiss, Feb. 14,

2    2008, at 2-4). The Court, of course, adopted that position and expressly "decline[] to apply a bright-

3    line rule that would condition a finding that Abbott's conduct was anti-competitive on some measure

4    of its costs." (*Doe/SEIU*, Order dated Apr. 28, 2008, at 3).

5        Having successfully convinced the Court that *Cascade* is "irrelevant," Meijer now belatedly

6    attempts to embrace *Cascade*—or, more accurately, a twisted version of *Cascade*, effectively

7    converting a safe harbor into uncertain waters for unilateral pricing behavior. Although Meijer's

8    argument bears no relevance to the pending motion, Abbott feels compelled to explain briefly why

9    Meijer's reading of *Cascade* is flawed.

10       Meijer mischaracterizes *Cascade* as establishing a sufficient-but-not-necessary cost-based

11   standard under which a showing of below-cost pricing would demonstrate a *prima facie* case of

12   exclusionary conduct. But in fact, Meijer has it backwards. The Ninth Circuit held that a plaintiff

13   *cannot* sustain a claim under Section 2 of the Sherman Act based on unilateral pricing behavior

14   absent a showing of below-cost pricing—*i.e.*, *Cascade* established an above-cost safe harbor. The

15   Court of Appeals never addressed when, if at all, a showing of below-cost pricing would suffice to

16   prove exclusionary conduct.

17       To be sure, Abbott would be entitled to rebut any showing of below-cost pricing by, for

18   example, proving that there has been no harm to competition and/or a legitimate business purpose

19   for the pricing. And the Ninth Circuit certainly never held, as Meijer now argues, that below-cost

20   pricing can be sufficient to constitute *prima facie* evidence of exclusionary conduct even if the trial

21   court finds that above-cost pricing does not exonerate the defendant. Such a holding would turn

22   *Cascade*'s above-cost safe harbor on its head and, therefore, should be summarily rejected.

23

24

25

26

27

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

14

1

## III.    CONCLUSION

For the foregoing reasons, Abbott Laboratories respectfully requests that the Court grant its

motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).


Dated: June 26, 2008                        Winston & Strawn LLP

                                    By:    ____/s/ James F. Hurst_____
                                            James F. Hurst
                                            Attorneys for Defendant
                                            ABBOTT LABORATORIES

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)