# EXHIBIT 8

**IRELL & MANELLA LLP**

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7567
FACSIMILE (310) 203-7199
tstockinger@irell.com

May 7, 2008

**VIA E-MAIL**

Matthew A. Campbell, Esq.
Winston & Strawn LLP
1700 K Street NW
Washington, D.C. 20006-3817

      Re:    GlaxoSmithKline v. Abbott Laboratories, Case No. 07-CV-5701-CW (N.D. Cal.)

Dear Matt:

      In an effort to more efficiently resolve the parties' outstanding discovery disputes, this letter seeks to consolidate and summarize the discovery issues we have been discussing over the last several weeks. In addition, it addresses further issues with Abbott's responses to requests for production propounded in *In re Abbott Labs Norvir Antitrust Litigation*. As you know, GSK has requested that Abbott produce in this action all documents responsive to these RFPs. *See* GSK's First Set of RFPs No. 3.

      As an initial matter, we suggest that the parties agree to raise and attempt to resolve by May 29 all discovery disputes that can be discerned on the face of responses to the parties' outstanding discovery requests. If the parties are unable to resolve certain of these issues by that date, both sides will consider their meet and confer obligations met as to those issues and will be free to move for relief on a mutually agreed upon schedule. Any other issues not included in a motion at that time will be waived. This agreement would not extend to issues that cannot be learned from the face of a parties' responses. For example, it would not include issues that arise only after review of a parties' production. It would also not preclude a party from moving if an agreed upon supplemental response is arguably inadequate. We suggest the following schedule: the parties agree to raise any remaining discovery issues by May 13 and attempt to resolve the issues by May 29. The parties would then file their respective motions, if necessary, by June 5 to be briefed and heard according to the time frame outlined in the Local Rules. Please let me know whether Abbott is amenable to this suggestion on our Friday call.

1864730.1 07

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 2

### Additional Issues Concerning Abbott's Responses to *In re Norvir* RFPs

<u>Response to First Document Request Nos. 3 & 4</u>:  These requests seek weekly, monthly, quarterly, annual or other summary reports that relate to the costs incurred by you for the sale of Norvir or Kaletra.  Abbott does not agree to produce documents responsive to these requests.

I note however that inconsistent with its response to these document requests, as well as its stated position in your April 25, 2008 letter, Abbott agrees to produce documents sufficient to show costs, overhead, and capital costs for, as well as profits and revenue for, and capital invested in, Norvir and Kaletra in its responses to Plaintiffs' Eighth Document Requests Nos. 1-3.

Given these discrepancies, please explain in detail the scope of Abbott's current production of documents regarding costs of Norvir and Kaletra.

<u>Response to First Document Requests No. 8</u>:  This request seeks sales data on sales of Kaletra.  Abbott's response states that it will produce documents relating to sales of Norvir.  Please confirm that this is a typographical error.

<u>Responses to First Document Requests Nos. 16 & 17</u>:  These requests seek all documents that refer or relate to the marketing of Norvir or Kaletra.  These documents are central to the issues in this case.  For example, marketing documents will reveal whether Abbott intended to price Norvir as a booster – as it claims – or instead intended to harm its competition.  They likely will also discuss issues relevant to market definition and market power.  Yet, Abbott has refused to produce any documents responsive to these two requests<u>.</u>

Please confirm that Abbott will produce all marketing documents for Norvir and Kaletra created in the years 1997 to 2004.  If you believe all relevant marketing documents have already been produced, as Abbott claims in certain of its subsequent responses, *see, e.g.*, Second Requests No. 44-46, please explain in detail the scope of its production.

<u>Response to First Document Requests No. 22</u>:  This request seeks "all documents that refer or relate to the December 2003 increase in the price of Norvir."  This request goes to the heart of GSK's and (*Doe* plaintiffs') case.  Instead of agreeing to produce all documents in this category, however, Abbott responds that it will only produce documents "that discuss the reasoning behind, and/or the impact of, the December 2003 increase in the price of Norvir."  In light of Abbott's responses to other requests, it may be that Abbott has produced the requested documents.  Please explain whether there are any specific categories of documents encompassed by this request which Abbott has not produced.

<u>Responses to Second Document Requests Nos. 1-57, 62-64, 68-70 and Fourth Document Requests Nos. 1-8</u>:  These requests seek documents relating to claim

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 3

construction, patent infringement, and patent validity issues. It is our understanding that Abbott initially objected to producing documents in response to these RFPs in *In re Abbott Labs Norvir Litigation*, but that discovery subsequently proceeded on these RFPs and other related discovery pertaining to Abbott's patents. Please confirm that Abbott is not withholding documents responsive to these requests.

