# EXHIBIT 12

Case 4:07-cv-05702-CW   Document 89-13   Filed 07/03/2008   Page 1 of 6

# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON EC4N 8NH

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

(202) 282-5000

FACSIMILE (202) 282-5100

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

WRITER'S DIRECT DIAL NUMBER
(202) 282-5848

April 25, 2008

**VIA ELECTRONIC MAIL**
Mr. Trevor Stockinger
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:   *GSK v. Abbott Labs.*, Case No. C 07-5702 CW

Dear Trevor:

This letter responds to the four issues that you incorrectly claim in your letter of April 21, 2008 are "long-outstanding." In a separate letter, we will address your questions concerning any missing attachments, organizational charts or call logs, as well as the Meltrex documents and documents produced in state and federal investigations.

1.   **Date Ranges of Abbott's Document Production.**

Your letter addresses two issues concerning time limitations: (a) the date restrictions bounding Abbott's document productions in prior litigation, and (b) the relevant time period Abbott will apply to its production of documents responsive to GSK's requests.

(a) **Date Restrictions Bounding Prior Productions.** With respect to the first issue, per the Court's order dated December 17, 2007, Abbott has produced to GSK all documents it previously produced to the plaintiffs in the *In re Abbott Laboratories Norvir Anti-Trust Litigation*, No. C 04-1511 CW (Consolidated Case No. C 04-4203) ("Norvir litigation"). In its responses to GSK's requests for production, Abbott also agreed to produce—and in many cases has already produced—all responses in which Abbott raised any objections to those requests for production, any motions or court orders concerning those objections, and any non-privileged correspondence between the parties addressing those objections, to the extent they exist and can be located after a reasonable search.

As we previously noted, these discovery responses, orders and correspondence clearly define the scope of Abbott's prior production. We also note that, as these documents show and contrary to the claim in your letter, Abbott did not apply any broad-based time period limitation to its production of documents in the Norvir litigation. Rather, like its position here with respect

**WINSTON & STRAWN** LLP

Mr. Trevor Stockinger
April 25, 2008
Page 2

to GSK's document requests, Abbott considered each request and produced a reasonably and appropriately defined set of non-privileged responsive documents. And as required by the Federal Rules, Abbott clearly described the scope of its production in its discovery responses and communications with opposing counsel.

If, after reviewing those responses and correspondence, you believe that you require additional categories of documents in order to establish your claims or to respond to Abbott's defenses, we ask that you specifically identify those documents so that we may properly respond to your request.

(b) **Relevant Time Period for Production in this Case.** With respect to your second issue, contrary to your contentions, Abbott's position on the timeframes bounding its production of documents in this case is not ambiguous. As noted in our amended responses, Abbott objects to the broad nature of GSK's requests and reserves the right to specifically object to any of those requests if, during the course of its review of relevant material, it becomes clear that such requests are unduly burdensome. *See* Abbott's Amended Responses, Gen. Obj. No. 8. Abbott nevertheless applied a relevant time period with respect to only three document requests (Doc. Reqs. Nos. 9, 21 and 24), and in each case, Abbott specifically defined that relevant time period. This information directly responds to the request in your April 9, 2008 e-mail that "[i]f Abbott is applying different date restrictions to different categories of documents, please provide this detail as well."

We are frankly surprised by your threat to seek relief on this issue. During our telephonic meet and confer on April 7, 2008, we expressed our willingness to negotiate with you about the proper timeframe for both parties' productions. We also agreed that it would be appropriate to permit each party to expand the relevant time period for a limited number of specific requests, and asked that you identify those requests that should be excepted from any general relevant time period.

In your April 9, 2008 e-mail, you identified twelve requests that you stated should not be restricted by date—Document Request Nos. 17-20 and 25-32. In its amended responses, Abbott included no date restrictions for any of those requests. Again, Abbott only defined a relevant time period for its production in response to three of GSK's requests—Document Request Nos. 9, 21 and 24—and your letter does not raise any objections to those responses. If you have concerns with those relevant time periods or any other of Abbott's amended responses, we would be happy to discuss those matters with you. But at this point, you have not identified a single document request for which you claim Abbott has applied an inappropriate time limitation.

2. **Document Custodians in Prior Productions.** In your letter, you state that GSK will move the Court for relief if Abbott does not identify the custodians of the documents produced by Abbott in prior litigation by April 25, 2008. Your threat is inappropriate.

As an initial matter, though we believe this issue can be resolved without court intervention, I note that GSK has taken none of the steps required under Rule 37 to perfect a

WINSTON & STRAWN LLP

Mr. Trevor Stockinger
April 25, 2008
Page 3

motion to compel. GSK has served no formal interrogatories or document requests concerning this information, and the parties have not satisfied their obligations to meet and confer in good faith on this issue. *See* N.D. Cal. Civil Local Rules 1-5(m) and 37-1(a).

Moreover, your characterization of this request as "long-outstanding" is wrong. As I noted in my April 10, 2008 e-mail, the first time GSK ever asked for information concerning the custodians for Abbott's prior productions was in your April 9, 2008 e-mail. I indicated in my e-mail that, as with all new requests, Abbott would consider it and respond in a timely manner. In your April 11, 2008 e-mail, you responded that yours was not a new request. But in support of that contention, you opaquely argued only that you had asked during our April 7, 2008 telephonic meet and confer "whether Abbott's production to GSK was merely a re-production of documents produced in the various Norvir price increase investigations." How we were supposed to interpret your question as asking for a list of custodians of documents produced in prior litigation is beyond me.

