IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7567
FACSIMILE (310) 203-7199
fstockinger@irell.com

February 26, 2008

**VIA E-MAIL AND U.S. MAIL**

Charles B. Klein
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817

  Re: *SmithKline Beecham Corporation, d/b/a GlaxoSmithKline v. Abbott Laboratories*, No. 07-5702 CW (N.D. Cal.)

Dear Chuck:

This letter memorializes the meet and confer we had on the afternoon of February 22, 2008. During that call, we discussed both parties' responses to their respective Requests for Production, GSK's responses to Abbott's First Set of Interrogatories, and GSK's responses to Abbott's First Set of Requests for Admission.

Please let me know if anything in this letter does not accurately reflect our conversation.

**I. GSK's Requests for Production**

As a general matter, you clarified that, unless clearly specified, for example as in General Objection No. 4, Abbott is not withholding documents based on its objections to GSK's requests for production. These objections are made only to preserve Abbott's rights.

Further, you stated that Abbott will make another production of documents at the end of February and will continue to make rolling productions. At this time, Abbott is not aware of when its entire production would be complete.

**A. General Objection No. 4**

As set forth in my letter of February 18, 2008, and during the call, Abbott improperly objected that it will not prepare a privilege log for any documents generated after April 19, 2004, the date the complaint in *Doe v. Abbott Laboratories*, Case No. 04-1511, was filed. As we said, the *GSK* action is a different suit, and Abbott has a separate obligation to log privilege documents in this suit. Nonetheless, during the call we agreed that neither party would log privileged documents generated after November 9, 2007, the date GSK's lawsuit

1827724.3 03

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 2

was filed. Despite its objection, Abbott also agreed that it would log privileged communications specifically concerning GSK or the GSK suit created before November 9, 2007. Under this compromise, Abbott would not be required to log communications between April 19, 2004 and November 9, 2007 that involve overlapping issues between the *Doe/SEIU* lawsuit and the *GSK* lawsuit if such communications do not specifically discuss GSK or the GSK lawsuit.

### B. General Objection No. 8

During the call, we discussed Abbott's improper limitation on the relevant time period for producing responsive documents. We first sought clarification as to the specific date range Abbott used for producing documents in the *Doe/SEIU* lawsuit. You were unaware of those specifics, but agreed to research the issue and inform us of those dates during our next meet and confer.

In addition, we informed you that GSK's production will likely include documents from January 1, 1999, just before the date of its New Drug Application (NDA) for Lexiva, and that we expect Abbott to similarly produce documents beginning from before the date it filed NDAs for Norvir and Kaletra. As we explained, Abbott likely has numerous documents from that time period, including those on pricing decisions and marketing strategy, that bear on the issues in this case. You agreed to consider this issue and let us know Abbott's position in our next meet and confer.

### C. Requests for Production Nos. 2 and 4

You confirmed that Abbott will produce all non-privileged documents from the *Schor v. Abbott Laboratories* litigation to the extent that they exist. Abbott's response to this RFP merely clarified that because Abbott did not produce documents in *Schor*, it will only re-produce to GSK documents filed and served in the *Schor* litigation.

### D. Request for Production No. 3

We discussed Abbott's improper incorporation into its response of objections made in discovery responses in the *Doe* litigation. As we said, Abbott must produce and direct GSK to its previous objections, as well as agreements or discovery orders relating to its responses to discovery requests in *Doe*. Without these materials, GSK cannot evaluate the scope of Abbott's production. You were not aware of whether Abbott has already produced these materials. You agreed to follow-up on this issue.

### E. Request for Production No. 9

Abbott's response to this RFP states that it will only produce FDA warning letters regarding Norvir and Kaletra. You agreed that Abbott would not so limit its production.

1827724

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 3

You agreed that Abbott would produce all non-privileged communications between Abbott and the FDA regarding Kaletra and Norvir. You also agreed to produce any communications with third-parties concerning the issues in Abbott's correspondence with the FDA relating to Kaletra and Norvir. You did not agree however to produce internal Abbott correspondence relating to communications with the FDA, asserting that such a production is overly burdensome. As we explained, this RFP applies to a limited set of documents concerning the key products at issue in this case and important communications about those products. You suggested that, in fact, Abbott may have already produced these documents in the *Doe* litigation and agreed to follow-up on that issue in the next meet and confer.

