# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

(202) 282-5000

FACSIMILE (202) 282-5100

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

CHARLES B. KLEIN
(202) 282-5977
cklein@winston.com

February 27, 2008

**VIA FIRST CLASS MAIL AND EMAIL**
Mr. Trevor Stockinger
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

      Re:    *GSK v. Abbott Labs.*, Case No. C 07-5702 CW

Dear Trevor:

      This letter follows up on my letter to you dated February 12, 2008, and our telephonic meet-and-confer last Friday concerning GSK's deficient discovery responses. This letter also responds, in part, to your letter dated February 26, 2008. Issues pertaining to Abbott's discovery responses will be addressed separately.

      We propose having another call this Friday to discuss the outstanding issues identified below in the hope of obviating the need for a motion to compel.

### *GSK's Responses to Abbott's Document Requests*

      As explained in my February 12 letter, GSK's responses do not satisfy Rule 34 because they fail to identify clearly those categories of requested documents GSK intends to produce and those it intends to withhold from production. During our meet-and-confer, we suggested that, at a very minimum, GSK list these categories of responsive documents it intends to withhold from production so that the parties can identify in an efficient manner the issues ripe for a motion to compel. You rejected that suggestion. Instead, you claimed that this information already is contained in GSK's discovery responses—a position with which we disagree.

      Nevertheless, you did clarify that GSK does not currently intend to withhold any specific documents based on the litany of general objections GSK included in all of its discovery responses. Those objections include, but are not limited to, confidentiality objections, objections to the form and number of the requests, objections to the relevancy of the requests, and burdensomeness objections. You explained that these objections were intended merely to

WINSTON & STRAWN LLP

Mr. Trevor Stockinger
February 27, 2008
Page 2

"reserve GSK's rights," except that GSK intends to redact patient identifying information from adverse event reports in accordance with Federal law.

We appreciate this clarification, but it certainly does not resolve our concerns with regard to GSK's responses to Abbott's document requests. Simply put, as currently drafted, GSK's responses leave us guessing as to whether GSK will produce *all* documents responsive to any given request, or some subset of those documents. Moreover, leaving all of these objections in place gives GSK *carte blanch* to withhold any relevant documents that subsequently may come into its possession. If GSK is not withholding any documents based on its numerous objections, it should withdraw them.

In an effort to streamline the resolution of these concerns, below is an itemized list of the GSK responses with which Abbott takes issue:

1. GSK failed to provide a substantive response to 52 of Abbott's document requests. (*See* Reqs. Nos. 3, 19, 21, 32, 47-52, 62, 69-78, 81-88, 90, 93, 95-96, 98, 103-109, 11, 116, 119-120, 129-130, 132-133, and 135-138). Unless adequate responses are forthcoming, Abbott intends to move to compel the production of documents responsive to these requests.

2. Abbott requested the production of documents relating to the performance, safety and efficacy of protease inhibitors (PIs), including GSK's Agenerase and Lexiva. (*See* Reqs. Nos. 6, 14-17, 53-54, 57-60, and 92). The only responsive documents GSK has agreed to make available are the New Drug Applications (NDAs) for Agenerase and Lexiva. We appreciate GSK's willingness to produce these NDAs, which clearly are responsive, but such a production would fall far short of fully complying with these document requests. Abbott intends to move to compel production of all documents responsive to these requests.

3. A number of Abbott's requests seek documents concerning antiretroviral (ARV) drugs of which PIs are merely one kind. (*See* Reqs. Nos. 23, 25, 27-28, 31-33, 39-40, 42, 45-46, 50-53, and 64, and 69). As noted above, GSK failed even to provide a substantive response with respect to some of these requests. (*See* Reqs. Nos. 32, 50-52, and 69). As to the remaining requests, GSK improperly attempted to limit the scope of its production to PIs only. (*See* Reqs. Nos. 23, 25, 27-28, 31, 33, 39-40, 42, 45-46, 53, and 64). All of the requested documents are discoverable because, as we explained to you in writing and orally, they are relevant to Abbott's defense that all ARV drugs are included in the relevant product market. *See* Fed. R. Civ. P. 26(b)(1); *see also* Hay Rebuttal Expert Report at 35-54. Abbott intends to move to compel GSK to produce all of the requested documents, not just those relating to PIs.

