1   James F. Hurst *(Admitted Pro Hac Vice)*                    Jeffrey I. Weinberger (SBN 56214)
    Samuel S. Park *(Admitted Pro Hac Vice)*                    Stuart N. Senator (SBN 148009)
2   Stephanie S. McCallum *(Admitted Pro Hac Vice)*            Keith R.D. Hamilton (SBN 252115)
    WINSTON & STRAWN LLP                                        MUNGER, TOLLES & OLSON LLP
3   35 W. Wacker Drive                                         355 South Grand Avenue
    Chicago, IL 60601-9703                                     Los Angeles, CA  90071-1560
4   Telephone:    (312) 558-5600                               Telephone:    (213) 683-9100
    Facsimile:    (312) 558-5700                               Facsimile:    (213) 687-3702
5   jhurst@winston.com; spark@winston.com;                     jeffrey.weinberger@mto.com;
    smccallum@winston.com                                      stuart.senator@mto.com;
6                                                              keith.hamilton@mto.com
    Nicole M. Norris (SBN 222785)
7   WINSTON & STRAWN LLP                                       Michelle Friedland (SBN 234124)
    101 California Street, Suite 3900                          MUNGER, TOLLES & OLSON LLP
8   San Francisco, CA  94111-5894                             560 Mission Street
    Telephone:    415-591-1000                                San Francisco, CA  94105-2907
9   Facsimile:    415-591-1400                                Telephone:    (415) 512-4000
    nnorris@winston.com                                       Facsimile:    (415) 512-4077
10                                                            michelle.friedland@mto.com
    Charles B. Klein *(Admitted Pro Hac Vice)*
11  Matthew A. Campbell *(Admitted Pro Hac Vice)*              *Attorneys for Defendant*
    WINSTON & STRAWN LLP                                       ABBOTT LABORATORIES
12  1700 K Street, N.W.
    Washington, DC  20007
13  Telephone:    (202) 282-5000
    Facsimile:    (202) 282-5100
14  cklein@winston.com; mcampbell@winston.com

15

16                     **UNITED STATES DISTRICT COURT**

17                   **NORTHERN DISTRICT OF CALIFORNIA**

18                            **OAKLAND DIVISION**

19

20   SAFEWAY INC; WALGREEN CO.; THE          CASE NO. CV 07-5470 (CW)
     KROGER CO.; NEW ALBERTSON'S,
21   INC.; AMERICAN SALES COMPANY,           *Related per December 5, 2007 Order to Case No.*
     INC.; AND HEB GROCERY COMPANY,          *CV 04-1511 (CW)*
22   LP,
                                             **SUPPLEMENTAL BRIEF IN SUPPORT OF**
23              Plaintiffs,                   **ABBOTT LABORATORIES' MOTION FOR**
                                             **SUMMARY JUDGMENT ON GSK'S FIRST**
24        vs.                                 **AMENDED COMPLAINT**

25   ABBOTT LABORATORIES,

26   Defendant.                              **Judge:      Honorable Claudia Wilken**
                                             **Date:       October 28, 2010**
27                                           **Time:       2:00 p.m.**
                                             **Location:   Courtroom 2 (4th Floor)**
28   (caption continued)

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, | CASE NO. CV 07-5702 (CW) |
| | *Related per November 19, 2007 Order to Case No. CV 04-1511(CW)* |
| Plaintiff, | |
| vs. | |
| ABBOTT LABORATORIES, | |
| Defendant. | |
| RITE AID CORPORATION; RITE AID HDQTRS CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC D/B/A BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; AND CAREMARK LLC, | CASE NO. CV 07-6120 (CW) |
| | *Related per December 5, 2007 Order to Case No. CV 04-1511 (CW)* |
| Plaintiffs, | |
| vs. | |
| ABBOTT LABORATORIES, | |
| Defendant. | |
| MEIJER, INC. & MEIJER DISTRIBUTION, INC.; ROCHESTER DRUG CO-OPERATIVE, INC.; AND LOUISIANA WHOLESALE DRUG COMPANY, INC., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | CASE NO. CV 07-5985 (CW) (Consolidated Cases) |
| | *Related per November 30, 2007 Order to Case No. CV 04-1511 (CW)* |
| Plaintiffs, | |
| vs. | |
| ABBOTT LABORATORIES, | |
| Defendant. | |

