| | |
|---|---|
| James F. Hurst *(Admitted Pro Hac Vice)*<br>Samuel S. Park *(Admitted Pro Hac Vice)*<br>Stephanie S. McCallum *(Admitted Pro Hac Vice)*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Drive<br>Chicago, IL 60601-9703<br>Telephone:   (312) 558-5600<br>Facsimile:    (312) 558-5700<br>jhurst@winston.com; spark@winston.com;<br>smccallum@winston.com<br><br>Nicole M. Norris (SBN 222785)<br>WINSTON & STRAWN LLP<br>101 California Street, Suite 3900<br>San Francisco, CA  94111-5894<br>Telephone:    415-591-1000<br>Facsimile:     415-591-1400<br>nnorris@winston.com<br><br>Charles B. Klein *(Admitted Pro Hac Vice)*<br>Matthew A. Campbell *(Admitted Pro Hac Vice)*<br>WINSTON & STRAWN LLP<br>1700 K Street, N.W.<br>Washington, DC  20007<br>Telephone:    (202) 282-5000<br>Facsimile:     (202) 282-5100<br>cklein@winston.com; macampbell@winston.com | Jeffrey I. Weinberger (SBN 56214)<br>Stuart N. Senator (SBN 148009)<br>Keith R.D. Hamilton (SBN 252115)<br>MUNGER, TOLLES & OLSON LLP<br>355 South Grand Avenue<br>Los Angeles, CA  90071-1560<br>Telephone:    (213) 683-9100<br>Facsimile:     (213) 687-3702<br>jeffrey.weinberger@mto.com;<br>stuart.senator@mto.com;<br>keith.hamilton@mto.com<br><br>Michelle Friedland (SBN 234124)<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street<br>San Francisco, CA 94105-2907<br>Telephone:    (415) 512-4000<br>Facsimile:     (415) 512-4077<br>michelle.friedland@mto.com<br><br>*Attorneys for Defendant*<br>ABBOTT LABORATORIES |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SAFEWAY INC; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; AND HEB GROCERY COMPANY, LP,<br><br>             Plaintiffs,<br><br>             vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant.<br><br>(caption continued) | CASE NO. CV 07-5470 (CW)<br><br>*Related per December 5, 2007 Order to Case No. CV 04-1511 (CW)*<br><br>**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT ON GSK'S FIRST AMENDED COMPLAINT**<br><br>**Judge:      Honorable Claudia Wilken**<br>**Date:        October 28, 2010**<br>**Time:       2:00 p.m.**<br>**Location:  Courtroom 2 (4th Floor)** |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| | | |
|---|---|---|
| 1 | | |
| 2 | SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, | CASE NO. CV 07-5702 (CW) |
| 3 | | *Related per November 19, 2007 Order to Case No. CV 04-1511(CW)* |
| 4 | Plaintiff, | |
| 5 | vs. | |
| 6 | ABBOTT LABORATORIES, | |
| 7 | | |
| 8 | Defendant. | |
| 9 | RITE AID CORPORATION; RITE AID HDQTRS CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC D/B/A BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; AND CAREMARK LLC, | CASE NO. CV 07-6120 (CW) |
| 10 | | *Related per December 5, 2007 Order to Case No. CV 04-1511 (CW)* |
| 11 | | |
| 12 | Plaintiffs, | |
| 13 | vs. | |
| 14 | ABBOTT LABORATORIES, | |
| 15 | | |
| 16 | Defendant. | |
| 17 | MEIJER, INC. & MEIJER DISTRIBUTION, INC.; ROCHESTER DRUG CO-OPERATIVE, INC.; AND LOUISIANA WHOLESALE DRUG COMPANY, INC., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | CASE NO. CV 07-5985 (CW) (Consolidated Cases) |
| 18 | | |
| 19 | | *Related per November 30, 2007 Order to Case No. CV 04-1511 (CW)* |
| 20 | | |
| 21 | Plaintiffs, | |
| 22 | vs. | |
| 23 | ABBOTT LABORATORIES, | |
| 24 | | |
| 25 | Defendant. | |
| 26 | | |
| 27 | | |
| 28 | | |

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT
12331959.1

1   GSK continues to press its theory that Abbott's *above-cost* pricing of Norvir and Kaletra squeezed rivals. *Doe* and *linkLine* rejected that precise theory. Nor can GSK justify its claim for windfall contract damages – *i.e.*, damages that *exceed* what it paid in license royalties.

