# Exhibit D

**ABBOTT'S PROPOSED REVISION TO JUDGE WILKEN'S INSTRUCTION I. ANTITRUST CLAIMS – PURPOSE OF ANTITRUST LAWS**

I will now discuss GSK's claims. GSK first alleges that Abbott violated the United States antitrust laws by willfully maintaining a monopoly or attempting to acquire a monopoly. The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace. The antitrust laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest materials progress. <u>The antitrust laws exist, however, for the protection of competition, not individual competitors</u>.

Source: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 Ed.); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 US 477 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

**GSK'S Objection**

Abbott's proposed amendment to Instruction I—to add that "[t]he antitrust laws exist, however, for the protection of competition, not individual competitors"—is unnecessary and confusing. The Court's Instruction I from the first trial already reflects the ABA model instructions, nearly verbatim. *See* ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.), Instruction A-2. Abbott's proposed new language is <u>not</u> found in the ABA model instructions.

The ABA model instructions, adopted by the Court, already explain the purpose of the antitrust laws and their focus on preserving competition.[1] The Court's Instruction I is neutral and direct. Abbott's additional sentence, on the other hand, may mislead the jury into believing that merely because GSK is a "competitor," the antitrust laws should not protect it. There is no legitimate justification for Abbott's change.

GSK respectfully requests that the Court preserve its Instruction I as given to the jury in 2011.

**Abbott's Response**

GSK does not (and cannot) dispute that Abbott's proposed language properly states the law, as articulated by the U.S. Supreme Court on numerous occasions. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 US 477 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). There also can be no dispute that the Court has previously adopted instructions that differ from the model instructions where it concluded that such changes were appropriate and necessary to guide the jury. *See, e.g.,* Dkt. #468 at 2:5-11 (arguing that Court should not add language describing monopoly power as ability to "handicap" competition that does not appear in ABA model instructions) & Dkt. #485 at 11:10-21 (including such language);

---

[1] Notably, at the previous trial, Abbott objected to GSK's proposal to use the ABA's model instruction on the purpose of antitrust laws. Abbott argued that the "proposed instruction improperly introduces the purported general purpose of the Sherman Act into the jury's deliberation, implicitly inviting the jury to deviate from the applicable legal standards in favor of the purported general purpose of the act." Dkt. 349 at 47. The Court ultimately rejected Abbott's argument and adopted the model instruction.

1 Dkt. #468 at 6:20-23 (arguing for inclusion of ABA model instruction language regarding mixed motives and refusal to deal) & Dkt. #485 at 18:24-20:2 (omitting proposed language from the ABA model instruction).

Here, there is good cause to adopt Abbott's proposed modification because there is a substantial likelihood that jurors could conflate a non-actionable injury to GSK with an injury to *competition*. In contrast to the initial trial, which began with the inclusion of the direct purchaser plaintiffs, the retrial involves only a dispute between two competitors. Absent Abbott's proposed instruction, jurors could readily regard legitimate competition between the parties as anticompetitive conduct. Accordingly – and contrary to GSK's argument that this modification will confuse or mislead the jury – this modification is necessary to *prevent* confusion among jurors tasked with distinguishing between legitimate competition and anticompetitive conduct that violates the Sherman Act.

**ABBOTT'S PROPOSED DETRIMENTAL RELIANCE INSTRUCTION**

<u>GSK contends that it was injured because Abbott failed to disclose that it was considering raising the price of Norvir during the time of the negotiation of the license agreement. To make the required showing that this alleged failure to disclose was a proximate cause of its injury, GSK has the burden to show actual reliance on the alleged failure to disclose, i.e., if it were not for the alleged failure to disclose, GSK would likely have avoided injury altogether</u>.

Source: *Bumpers v. Community Bank of Northern Va.*, 747 S.E.2d 220 (N.C. 2013).

**GSK'S Objections**

Abbott's proposed "reliance" instruction is improper and unnecessary. As a preliminary matter, reliance is only arguably relevant to a UDTPA claim to the extent that the claim is based on a misrepresentation. As this Court found in its order denying Abbott's Renewed Motion for Judgment as a Matter of Law ("RJMOL Order"), reliance is not an element of a UDTPA claim based on unfair conduct. Dkt. 591 at 15.[2] Of the three factual findings underpinning GSK's UDTPA claim, two are clearly unfair conduct and do not involve misrepresentations. *See* Jury Instr. p. 27, Additional Questions, 2-3. Consequently, a reliance instruction is plainly inappropriate for these UDTPA violations and would only serve to confuse the jury.