<u>Response to Sixth Document Requests No. 3</u>: This request seeks documents that refer to or discuss Meltrex. We have previously raised this issue with Abbott, which is noted below.

<u>Response to Seventh Document Requests No. 5 & 6</u>: These requests seek all documents in which you have referred to or described the actual or projected impact of Reyataz or Lexiva on your business. Abbott responds that it has "already produced employees' documents relating to the actual or projected impact of Reyataz [and Lexiva] on Abbott's products". Based on our review, this is the only response in which Abbott references production of its "employees' documents" rather than its own documents. Please confirm that Abbott is not withholding documents responsive to these requests based on this language.

<u>Response to Seventh Document Requests No. 16 and Response to Eighth Document Requests No. 8</u>: These requests seek documents relating to actual or expected income generated from Abbott's Norvir patents, including royalties and license fees. Outside of actual licenses and negotiation documents, Abbott has refused to produce documents showing the amounts of license fees and royalties from the Norvir patents because they are purportedly "irrelevant to any claim or defenses."

These documents are at least relevant to Abbott's own defense based on its Norvir patents. For example, royalty income from patented technology is one indicia of obviousness. Further, an analysis of royalty income from Abbott's Norvir patents is relevant to an assessment of whether Abbott's claim is pretext that it had to raise the price of Norvir in order to reflect Norvir's value as a boosting agent rather than a stand alone protease inhibitor.

Please confirm that Abbott will produce documents responsive to this request.

<u>Response to Eighth Document Requests No. 9</u>: This request seeks documents and communications referring to Abbott's marketing of Norvir or Kaletra to physicians after the price hike, including scripts and sales presentations. Abbott's response appears to limit production to "correspondence and communications with physicians after Norvir's price increase."

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 4

      Please confirm that Abbott has or will produce scripts and sales presentations to physicians after the Norvir price hike.

      <u>Response to Eighth Document Requests No. 16</u>:  This request seeks records of all communications from any physician or other healthcare provider regarding Norvir or Kaletra.  Rather than agreeing to produce records of these communications, Abbott simply responds that it has already produced "communications from physicians and other health care providers relating to Norvir's price increase."

      Please confirm that Abbott has or will produce all *records* of such communications, including notes, memoranda and call logs memorializing such communications.

      <u>Response to Eighth Document Requests Nos. 13</u>:  This request seeks Norvir and Kaletra training manuals.  Instead of agreeing to produce the requested materials, Abbott simply responds that it has produced training manuals related to the Norvir price hike and claims that any other materials are "irrelevant to any claim or defense in this action."

      Abbott's objection not well-taken.  General Norvir and Kaletra product training manuals are relevant to at least market definition and market power issues.  Please confirm that Abbott will fully respond to this request.

      **Outstanding Issues Currently Being Discussed**

      Below lists a brief summary of outstanding issues that the parties are attempting to resolve.  Please let us know whether we have inadvertently left out issues or, in your view, inaccurately described our discussions.

      <u>Issues Raised by GSK</u>

- *Production Timeframe*: GSK believes that with a few exceptions outlined in my April 9, 2008 email, the appropriate timeframe for Abbott's production is January 1, 1997 to December 31, 2004.  We understand from your April 25, 2008 letter that with the exception of responses to request nos. 3, 9, 21 and 24, Abbott will produce documents responsive to GSK's requests for production served in this litigation without date restrictions.  As to documents responsive to requests served in the *In re Norvir* litigation, Abbott is currently reviewing the list of responses to requests contained in my May 2, 2008 letter that GSK believes Abbott has improperly limited by timeframe.  These include: First Request Nos. 7-9, 12-15, 28, 39, 45 & 59, Sixth Request Nos. 2, 3, 6 & 7, Seventh Request Nos., 6, 9, 11-13, 15, 17-20 & 30, and Eighth Request Nos. 1-3, 6 & 7.  My May 2 letter also requests Abbott to reconsider its position as to limiting the timeframe of documents produced in response to GSK's RFP Nos. 21 and 24.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 5

- *Document Custodians*: Based on correspondence between *Doe* Plaintiffs and Abbott in *In re Norvir Antitrust Litigation*, GSK raised concerns that Abbott improperly limited its production in that case to the documents of five custodians. Based on your April 25, 2008 letter and our follow-on discussions, GSK understands that Abbott has not and will not limit its production to five custodians, but rather has "made a thorough and reasonable production of documents from persons with relevant and responsive information related to the *Doe/SEIU* litigation." The parties are currently discussing an exchange of custodian lists around the time that their productions are substantially completed.