In any event, Abbott did not limit its production in prior litigation to documents in the possession of the five custodians you identified: Heather Mason, Jesus Leal, Jeff Devlin, John Leonard, and Jodi Devlin. Abbott made a thorough and reasonable production of documents from persons with relevant and responsive information related to the *Doe/SEIU* litigation. Also, as Abbott's amended responses indicate, Abbott does not intend to so limit its production of documents responsive to GSK's requests.

3.   **Costs Relating to Norvir And Kaletra.** Abbott's position on this issue is clear. As I noted during our telephonic meet and confer on March 3, 2008 and in my April 10, 2008 e-mail, GSK has not alleged that Abbott priced Kaletra below costs. To the contrary, GSK has specifically argued in its filings with the Court that it does not have to prove below-cost pricing. For example, GSK has argued that "[t]he mere fact that . . . Abbott is leveraging its power from one market into another does not require application of the below-cost test set forth in *Cascade*," and that GSK has alleged alternative theories of exclusionary conduct "none of which can even plausibly be said to require a finding of below-cost pricing." *See, e.g.*, Pls' Opp'n to Abbott's Omnibus Mot. to Dismiss, 02/14/08, at 3, 6, 17 (Doc. No. 48).

Based on the positions GSK itself has taken before the Court, documents concerning Abbott's costs relating to Norvir and Kaletra are irrelevant. Your statement in your letter that "profitability . . . will likely be considered by economic experts to judge foreclosure of competition" is wholly inconsistent with GSK's prior positions in this case. Abbott would be willing to reconsider this position only if GSK were to amend its complaint or the Court were to adopt a cost-based standard for determining whether Abbott's pricing of Norvir and Kaletra was anticompetitive.

I also note that Abbott's refusal to produce its own cost information is in no way inconsistent with its request for similar information from GSK. GSK's cost information is relevant for reasons going beyond whether Abbott's conduct was exclusionary. It appears that GSK's proffered measure of damages in this case will be lost profits. *See, e.g.*, Compl. ¶ 50

WINSTON & STRAWN LLP

Mr. Trevor Stockinger
April 25, 2008
Page 4

("GSK has also lost significant market share in the market for boosted PIs."). GSK's cost information, therefore, would be clearly relevant to prove the extent of those damages, if liability could ever be established.

    4.    **Communications with the FDA.** You claim that Abbott's position in this case concerning the production of documents in response to GSK's Document Request No. 9, which concerns Abbott's communications with the FDA about Norvir and Kaletra, is inconsistent with Abbott's position in prior litigation, and specifically its response to Request for Production No. 49 in the *Doe* litigation. A simple comparison of Abbott's responses in those two instances, however, shows there is no inconsistency. Nor is there any basis upon which GSK could seek relief from the Court.

In the *Doe* litigation, Abbott agreed to produce all documents authored or created in 2003 or thereafter that were responsive to the plaintiffs' request for "[a]ny and all documents or communications that refer or relate to Warning Letters or other correspondence with the FDA regarding Norvir, including but not limited to Warning Letters regarding the marketing of Norvir for use in 100 to 200 milligram doses." As we have repeatedly indicated to you, GSK already has received all of the documents Abbott produced in response to this request and any other requests in the *Doe* litigation.

In this litigation, GSK requested the same documents not just for Norvir, but for Kaletra or protease inhibitors. *See* GSK's RFP No. 9. Abbott's amended response to this request states, in pertinent part:

> Abbott agrees to produce all correspondence between Abbott and the FDA between January 2002 and the date of the filing of this complaint regarding Norvir and Kaletra, to the extent those documents exist and can be located after a reasonable search. If, after reviewing this correspondence, Plaintiff can identify specific correspondence that is relevant to this case, Abbott is willing to discuss at that time the production of internal communications relating to that specific correspondence.

Abbott's Amended Resp. to GSK's RFP No. 9.

Your e-mail and letter fail to explain what you claim is inconsistent about these two positions. If anything, Abbott has agreed to enlarge both the timeframe and the scope of its production in this case. Even if GSK mistakenly read Abbott's position as narrower than in prior cases, we do not understand how GSK could possibly be prejudiced under the circumstances given that it has already received all of the documents Abbott produced in the prior litigation.

In short, we simply cannot see any merit to your concerns about Abbott's production of documents in response to GSK's request for certain documents relating to Abbott's communications with the FDA. Abbott's amended response does not foreclose production of

**WINSTON & STRAWN** LLP

Mr. Trevor Stockinger
April 25, 2008
Page 5

any responsive documents between January 2002 and the filing of GSK's complaint. Abbott proposes that rather than incurring the great inconvenience and expense of collecting and producing all internal discussions of any communication of whatever nature with the FDA concerning Norvir and Kaletra, that GSK identify from Abbott's production of all such communications those particular communications GSK believes are relevant to this litigation.

  Abbott's proposal is reasonable under the circumstances, and you did not provide any basis for claiming otherwise in your letter. Nevertheless, we are willing to discuss this issue further if, after reviewing Abbott's production in prior cases and in this case, your concerns remain.

  We look forward to speaking with you next Monday to attempt to resolve these issues, as well as Abbott's concerns about GSK's own discovery responses, which we have identified in a separate letter of this date.

Sincerely,

*Matthew A. Campbell*

Matthew A. Campbell

cc:  Charles B. Klein
   Samuel S. Park