F.    **Request for Production No. 10**

You confirmed that Abbott would produce documents relating to any actual investigation or any contemplated investigation of which Abbott is aware regarding the Norvir price increase.

G.    **Request for Production No. 11**

As with its response to GSK's RFP No. 3, Abbott has improperly incorporated objections made in responses to subpoenas, civil investigative demand or informal request for production without informing GSK of those specific objections. You agreed to follow-up on this issue and provide this information to the extent it was not overly burdensome. Such a position of burden is not proper. GSK is entitled to evaluate any objection and understand the scope of production in response to this request.

Abbott also agreed to provide existing privilege logs regarding documents responsive to subpoenas, civil investigative demands or informal requests but withheld by Abbott from production on the basis of a claim of privilege. You stated that if Abbott did not produce a log for these requests when Abbott responded to them, Abbott would not produce a log.

H.    **Request for Production No. 21**

Abbott's response to this RFP improperly states that Abbott will only produce documents sufficient to determine the pricing of Norvir and Kaletra to Government payors from December 2003 to December 2007. As we explained, all documents relating to the pricing of Norvir and Kaletra to Government payors, including forecast and strategy documents, are relevant to this litigation. They comprise a subset of general pricing documents for Norvir and Kaletra. You agreed to follow-up on this issue, believing that despite Abbott's response to this RFP it may have already produced these documents in *Doe*. We also explained that Abbott improperly limited the time frame of its response to this RFP,

1827724

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 4

but we agreed to deal with this issue when discussing a resolution to Abbott's improper objection in General Objection No. 8.

### I. Request for Production Nos. 25, 26, 27, & 28

We explained that GSK is entitled to the production of all license agreements concerning technology used in Norvir and Kaletra. This includes licenses Abbott took for technology needed to produce Norvir and Kaletra, as well as licenses Abbott has granted to third parties concerning technology it controls that is embodied in Norvir or Kaletra. We clarified that licenses in the first category are relevant, at least, to cost issues that Abbott itself has raised in bringing its motion to dismiss based on the *Cascade* decision. You agreed to follow-up, and either to confirm the production of these licenses or to consider producing such licenses.

### J. Request for Production No. 33

You stated that Abbott made an oversight by responding that it would produce responsive documents relating to only Norvir. You agreed to produce documents sufficient to show sales of Norvir, as well as Kaletra, by payor type if this information is maintained by Abbott in the ordinary course of business. As we explained, based on industry practice we would be surprised if Abbott does not maintain this information. We look forward to your confirmation that Abbott will produce the requested materials.

### K. Request for Production No. 36

Abbott agreed to confirm that, despite its response to this RFP, it has produced or will produce materials regarding, created by or considered by Abbott's experts designated in the *Doe* litigation.

### II. Abbott's Requests for Production

### A. General Issues

During the call, you asserted that Abbott cannot determine from GSK's response to Abbott's RFPs what documents GSK has agreed to produce. We do not understand this complaint. As I reiterated on the call, GSK's responses plainly set forth the categories of documents that GSK will produce. Where GSK believes that one of Abbott's requests for production are subsumed in another broader request, GSK refers Abbott to GSK's response to the broader request. This is the same practice Abbott has used in responding to requests for production. During the call, you could provide no concrete examples of responses that you find confusing. Instead, you stated that Abbott would follow-up with a letter setting forth concrete areas of confusion.

1827724

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 5

You also asked whether GSK would produce all documents related to anti-retroviral drugs. We replied that GSK is searching for and will produce documents related to ARV drugs if those documents also discuss one or more protease inhibitors. As we explained, to the extent that documents relating to ARV drugs other than protease inhibitors are relevant at all to this suit, they are only relevant to market definition issues. Since Abbott will presumably use these documents to attempt to convince the trier of fact that the relevant market in this case is one for ARV drugs including PIs, we do not understand why Abbott would seek production of a broader range of documents, such as documents discussing only ARV drugs other than PIs. Such a request is overbroad, and the probative value of these documents to this suit does not outweigh the extensive burden on GSK to produce these documents encompassing its entire ARV business.