WINSTON & STRAWN LLP

Mr. Trevor Stockinger
February 27, 2008
Page 3

4. In response to more than a quarter of Abbott's document requests, GSK stated generically that it would produce non-privileged documents concerning the marketing, pricing, and/or forecasting for GSK's PIs. (*See* GSK's Resps. to Reqs. Nos. 1, 4-5, 9, 10-13, 23, 25-28, 30-31, 36, 39-44, 61, 63-64, 91, 99-102, 112, 114-115, 117-118, and 126-127). This response is improper. GSK must either confirm that it intends to produce non-privileged documents responsive to the requests, or that it intends to withhold certain responsive documents. GSK is not entitled to leave Abbott guessing as to whether documents responsive to these requests are being withheld. Abbott thus demands that GSK produce all non-privileged documents responsive to these requests. If GSK does not intend to do so, please identify *in writing* which category or categories of documents GSK does not intend to produce. If necessary, Abbott will move to compel appropriate responses to these requests.

5. Abbott requested the production of documents concerning each of the claims in GSK's complaint. (*See* Reqs. Nos. 80, 123, 128, and 131). In response, GSK indicated that it "will identify documents it may introduce as evidence at trial at the time and in the manner specified in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, and any other applicable Orders or rules." While we appreciate GSK's willingness to provide Abbott with its exhibits prior to trial – as it must – this statement obviously is not responsive. Abbott did not ask for an exhibit list sometime in the future. Rather, it asked for all documents that GSK has *now* that are relevant to its claims. Please confirm that all such documents will be included in GSK's production.

6. Abbott requested the production of documents relating to specific allegations GSK made in its complaint about, among other things, Abbott's "contractual obligation" not to raise the price of Norvir, GSK's "reasonable expectation" that it could co-promote its PIs with Norvir at reasonable prices, and Abbott's facilitation of the market for boosted PIs. (*See* Reqs. Nos. 94, 97, 110, 113, 121-122, and 125). With respect to each request, GSK's sole response is that it will produce non-privileged documents relating to the negotiations of the agreement between Abbott and GSK dated December 13, 2002, concerning co-prescription and co-administration rights to Abbott's ritanovir. This is yet another improper attempt by GSK to unilaterally restrict the scope of discovery. Please confirm that GSK will produce all non-privileged documents responsive to these requests. Otherwise, we will move to compel such production.

Finally, this will confirm that GSK intends to begin a rolling production of documents by the end of March and, at that time, will identify an end date for the rolling production.

WINSTON & STRAWN LLP

Mr. Trevor Stockinger
February 27, 2008
Page 4

### *GSK's Interrogatory Answers*

Below is a summary of where things stand with regard to GSK's deficient interrogatory answers:

- Interrogatories 1 through 3, which specifically require GSK either to (i) identify physicians or patients who fall into certain categories, or (ii) state that GSK is unable to identify such individuals: We appreciate GSK's agreement to identify by Bates label documents that provide information responsive to these interrogatives when it produces documents relevant to these interrogatories. As discussed in my February 12 letter, when GSK amends these interrogatory answers, it must also strike non-responsive and gratuitous comments from those answers. Abbott reserves its right to move to compel complete and responsive answers to these interrogatories.

- Interrogatory 4, which seeks information regarding GSK's ARV Drugs: We appreciate GSK's agreement to list its ARV drugs in response to this interrogatory. Nevertheless, GSK has taken the position that Abbott is not entitled to pricing information regarding those drugs. Again, this information is discoverable because it relates to Abbott's defense concerning the appropriate relevant product market. We anticipate moving to compel a complete response to this interrogatory unless GSK reconsiders its position.

- Interrogatory 5, which seeks information pertaining to Lexiva tablets: We appreciate GSK's agreement to identify by Bates label documents that provide information responsive to these interrogatives when it produces documents relevant to these interrogatories. Abbott reserves its right to move to compel a complete answer to this interrogatory.

- Interrogatory 6, which seeks information on every drug GSK has withdrawn, stopped selling, or contemplated withdrawing from the market in the last ten years: GSK has taken the position that Abbott is not entitled to the requested information. I already explained to you both in writing and orally why this information is relevant to Abbott's defenses. Accordingly, we anticipate moving to compel a complete response to this interrogatory.

- Interrogatories 7 and 8, which seek certain information about lawsuits and investigations concerning GSK: You said that GSK will consider producing some of the requested information. We can explore this issue in our next call, but we anticipate moving to compel complete answers.

**WINSTON & STRAWN** LLP

Mr. Trevor Stockinger
February 27, 2008
Page 5

- Interrogatories 9 and 13-16, which call for yes/no answers as to particular questions and, where appropriate, explanations for such answers: You said that GSK will consider representing that it currently lacks the ability to provide the requested yes/no response. You also expressed an intent to identify relevant documents by Bates label once GSK produces relevant documents. Abbott's position is that GSK is capable of answering, and obligated to answer, these interrogatories now, subject to its duty to supplement discovery based on new discovery. Please provide an update with regard to these interrogatories during our next call. If necessary, we will move to compel complete answers.