**INTRODUCTION**

During the hearing on October 28, 2010, the Court asked for supplemental briefing on four issues. The first two issues concern the viability of GSK's "monopoly leveraging plus" and the *Conwood* (or "sabotage") theories of exclusionary conduct. At the hearing, this Court told GSK's counsel: "I am not too enamored of your *Conwood* claim or your monopoly leveraging plus claim." (Ex. 1 (10/28/10 Hearing Tr. 51; *see also id.* at 53-54)). In fact, neither claim has any merit.

The Ninth Circuit in *Doe* definitely rejected "monopoly leveraging" as a viable antitrust theory in this case – "*[h]owever labeled*" – and thus GSK cannot avoid *Doe* by adding the word "plus" to the label. *John Doe I v. Abbott Labs*, 571 F.3d 930, 935 (9th Cir. 2009). Under *Doe*, there is no "monopoly leveraging *plus*" – just a claim for a "refusal to deal at the booster level" or for "below cost pricing at the boosted level." *Id.* But GSK has offered no evidence for either theory.

GSK's "sabotage" theory fares no better. Under that theory, GSK asserts that the timing of the Norvir price increase and Abbott's alleged misstatements sabotaged GSK's launch. GSK ignores the below-cost pricing requirement yet again, as well as the controlling decision from the Ninth Circuit – *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*, 108 F.3d 1147 (9th Cir. 1997) – which creates a six-factor test for determining whether "clearly false" and "clearly material" statements over "prolonged" periods amount to exclusionary conduct. GSK makes no effort to meet the six-factor test. *Id.* at 1152. Instead, GSK relies on the Sixth Circuit's oft-criticized decision in *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), which the Ninth Circuit has never adopted. This case does not help GSK anyway because it merely holds that in "*rare gross cases*" exclusionary conduct can be established by widespread, prolonged, and egregious business torts. *Id.* at 781. The situation here is nothing like that in *Conwood*.

The third issue concerns whether GSK's federal and state-law antitrust claims should be governed by the same standard. As GSK previously argued and this Court previously found, there is "no basis for the Court to apply a different antitrust standard [to GSK's state-law antitrust claim] than that which it has applied to GSK's Sherman Act claim." (4/11/08 Order at 23). There is no reason to depart from that holding.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    The fourth issue involves GSK's argument that the license agreement provision expressly

2    precluding consequential damages is unenforceable due to "bad faith."  A showing of "bad faith,"

3    however, requires an "*intentional*" and "*tortious*" breach of an "*express[]*" contract term.

4    *Metropolitan Life Ins. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438 (1994); *Corinno Civetta Const.*

5    *Corp. v. City of New York*, 67 N.Y.2d 297, 313 (1986).  Any argument by GSK that such a breach

6    occurred here would be nonsensical given that the alleged term at issue here does not exist in the

7    contract and would have to be *implied* by the Court.  The undisputed facts showed that the parties

8    deliberately *avoided* reaching any agreement on Norvir's price.  Without evidence that Abbott even

9    believed that such a term exists, there logically cannot be any evidence of an *intentional* and *tortious*

10   breach of an *express* promise.

11   Finally, Abbott requests an order requiring GSK to amend its complaint to the extent it seeks

12   to assert a predatory pricing theory of exclusionary conduct in this case – a theory that GSK does not

13   currently assert.  (*See* Ex. 1 (10/28/10 Hearing Tr. 50) ("If you want me to make them amend their

14   complaint, I guess I could do that.").[1]  The law requires such an amendment.  *See, e.g.*, *Hill v.*

15   *California Dep't of Corrections*, No. CIVS040775GEBGGHP, 2005 WL 2001111, at *1 (E.D. Cal.