### I.  GSK's Above-Cost Exclusionary Conduct Theories Fail As A Matter Of Law.

To defend a "monopoly levering plus" theory, GSK relies on a series of cases – *linkLine*, *Doe*, *Alaska Airlines*, *Schor* and *Town of Concord* – that all **rejected** monopoly leveraging theories as a matter of law. None of the cases accept GSK's argument that "monopoly leveraging" – a perfectly permissible practice – violates the Sherman Act if the monopoly market is *regulated* and the defendant squeezed rivals to "extract more money from consumers in an adjacent" *unregulated* market. (GSK at 2). Indeed, that was *exactly* the situation in *linkLine*, which involved the regulated wholesale DSL market and the unregulated retail market. *See Pac. Bell Tel. Co. v. linkLine Comm'cs, Inc.*, 129 S. Ct. 1109, 1124 (2009) (Breyer, J., concurring). Based on *linkLine* (and despite GSK raising the same argument about drug pricing regulations), the Ninth Circuit held in *Doe* that Abbott's pricing conduct (maintaining a comparatively *low* price for Kaletra after the Norvir repricing) is perfectly lawful absent a "refusal to deal at the booster level" or "below cost pricing at the boosted level." *Doe v. Abbott Labs*, 571 F.3d 930, 934 (9th Cir. 2009). Because GSK's "leveraging" theory relies on neither, it is precluded by *linkLine* and *Doe*.

GSK's "sabotage" theory fails too because the Supreme Court and Ninth Circuit have held that above-cost pricing is *not* exclusionary conduct. (Abbott Supp. Br. at 4-5). GSK cannot circumvent this authority by merely pointing to the *timing* of Abbott's pricing. Nor can it rely on *Conwood* and *Dooley*, as neither involved pricing conduct, much less the timing of a price increase. Unlike here, both cases concerned pervasive torts coupled with other recognized exclusionary acts – *i.e.*, exclusive dealing (*Conwood*) and group boycotts (*Dooley*). GSK's deception allegations cannot support its theory either because GSK concedes in its brief that it cannot meet the *American Professional Testing Service* test for such conduct. (GSK Supp. Br. at 5-6). GSK thus has no evidence to support the *Conwood* standard.

And GSK certainly cannot salvage its case by invoking *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), which involved a defendant's **refusal** to deal with its rival by

1

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(a) making an offer the rival "could not accept," and (b) rejecting the rival's offer to pay retail prices. *Id.* at 592-94 & n.15 (1985). There's no possible "*refusal*" to deal here, because Abbott is selling Norvir in record quantities. *Norvir is the second most prescribed HIV drug on the market.* GSK's suggestion that a lower price may have resulted in even higher sales hardly amounts to a *refusal* to deal. Otherwise, *every* price on *every* product would be an "effective" refusal to deal, because a lower price can increase sales in almost *every* market. The argument is absurd.

Finally, GSK has consciously decided *not* to allege a predatory pricing theory in this case. Nowhere in its complaint does it allege that Kaletra or any component of it is priced below-cost. The Court should not allow GSK to pursue a theory it is unwilling to present in a formal pleading.

## II.     GSK Has No Specific Facts To Support Its Contract Claim For Lost Profits.

GSK cites no case even remotely supporting its claim for lost profits. Abbott's patents precluded GSK from making *any* boosted PI sales. GSK took a license and, in return, promised it would seek no more than royalties paid in the event of a breach (Article X). GSK made more than $1 billion in boosted PI sales, paying a small fraction in royalties. Unsatisfied, GSK wants to keep its fruits from the license *while demanding lost profit damages from Abbott that far exceed the royalties paid.* This turns the license on its head. GSK cannot eviscerate the parties' bargain to limit damages by arguing that Abbott raised Norvir's price in "bad faith."

On the contrary, New York's highest court has held that the severity of "a contractee's breach of contract is ... recognized as an exception to the enforceability of exculpatory clauses" *only* when there has been a "breach of a fundamental, ***affirmative obligation*** the agreement ***expressly imposes on the contractee.***" *Corinno Civetta Const. Corp. v. City of New York*, 67 N.Y.2d 297, 312-13 (1986) (emphasis added). GSK cannot show this because the alleged promise breached is *implied*. Instead, GSK relies on language in *Corinno* explaining that "delays [in performing a construction contract] caused by the contractee's bad faith" form an independent exception. But that delay-based exception has nothing to do with this case. Regardless, GSK cannot show "bad faith," *i.e.*, conduct "tortious in nature." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438-39 (1994). As New York's *highest court* explained, "merely intentional nonperformance of the Agreement motivated by financial self-interest" is not enough "as a matter of law." *Id.* at 438.

2

CASE NOS. 07-5470, 07-5985, 07-6120, 07-5702 (CW)
SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT

Dated: November 18, 2010         WINSTON & STRAWN LLP

By: /s/ James F. Hurst

Attorneys for Defendant
ABBOTT LABORATORIES