As to the remaining factual finding underpinning GSK's UDPTA claim (i.e., Abbott's deliberate withholding of its plans to limit competition), that claim, too, is based, in part, on unfair conduct and, in part, on a misrepresentation by omission. *See* Jury Instr. p. 27, Additional Question 1; *see also* RJMOL Order, Dkt. 591 at 15 (holding that "to the extent GSK's UDTPA claim is based on a breach of contract" it constitutes "unfair conduct" (rather than a misrepresentation)). Even if that claim reflected purely a misrepresentation, no separate reliance instruction would be necessary. This Court has previously explained that to the extent reliance is part of a UDTPA claim, it is incorporated into the determination of proximate cause. Mot. to Dismiss Order 4/11/08, Dkt. 82, n.14. Reliance is not independently required, but may be considered in determining causation. *See ABT Bldg. Products Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh*, 472 F.3d 99, 126 (4th Cir. 2006) (finding that causation *may be shown* by detrimental reliance on a misrepresentation). The Court's jury instructions as provided in the first trial already direct the jury to consider proximate causation. Jury Instr. 28. Therefore, an additional reliance instruction is unnecessary even for the UDPTA claim concerning Abbott's withholding of information from GSK.

---

[2] Unfair conduct encompasses a wide range of conduct that "offends established public policy…[or] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548 (1981). A UDTPA violation consists of unfair *or* deceptive conduct and need not include both. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996).

**Abbott's Response**

Although GSK is correct that reliance is required for only one of its UDTPA theories (the misrepresentation or omission theory), the jury needs to be instructed on that theory if GSK actually pursues it. And Abbott's proposed instruction makes clear that it applies only to the extent that the GSK claim is that Abbott omitted to make a disclosure it should have made – that is "Abbott failed to disclose . . ."

GSK is wrong in arguing that reliance becomes irrelevant if it argues that there was some unfairness also involved in the alleged misrepresentation or omission. First, under North Carolina law, "[l]ooking for alternatives to a current contract without notifying the other contracting party is not itself unfair or deceptive." *Rahamankhan Tobacco Enters., Pvt. Ltd. v. Evans McTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 478 (E.D.N.C. 2013) (citing *Tar Heel Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 370 S.E.2d 449, 452 (1988)). It is precisely because in this context the law specifically defines what is and is not "unfair" that it is important for the Court to use instructions that specifically apply the theories that GSK is pursuing to the elements of the claim.

Second, one can always argue that in some sense (even if not in a legally actionable sense) a misrepresentation or omission was unfair – there is little conduct that the law makes actionable that could not be argued to be in some sense unfair. But North Carolina has clearly distinguished between a: "misrepresentation or omission" theory and an "unfairness" theory. If GSK wants to pursue the misrepresentation or omission theory, it should not be permitted to evade an appropriate jury instruction on that theory. Binding precedent from the North Carolina Supreme Court states that "conduct tantamount to fraud . . . ***requires reliance***, and we see no reason for departure from that requirement." *Bumpers v. Community Bank of Northern Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (emphasis added). In *Bumpers*, the North Carolina Supreme Court found that the trial court had erred by "finding proximate cause without considering whether plaintiffs presented sufficient evidence of reliance." *Id*. at 227.

Finally, GSK is also wrong in its argument that a separate reliance instruction is superfluous because reliance is implicit in the concept of proximate cause. The North Carolina

Supreme Court has required that a plaintiff specifically "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Id*. at 226.  It would be totally contrary to this precedent for the jury instructions to gloss over the concept of reliance.  *See also id*. at 227 ("Reliance, in turn, demands evidence 'show[ing] that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.").[3]

---

[3] GSK cites the Fourth Circuit's decision in *ABT Building Prods. Corp. v. Nat'l Union Fire Ins. Co.*, 472 F.3d 99 (4th Cir. 2006).  In that case, the court merely noted that, at the time, "'what constitutes proximate cause between a deceptive act and a plaintiff's damages remains ambiguous," *id*. at 126, but the Court nevertheless found that the jury had sufficient evidence "for a finding of detrimental reliance."  *Id*. at 127.  In the subsequent *Bumpers* case, the North Carolina Supreme Court resolved the ambiguity.