- *Missing Attachments*: Based on our May 5 conversation, we understand that Abbott is willing to search for and produce, if they exist, attachments that GSK identifies which appear to be missing from emails and other correspondence. We are preparing a letter listing the correspondence we have currently identified which are missing attachments. In addition, you agreed to confirm that Abbott has followed a protocol of producing attachments directly following their parent email.

- *Organization Charts*: GSK requested that Abbott confirm production of organizational charts. We note that Abbott agreed in the *Doe* litigation to produce "any and all organizational charts listing Abbott personnel by job title and/or job description" "to the extent they exist and were authored or created in the year 2003 or thereafter." Response to *Doe* First Requests No. 45. You agreed on our last call to determine whether Abbott can and will identify these documents by Bates range.

- *Missing Call Logs*: On our May 5 call, you stated that you believe Abbott has produced all call logs from December 1, 2003 through December 31, 2004. As we discussed, based on our review of Abbott's production this does not appear to be the case. As a courtesy, we are preparing a letter providing a list of the call logs that we have reviewed and the reasons for our conclusion that not all call logs have been produced.

- *Meltrex Documents*: On our May 5 call, we discussed that Abbott has not agreed to provide all documents responsive to *Doe* Plaintiffs' Sixth Request No. 3. You stated that, in addition to the documents that Abbott agreed to produce in its written response, all Meltrex documents for Kaletra were produced. You stated that in the *Doe* litigation, Abbott pointed plaintiffs to certain websites and other public information, which allayed their concerns regarding Abbott's failure to produce Meltrex documents for Norvir. You agreed to provide those websites to GSK in an initial attempt to resolve this dispute. You also agreed to confirm that

1864730.1 07

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 6

Abbott has produced planning documents, surveys from doctors and marketing documents discussing Meltrex versions of Kaletra and Norvir.

- *Documents Produced in State and Federal Investigations of the Norvir Price Hike*: Abbott is currently looking into its ability to create a chart identifying which documents produced in this litigation were also produced in state and federal investigations relating to the Norvir price increase. You also agreed to confirm production of and provide Bates ranges for the transcripts of depositions taken in these investigations of Laureen Cassidy; Elizabeth Pfau; Joseph Serio, Jr.; Jeffrey Leiden; and Joseph Fiske.

Issues Raised by Abbott

- *Discovery Requests Relating to All ARV Drugs*: Based on our May 5 conversation, we understand that Abbott will provide to GSK a list of documents relating to ARV drugs, and in particular, Abbott's market definition, which, if GSK agrees to produce, will resolve this dispute. Abbott will also propound additional requests for production of documents relating to ARV drugs that may arguably fall outside the scope of discovery that Abbott has already propounded. GSK will consider the informal list and the new RFPs in good faith to determine whether it is willing to produce these documents.

- AIDS Healthcare Foundation v. GSK *Documents*: The parties are currently negotiating a resolution to this dispute. GSK offered to produce pleadings, deposition transcripts, deposition exhibits, hearing transcripts, expert reports, motions and orders to the extent they relate to relevant market issues in the *AHF* case if Abbott agreed to withdraw its requests for any other documents produced in matters other than the case at bar, including those sought in Abbott's RFP Nos. 69-78. On our May 5 call, you stated that Abbott rejected this proposal although you further remarked that Abbott was still considering whether to press its requests for production of documents from matters other than *AIDS Healthcare Foundation*. We urged Abbott to first complete its analysis of whether it will actually seek documents from other matters before rejecting GSK's proposal. If Abbott will not ultimately seek these documents, then the parties could resolve this issue without burdening the Court with unnecessary motion practice. In addition, we discussed whether Abbott had any other counterproposal for resolving this issue. We agreed to speak further on Friday.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Matthew A. Campbell, Esq.
May 7, 2008
Page 7

      We look forward to continuing our meet and confer process on Friday.  Again, if I have failed to include any outstanding issues or if you believe this letter does not accurately reflect the parties' respective concerns, please let me know.

      Sincerely,

      /s/

      Trevor V. Stockinger

TVS

1864730.1 07