Abbott further complains that GSK is not producing documents responsive to requests that phrase the request as seeking documents relevant to various allegations. *See, e.g.*, Abbott RFP No. 19. As we discussed, this complaint is not well-founded. Such requests are not reasonably particularized and require GSK to guess what documents Abbott may view as relevant to this suit. *See Thomas v. Saafir*, 2007 WL 1063474 (N.D. Cal. Apr. 9, 2007) ("[P]laintiff requested 'each and every document that supports' defendants' defenses in this action.... A request for production of documents under Rule 34 must be made with 'reasonable particularity.' Plaintiff's request does not contain any particulars and, consequently, does not satisfy Rule 34(b)."). Nonetheless, as we explained, GSK is agreeing to produce documents responsive to the vast majority of Abbott's other requests, and this production should provide Abbott with responsive documents relating to GSK's allegations.

Finally, GSK clarified that it is not withholding documents from production based on its objections regarding third-party confidentiality issues unless a response specifically says so. For example, GSK will redact patient identifying information from adverse event reports in accordance with Federal law.

### III.   Abbott's Interrogatories

#### A.   Confidentiality Designations

GSK will amend its responses to Abbott's First Set of Interrogatories to designate as confidential page 17, lines 12-14, which refer to the up-front payments GSK has made or will be required to make under the Abbott-GSK Norvir license.

As we discussed, GSK is not clear on Abbott's position regarding the confidentiality of the license. GSK would like to discuss with Abbott now which of the various terms of the license Abbott considers confidential. This is a more efficient approach than filing administrative motions and engaging in meet and confers every time the parties file a

1827724

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 6

motion. Nonetheless, on the call, you refused to engaged in this discussion. We ask that Abbott reconsider its position.

### B.   Interrogatory Nos. 1, 3, and 5

GSK agreed to provide Bates ranges of documents when it relies on Federal Rule of Civil Procedure 33 in responding to these requests. GSK will do so when it produces documents relevant to these interrogatories. We believe this resolves Abbott's concerns regarding these interrogatory responses.

### C.   Interrogatory No. 4

This interrogatory seeks a list of all GSK's ARV drugs, as well as pricing information regarding those drugs. Given Abbott's clarification that it will take the position that the relevant market should be defined to include all ARV drugs, GSK will agree to list its ARV drugs in response to this interrogatory.

The additional pricing information however has little to no relevance to this lawsuit. This case involves Abbott's – not GSK's – pricing decisions. This case focuses on protease inhibitors and boosters of protease inhibitors, not all ARV drugs. GSK's decisions on pricing of other ARV drugs shed no light on the anticompetitive nature of Abbott's decision to raise the price of Norvir by 400 percent.

### D.   Interrogatory No. 6

You asked GSK to produce information on every drug GSK has withdrawn, stopped selling, or contemplated withdrawing from the market over the last ten years. As we explained, GSK does not understand the relevance of this request. GSK is not alleging that every time a pharmaceutical company withdraws a drug or raises the price of a drug, it commits an anticompetitive act. Rather, it is the specific circumstances of Abbott's conduct concerning Norvir that makes its actions anticompetitive, a breach of contract and violative of North Carolina law. Whether GSK has withdrawn its pharmaceuticals says nothing about whether Abbott engaged in anticompetitive and illegal conduct in this case. This interrogatory therefore seeks irrelevant information.

This interrogatory is also overbroad. Abbott is seeking information on "every drug" GSK has ever withdrawn or contemplated withdrawing. Yet, this case focuses on Abbott's anticompetitive acts regarding protease inhibitors. Nonetheless, GSK has provided a substantive response as to its withdrawal of Agenerase – a protease inhibitor. GSK believes its response to this interrogatory is sufficient.

1827724

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 7

### E. Interrogatory Nos. 7 & 8

You asked for information about every lawsuit in which GSK has been accused of violating antitrust or consumer protection laws. As we explained, these interrogatories are vastly overbroad and seek information that is irrelevant to this lawsuit. This suit involves Abbott's anticompetitive conduct. GSK's position in "consumer protection" suits or antitrust suits has nothing to do with those allegations. GSK will consider any suggestions Abbot offers as a compromise.