- Interrogatory 10, which requests a list of individuals with knowledge about the allegations in the complaint: You confirmed that GSK cannot identify any individuals with such knowledge other than those listed in its Initial Disclosures. But, as requested, please identify those current and former GSK employees most knowledgeably about the allegations mentioned in this interrogatory. This should be a fairly easy exercise.

- Interrogatory 11, which seeks information about GSK's alleged relevant product markets: We asked you to identify any and all "reasonable substitutes for these products" as this phrase is used by GSK in connection with the alleged market for boosted PIs. We also asked you to identify any and all "reasonable substitutes" as this phrase is used by GSK in connection with the alleged market for PI boosters. You confirmed that GSK intends to rely solely on its experts to identify such "reasonable substitutes" and, therefore, this answer will be amended during expert discovery.

- Interrogatory 12, which seeks information about GSK's implied covenant claim: During our call, we specifically asked you to (i) identify by Bates number any documents supporting that answer, (ii) state GSK's position as to whether Abbott breached any specific provision of the License Agreement, and (iii) state the amount by which GSK claims Abbott was entitled to raise the price of Norvir in December 2003 without breaching the covenant of good faith and fair dealing. In response to request (i), you represented that GSK will identify documents by Bates number when it produces relevant documents. You also confirmed that GSK's answer to this interrogatory was fully responsive to request (ii). As discussed, Abbott intends to hold GSK to this interrogatory answer, which does not identify any specific, express provision of the License Agreement that Abbott allegedly breached. Rather, GSK relies exclusively on the implied covenant of good faith and fair dealing. You also represented that GSK's answer with regard to request (iii) is that the implied covenant of good faith and fair dealing required Abbott to restrain "future increases in the

**WINSTON & STRAWN LLP**

Mr. Trevor Stockinger
February 27, 2008
Page 6

price of Norvir [to prices] consistent with past increases." Abbott intends to hold GSK to this representation as well.

As to confidentiality, we appreciate GSK's agreement to designate as confidential under the protective order the financial terms from the parties' License Agreement referenced in this interrogatory answer.

Finally, GSK explained that the litany of objections in each interrogatory answer is merely to "preserve GSK's rights." GSK's amended interrogatory answers must clearly state whether responsive information is being withheld on the basis of one or more specific objections. Any unasserted objections must be withdrawn by the close of discovery.

### *GSK's Responses to Abbott's RFAs*

Below is a summary of where things stand with regard to GSK's deficient RFA responses:

- RFA 46: GSK has failed to explain its basis for denying that the document Bates-numbered GSK00559-560 is a business record within the meaning of Fed. R. Evid. 803(6). I am confused at the assertion in your February 26 letter that this RFA is premature. GSK has not lodged an objection on this basis. We intend to move to determine the sufficiency of GSK's denial of this RFA. To be clear, Abbott will not waive its right to depose the author of this document.

- RFAs 49-51, 53, 55, 57, and 59: GSK's responses improperly state that the referenced document speaks for itself. As discussed, such a response is improper. *See, e.g., Miller v. Holzman*, 240 F.R.D. 1, 4 (D.D.C. 2006) ("[I]f the request for admission quotes a documents and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not."). In your February 26 letter, you assert for the first time an objection that "GSK cannot admit or deny the request." That objection has been waived. If necessary, Abbott will move to compel a sufficient response to these RFAs.

- RFAs 114-115: The Rules require GSK to admit or deny that "Abbott did not withdraw Norvir from the market in 2003" and "Abbott has not withdrawn Norvir from the market since 2003." The term "withdraw" is unambiguous—*i.e.*, it does not mean "effectively withdraw." Your understanding that Abbott does not intend to press its complaints as to GSK's response to these RFAs is incorrect. We intend to move to compel sufficient responses, if necessary.

**WINSTON & STRAWN** LLP

Mr. Trevor Stockinger
February 27, 2008
Page 7

- RFAs 118-28, and 142: Again, to the extent these RFAs seek admissions as to what GSK alleges in this case, those RFAs must be admitted or denied. GSK's "document speaks for itself" objection is improper.

- RFA 136: GSK has failed to admit or deny that "Abbott owns patents related to the use, marketing and promotion of ritonavir (marketed under the trade name Norvir) *in combination with other products indicated for the treatment of HIV.*" We appreciate GSK's agreement to amend this response to say: "GSK admits that Abbott is the assignee of patents that purport to cover the use, marketing and promotion of ritonavir in combination with other products. GSK does not admit that these patents are valid or enforceable."

Again, these concerns with regard to GSK's discovery responses are not necessarily exhaustive. Nor does this letter necessarily respond to all points mentioned in your February 26 letter. Abbott thus reserves its right to raise additional concerns and/or move to compel on grounds not addressed in this letter.

Please let me know if you are available this Friday to discuss these issues. We can be flexible as to time.

Sincerely,

Charles B. Klein

cc: Matthew A. Campbell