16   Aug. 19, 2005) ("[A] complaint must contain all claims against all defendants.").

17                                          **ARGUMENT**

18   **I.    THE NINTH CIRCUIT HAS FORECLOSED GSK'S THEORY OF "MONOPOLY**

19   **LEVERAGING PLUS."**

20   At the October 28 hearing, GSK expressed a desire to assert a novel theory of exclusionary

21   conduct it calls "monopoly leveraging plus."  GSK's theory is most certainly not a recognized theory

22   of exclusionary conduct.  To Abbott's knowledge, no court decision or treatise has ever even used,

23   let alone defined, the term "monopoly leveraging plus."

24   On the contrary, for almost two decades the Ninth Circuit has held that "[m]onopoly

25   leveraging is just one of a number of ways that a monopolist can *permissibly benefit* from its

26   position."  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991) (emphasis

27   added).  The Ninth Circuit recently confirmed this holding in *Doe*, which rejected the argument that

28   _____
[1] All exhibits are references to the Supplemental Declaration of James F. Hurst filed with this brief.

2

"allegations of monopoly leveraging" – based on the very same "pricing conduct" challenged here – could "state a claim under § 2 of the Sherman Act, 15 U.S.C. § 2."  571 F.3d at 931.  The court explained that *any* "monopoly leveraging" theory – "[h]owever labeled" – fails unless it includes a refusal to deal or predatory pricing:

> Applying Linkline leads us to conclude that Does' claim falls short as well.  They allege no refusal to deal at the booster level, and no below cost pricing at the boosted level.  *Does try to distance themselves from Linkline on the footing that their claim is for monopoly leveraging*, not price squeezing, and that Abbott provides products to consumers in both the booster and boosted markets whereas AT & T provided products in retail and wholesale markets.  We understand the difference, but it is insubstantial.  ***However labeled**, Abbott's conduct is the functional equivalent of the price squeeze the Court found unobjectionable in Linkline*.

*Id.* at 935 (emphasis added) (footnote omitted).

As the hearing transcript reveals, GSK's "monopoly leveraging *plus*" theory does not refer to a refusal to deal or predatory pricing.  Rather, it is just shorthand for GSK's effort to argue that "government pricing rules" on drugs somehow enable it to avoid Ninth Circuit precedent:

> **The Court:** ... Do you think you might need a third theory? And if so, do you have one?
>
> **Mr. Wiles [GSK counsel] :** I don't think we need it, but, yes, we have one.  And that is the – the theory that *the good old-fashioned monopoly leveraging claim survives* and can be asserted and – and – and – and successfully maintained on these facts, and that is because, as GSK alleges, Abbott has an incentive to create a monopoly from one market to another, to – to leverage its monopoly from one market to another. . . .   So there's a lot of criticism of the naked monopoly leveraging theory on the grounds that, gee, well, who cares?  You know, you got a monopoly in one market, you take it to the other, you can only take your monopoly profit once. . . .  All I care about is that the courts seem to have picked

3

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   up on it in – in – in striking down the naked monopoly leveraging.  Certainly the

2   *Doe* and *linkLine* cases seem premised on that.  And *Schor*, the first decision of a

3   circuit court on – on Abbott's price hike, was – clearly picked up on that.  And we

4   have alleged that, in fact, the – the record in those cases was incomplete on this

5   point and that *the single monopoly profit theory could not possibly apply here,*

6   *that Abbott is able to extract more money from consumers by its price hike than*

7   *driving people to Kaletra because of the government pricing rules*. And so given

8   those rules, we have a third theory. So I think – I think –

9 (Ex. 3 (10/15/09 Hearing Tr. 50-52) (emphases added)).

10   But *Doe's* reasoning was not based on any "single monopoly profit" postulate; it was based

11 on *linkLine* and the principle set forth in *Alaska Airlines* that monopoly leveraging is perfectly

12 permissible.  GSK simply cannot distinguish *Doe* based on the government pricing rules for drugs.

13 Indeed, those very same pricing rules were in place in *Doe*, and GSK argued about them in its

14 amicus brief in the *Doe* case (Ex. 2 at 13).  So, the Ninth Circuit was aware of this monopoly-

15 leveraging "plus" theory.  Thus, GSK's "monopoly leveraging plus" theory fails as a matter of law

16 under *Doe* and *Alaska Airlines*.