### F. Interrogatory Nos. 9, 13, 14, 15, & 16

In our response to these interrogatories we stated that the interrogatories were premature because they asked for information that GSK would only learn about after fact and expert discovery. You replied by asking GSK to state for these interrogatories that: (1) it cannot answer yes or no at this time; and (2) it would identify by Bates number the documents that are responsive to these requests when such documents are produced. We agreed that GSK would consider this proposal and follow-up.

### G. Interrogatory No. 10

We stated that GSK provided up-to-date information responsive to this interrogatory when it provided its Initial Disclosures, and that we would amend the interrogatory response as new information comes to light. GSK believes this resolves Abbott's concerns regarding this interrogatory response.

### H. Interrogatory No. 11

GSK objected to this interrogatory on the grounds that it prematurely seeks expert analysis and further fact discovery, and we repeated this position during the call. You stated that you were satisfied with GSK's response.

### I. Interrogatory No. 12

This interrogatory seeks the factual basis for GSK's contention that Abbott breached the covenant of good faith and fair dealing. Abbott complains that: (1) GSK has not identified documents supporting its contentions; (2) that GSK did not list any "specific" provision of the license that Abbott breached; and (3) GSK did not list the amount it believed Abbott is entitled to raise the price of Norvir.

The case is in the early stages of fact discovery, and, as I said on the call, GSK believes its response is complete at this time. GSK, of course, will amend the response as additional facts are discovered and as its contentions are refined, including by listing documents supporting its contentions.

1827724

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 8

### IV. Abbott's Requests for Admission

#### A. Request for Admission No. 46

You asked GSK to clarify our position that the document bearing Bates number GSK00559-GSK00560 is not a business record within the meaning of the Federal Rules of Evidence. Abbott is prematurely seeking an agreement on admissibility of documents which typically is covered in a stipulation between parties after discovery closes. However, without prejudice, GSK would agree, for purposes of this litigation only, that the document is admissible under the business records exception if Abbott agrees not to take further deposition testimony of the author of the document. If Abbott intends to further depose the author, GSK would consider issues of admissibility closer to trial, after the deposition, as in the normal practice.

#### B. Request for Admission Nos. 49, 50, 51, 53, 55, 57, & 59

These requests seek admissions regarding quotations pulled out of context from GSK documents. Without the full context of the documents, GSK cannot admit or deny the request, and as the answers state and as we explained, the documents speak for themselves. During the call, you failed to articulate a rationale for requiring a different answer. If you can provide one, GSK will consider amending its response.

#### C. Request for Admission No. 82

This request seeks an admission or denial that "GSK has a monopoly on Lexiva." As we explained, this request makes no sense. An entity may have a monopoly on a market, not a product. We understand that given this explanation, Abbott does not intend to press its complaints as to GSK's response to this Request.

#### D. Request for Admission Nos. 114 & 115

You asked us to admit that Abbott did not withdraw Norvir from the market in 2003. We explained that this request is ambiguous. The parties dispute the effect of Abbott's 400 percent Norvir price increase and whether that price increase constitutes an effective withdrawal of Norvir from the market. We understand that Abbott does not intend to press its complaints as to GSK's response to this Request.

#### E. Request for Admission Nos. 118-128

These requests each seek information on the relevant markets in this case. As we explained, these requests are premature as they go to issues that will be subject to expert testimony and proof.

1827724

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Charles B. Klein
February 26, 2008
Page 9

### F.     Request for Admission No. 136

We agreed that GSK would add "in combination with other products" to GSK's response so that it would read: "GSK admits that Abbott is the assignee of patents that purport to cover the use, marketing and promotion of ritonavir in combination with other products. GSK does not admit that these patents are valid or enforceable."

### G.     Request for Admission No. 143

This request seeks an admission that "Abbott scientists invented Norvir." As we explained, fact discovery has just begun in this case and GSK has not had an opportunity to evaluate issues concerning who invented Norvir. Moreover, because facts regarding whether Abbott's scientists invented Norvir are uniquely in the possession of Abbott, GSK may lack sufficient information to admit or deny this request, even after further proceedings. We reiterate that GSK will supplement its response after it has a reasonable opportunity to take and evaluate fact discovery into this issue. We trust this resolves Abbott's complaint.

Please let us know a convenient time to further meet and confer on the open issues listed in this letter.

Sincerely,

*Trevor V. Stockinger*
Trevor V. Stockinger

TVS

1827724