17 **II.**    **GSK ALSO CANNOT SUPPORT ITS "SABOTAGE" THEORY OF**

18       **EXCLUSIONARY CONDUCT.**

19   GSK's theory that Abbott violated the antitrust laws by "sabotaging" GSK's launch of

20 Lexiva fares no better.  This Court previously characterized the theory as "a bit of a stretch," to

21 which GSK's counsel responded, "possibly."  (Ex. 3 (10/15/09 Hearing Tr. 41) (emphasis added)).

22 This theory is more than a bit of a stretch – it runs directly counter to Ninth Circuit precedent.

23   GSK's "sabotage" theory is based on the argument that the timing of Abbott's Norvir

24 repricing and Abbott's allegedly misleading statements in its aftermath disrupted GSK's launch of

25 Lexiva.  The Ninth Circuit, however, has strictly limited the situations in which unilateral pricing

26 conduct and false statements may constitute antitrust violations.

27   First, GSK cannot circumvent the below-cost pricing requirement simply because the timing

28 of Abbott's pricing action was allegedly inconvenient for GSK.  In *Cascade Health Solutions v.*

4

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*PeaceHealth*, the Ninth Circuit confirmed "the broad application of the principle that *only below-cost prices* are anticompetitive." 515 F.3d 883, 901 (9th Cir. 2008) (emphasis added). The Court of Appeals based its decision on *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), which stressed that "[l]ow prices benefit consumers *regardless of how those prices are set*, and so long as they are above predatory levels, they do not threaten competition." *Id*. at 223 (emphasis added). Absent evidence of below-cost pricing, Abbott's repricing cannot possibly violate the antitrust laws regardless of its timing.

Second, for its reliance on Abbott's purportedly "false statements" following the price increase, GSK is ignoring controlling Ninth Circuit precedent. Such precedent holds that statements are not actionable as exclusionary conduct for antitrust purposes unless they are "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals.'" *Am. Prof'l Testing Service,* 108 F.3d at 1152.

GSK has failed to offer evidence establishing even one of these elements, much less all six. There is not a stitch of evidence that Abbott even made a misleading statement, let alone a "clearly false" statement. *See American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery*, 323 F.3d 366, 369 (6th Cir. 2003) ("true but misleading" statements are not "clearly false"). Nor is there evidence that any statements were repeated for "prolonged" periods and were "material" to ignorant buyers such that they "induced reasonable reliance" without being "readily susceptible" to correction by "rivals." *Am. Prof'l Testing Service,* 108 F.3d at 1152. Because GSK "ha[s] not alleged sufficient facts to establish a legally cognizable claim under [each factor in *Am. Prof'l Testing Service*'s] six-factor test," that theory fails as a matter of law. *Tate v. Pac. Gas & Elec. Co*., 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002).

Against this controlling Ninth Circuit precedent, GSK cites only the Sixth Circuit's decision in *Conwood Co., L.P. v. United States Tobacco Co*., 290 F.3d 768 (6th Cir. 2002). There, the Sixth Circuit affirmed a jury verdict holding the defendant liable under the Sherman Act as a result of an egregious pattern of tortious activity. This activity included a longstanding, "*pervasive practice*" of destroying plaintiff's point-of-sale advertising racks and materials, using exclusive deals with

5

retailers to reduce the number of plaintiff's advertisements, and providing misleading information to retailers. *Conwood*, 290 F.3d at 788 (emphasis added). But even in *Conwood* itself, the court made clear that its holding was very narrow, noting that it applied only to "***rare gross cases***" and that "[i]solated tortious activity alone does not constitute exclusionary conduct for purposes of a § 2 violation, absent a significant and more than a temporary effect on competition, and not merely on a competitor or customer." *Id*. at 783-784 (quoting IIIA Areeda & Turner, Antitrust Law ¶ 782(a), at 272 (2002)) (emphasis added).[2]

Moreover, since *Conwood*, the Sixth Circuit has narrowed the decision's reach even further, expressly adopting the Ninth Circuit's six-factor approach for false statements from *Am. Prof'l Testing Service*. *See American Council*, 323 F.3d at 371. The leading antitrust treatise also has strongly criticized the Sixth Circuit's antitrust analysis in *Conwood*. *See* IIIB Areeda & Hovenkamp, Antitrust Law ¶ 782a2, at p. 322-26 (3d ed. 2008) ("To the extent it is followed, the *Conwood* decision will lead to less aggressive competition and to higher prices in retail markets having a dominant firm.").

Even if *Conwood* were good law in the Ninth Circuit (which it is not), and even if it did not contradict the Ninth Circuit's six-factor test for false statements (which it does), this case is nothing like *Conwood*. There is no evidence that Abbott engaged in *any* tortious activity, much less the kind of "pervasive" tortious activity that would amount to one of those "rare gross cases" at issue in *Conwood*. There is not even an allegation that Abbott or its sales representatives physically destroyed GSK's property. Nor is there any evidence that Abbott entered into exclusive agreements with any purchasers or consumers, or made any "clearly false" statements.

No court in the Ninth Circuit has ever cited *Conwood*, much less used it to provide a theory of liability. This Court should reject GSK's invitation to be the first because applying *Conwood* here would run afoul of Ninth Circuit precedent and would be contrary to *Conwood*'s own reasoning.

_____

[2] GSK has previously relied on the unpublished opinion in *Dooley v. Crab Boat Owners Ass'n*, No. C 02-0676 MHP, 2004 WL 902361(N.D. Cal. April 26, 2004). But that case is likewise distinguishable because the defendant's alleged tortious conduct there also involved destruction of competitors' physical property. *See id.* at *11 ("Furthermore, defendants allegedly threatened fishermen and purchasers and committed tortious acts, including cutting Dooley's crab pot lines.").

6

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**III.   THIS COURT ALREADY HELD THAT THE SAME STANDARD GOVERNS GSK'S FEDERAL AND STATE ANTITRUST CLAIMS.**

GSK's Amended Complaint asserts three claims based upon antitrust theories:  (a) Count 1 alleges a Sherman Act violation; (b) Count 3 alleges, in part, that the alleged anticompetitive conduct violates § 75-1.1 of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"); and (c) Count 4 alleges a violation of North Carolina's prohibition against monopolization, UDTPA § 75-2.1.  At the recent October 28 hearing, GSK conceded that the "anticompetitive part" of its § 75-1.1 claim (Count 3) "rises and falls" with its Sherman Act claim under Count 1.  (Ex. 1 (10/28/10 Hearing Tr. 59)).  But GSK said "it is conceivable" that different antitrust standards may apply between the federal antitrust claim under Count 1 and the state antitrust claim under Count 4.  *Id.* at 60.

The Court already addressed this very issue, finding "*no basis* for the Court to apply a different antitrust standard than that which it has applied to GSK's Sherman Act claim."  (4/11/08 Order at 23 (emphasis added)).  In fact, this ruling adopted *GSK's position* at the time that "[t]his Court is not required, as Abbott suggests, to apply two different views of the Sherman Act.  *Ninth Circuit [antitrust] law governs this case*."  (Case No. 07-5702, at Dkt # 53 at 22 (emphasis added)).

This Court and GSK got it right the first time.  North Carolina courts have repeatedly held that antitrust claims brought under both federal and North Carolina law rise and fall together.  In *R. J. Reynolds Tobacco Co. v. Philip Morris*, 199 F. Supp. 2d 362 (M.D.N.C. 2002), the court granted summary judgment on UDTPA claims under both §§ 75-1.1 and 75-2.1 because they merely alleged the same facts as the failed Sherman Act claims.  As the court explained, "because Plaintiffs' federal claims fail, Plaintiffs' state claims also fail for essentially the same reasons[.]"  *Id.* at 396; *see also Sea-Roy Corp. v. Parts R Parts*, 1997 U.S. Dist. LEXIS 21809, 64 n.25 (M.D.N.C. Dec. 2, 1997) (dismissing UDPTA trade practices claim based on failed federal antitrust claims).  Indeed, as one commentator noted, the language of § 75-2.1 "is nearly identical to that of Section 2 of the Sherman Act."  Antitrust Laws & Regulation, 2d ed., vol. 7 § 133.03; *see also ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 48 (4th Cir. 1983) (applying Sherman Act precedent to determine whether antitrust allegations violated UDTPA).  The Court's previous holding should stand.

7

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

IV.     **THE PARTIES' CONTRACT PREVENTS RECOVERY OF LOST PROFITS.**

As Abbott previously demonstrated, Article X of the parties' license agreement precludes recovery of consequential damages, including any alleged lost profits, for breach of that contract. (Mot. at 21; Reply at 12-13).  GSK cannot avoid this exculpation clause merely by asserting, without evidentiary support, a "bad faith" breach of the implied covenant of good faith and fair dealing. Under controlling New York law, even a "bad faith" breach only avoids an exculpatory clause if the breach is of an *express* contract provision.  By definition, the alleged implied promise is *not* express.

GSK relies on *Kalisch-Jarco v. City of N.Y.*, 58 N.Y.2d 377 (1983), which held that evidence of bad faith sufficient to overcome an exculpatory clause – regardless of its characterization as "willfulness," "maliciousness," or "gross negligence" – must be supported by proof of "*deliberate intent*" to breach the contract.  *Id.* at 385-86 (emphasis added).  The New York Court of Appeals later clarified this "*Kalisch-Jarco* standard" to ensure that the bad faith breach of contract "exception to the enforceability of exculpation clauses" would not "permit the exception to swallow up the general rule."  *Corinno Civetta Const. Corp. v. City of New York*, 67 N.Y.2d 297, 312-13 (1986). That exception is thus "applied to an especially narrow range of circumstances."  *Id.* at 313.

The *Corinno* Court specifically clarified when the severity of an alleged breach itself is sufficient to avoid an exculpation clause, as GSK argues here.  It held that, in the face of an exculpation clause, "damages may be recovered in a breach of contract action only for the breach of a fundamental, ***affirmative obligation*** the agreement ***expressly imposes on the contractee.***"  *Id.* (emphasis added).  GSK's "burden of proving th[is] exception is a heavy one."  *Manshul Contr. Corp. Bd. Of Educ.*, 160 A.D.2d 643, 559 N.Y.S.2d 260, 261 (1st Dep't 1990).

In fact, one of GSK's own cited cases confirms that even an intentional breach of an express obligation "motivated by financial self-interest" is not enough; the plaintiff also must show "***tortious misconduct, not mere intentional nonperformance***, that is to say, willful, wanton or grossly negligent acts."  *Bank of Am. Secs. LLC v. Solow Building Co. II, L.L.C.*, 47 A.D.3d 239, 247, 847 N.Y.S.2d 49, 55 (1st Dep't 2007) (emphasis added); *see also Metropolitan Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438-39 (1994) (conduct necessary to invoke exception "must 'smack[] of intentional *wrongdoing*'") (citation omitted); *McNally Wellman Cop. v. New York State*

8

*Elect. & Gas Corp.*, 63 F.3d 1188, 1198 (2nd Cir. 1995) (granting summary judgment because there was not "*an intentional* breach of the contract") (emphasis added).

The intermediate appellate court in *Metropolitan Life*, in a decision affirmed by the Court of Appeals, explained at length why simply breaching an express and affirmative obligation, even intentionally, is not bad faith or willful conduct sufficient to relieve a party of its agreement to relinquish consequential damages:

> "Willful" is a term of tort, not contract. . . .  Indeed, the [New York] Court of Appeals . . . stated, "It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty."
>
> ***
>
> [T]he proof adduced at trial establishes no more than an intentional abandonment of the agreement by defendant for the purpose of expediting the sale of its computer division and avoiding further loss in connection with the development of software for plaintiff.  *"Intentional", however, is not the legal equivalent of "willful".  Therefore, plaintiff has demonstrated no tortious conduct which might operate to relieve it of the consequences of a contractual provision "'negotiated at arm's length between ... sophisticated business entities[.]"'*

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l*, 192 A.D.2d 83, 90, 600 N.Y.S.2d 212, 216, *aff'd*, 84 N.Y.2d 430 (1994) (emphasis added) (citation omitted).

Here, GSK has never even alleged that Abbott breached a fundamental, ***affirmative obligation*** the agreement ***expressly imposes on [Abbott]***," let alone produced evidence to support such a breach.  *Corinno*, 67 N.Y.2d at 313.  In fact, GSK's argument for a "bad faith" breach conflicts with its theory of liability.  According to that theory, Abbott breached an *implied* promise to refrain from raising Norvir's price imposed under the duty of good faith and fair dealing – *not* an "express[]" and "affirmative obligation" to take particular action.  Indeed, GSK has now conceded that the parties did *not* reach, expressly or implicitly, "an agreement concerning the availability or pricing of Norvir."  (Opp'n at 9).  The unrebutted evidence showed that the negotiators deliberately *avoided* reaching any agreement on Norvir's price.  (Mot. at 4-5).  Without evidence that Abbott

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   even knew about the alleged implied term constraining its pricing action, there logically can be no

2   evidence that Abbott breached an "*express*" and "*affirmative obligation*," much less an intentional

3   and tortious breach. *Corinno*, 67 N.Y.2d at 313, 317 (plaintiff "failed to indicate, let alone establish,

4   what fundamental, affirmative obligation *expressed in the contract* the city allegedly failed to

5   perform which would support a cause of action for breach of contract" for damages in the face of an

6   exculpation clause) (emphasis added); *see also Earthbank Co. v. City of New York*, 568 N.Y.S.2d

7   101, 102 (1st Dep't 1991) (granting summary judgment for defendant because claimed "*implied*

8   breach of a fundamental obligation of the contract does not meet the test of *Corinno Civetta*")

9   (emphasis added).

10       As the court stated in *Metropolitan Life*, "Plaintiff cannot escape the contractual limitations

11   on recovery merely by recasting its breach of contract allegations as tort claims ... or by 'employing

12   language familiar to tort law[.]'" *Metropolitan Life*, 192 A.D.2d at 93. Even assuming the existence

13   and breach of an implied promise to avoid raising Norvir's price (which is, frankly, nonsense), there

14   is no possible way GSK can meet its burden of "set[ting] out specific facts showing a genuine issue

15   for trial" as to whether the limitation on consequential damages expressly agreed to by these

16   sophisticated parties is enforceable. Fed. R. Civ. P. 56(e)(2).

17       Here, GSK has readily conceded "we are not saying [Article X] is unconscionable." (Ex. 1

18   (10/28/10 Hearing Tr. 68); *see also* Reply at 13). Abbott is thus entitled to summary judgment

19   precluding GSK from recovering lost profits given the enforceable and admittedly conscionable

20   limitation of damages clause – relief routinely granted by New York courts.[3]

21                                   **CONCLUSION**

22       For the foregoing reasons, this Court should grant Abbott's motion for summary judgment on

23   GSK's existing complaint and require GSK to amend if it wants to allege a new predatory pricing

24   claim under *Cascade*.

25

26   [3] *See, e.g., David Gutter Furs v. Jewelers Prot. Servs., Ltd.*, 79 N.Y.2d 1027, 1029 (N.Y. 1992)
     (holding exculpation clause should be enforced; reversing and remanding to enter summary
27   judgment for defendant); *Premier-N.Y., Inc. v. Travelers Prop. Cas. Corp.*, 20 Misc.3d 1115(A),
     2008 WL 2676800, at *16 (N.Y. Sup. Ct. Jul. 8, 2008) (plaintiff "failed to raise a genuine issue of
28   material fact regarding [defendant's] alleged fundamental breach of an affirmative obligation
     expressly imposed").

10

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Dated:  November 4, 2010                WINSTON & STRAWN LLP

                                                        /s/  James F. Hurst
                                        By:  _____

                                             Attorneys for Defendant
                                             ABBOTT LABORATORIES

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802