James F. Hurst (*Admitted Pro Hac Vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200
Email: james.hurst@kirkland.com

Charles B. Klein (*Admitted Pro Hac Vice*)
Matthew A. Campbell (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20007
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com
Email: mcampbell@winston.com

Jeffrey I. Weinberger (SBN 56214)
Stuart N. Senator (SBN 148009)
Keith R.D. Hamilton (SBN 252115)
Caroline McKay Cunningham (SBN 270927)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: 213-683-9100
Facsimile: 213-687-3702
Email: jeffrey.weinberger@mto.com
Email: stuart.senator@mto.com
Email: keith.hamilton@mto.com
Email: caroline.cunningham@mto.com

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, <br><br> Plaintiff, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 4:07-cv-05702 CW

**ABBOTT LABORATORIES' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS GSK'S SECOND AMENDED COMPLAINT**

Date: May 7, 2015
Time: 2:00 p.m.
Place: Courtroom 2 - 4th Floor
Judge: Hon. Claudia Wilken

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................3

I.     DISMISSAL OF GSK'S SHERMAN ACT CLAIM ELIMINATED PENDENT
PERSONAL JURISDICTION OVER GSK'S STATE LAW CLAIMS.....................................3

II.    THE COURT LACKS GENERAL PERSONAL JURISDICTION OVER
GSK'S REMAINING STATE LAW CLAIMS ..............................................................5

    A.    There Is No General Jurisdiction Over Abbott ................................................5

    B.    There Is No Specific Jurisdiction Over Abbott .................................................6

        i.    *First Prong — Purposefully Availed and Purposefully Directed* ........................7

        ii.    *Second Prong — Forum Related Conduct*.....................................................12

        iii.    *Third Prong — Reasonableness* ...............................................................13

CONCLUSION..............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ................................................................ 2, 3

*Anderson v. Century Products Co.*,
    943 F. Supp. 137 (D.N.H. 1996) ............................................................ 4, 5

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*,
    480 U.S. 102 (1987) ................................................................................... 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) .......................................................... 2, 9, 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................... 5, 7, 8, 9

*Burnham v. Superior Court of Cal., County of Marin*,
    495 U.S. 604 (1990) ...................................................................................... 4

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
    556 U.S. 635 (2009) .................................................................................... 15

*D'Addario v. Geller*,
    264 F. Supp. 2d 367 (E.D. Va. 2003) ......................................................... 5

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................... 2, 5, 6

*Doe v. Unocal*,
    248 F.3d 915 (9th Cir. 2001) ....................................................................... 8

*Emp'rs Reinsurance Corp. v. Bryant*,
    57 S. Ct. 273 (1937) ..................................................................................... 3

*Ex Parte McCardle*,
    74 U.S. 506 (1868) ................................................................................. 1, 15

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*,
    828 F.2d 1439 (9th Cir. 1987) ................................................................... 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ............................................................................ 2, 6

*Gullette v. Lancaster & Chester Co.*,
    No. 3:14-cv-00537-HZ, 2014 WL 3695515 (D. Or. July 23, 2014) ...... 9, 13

*H. Ray Baker, Inc. v. Associated Banking Corp.*,
    592 F.2d 550 (9th Cir. 1979) ............................................................ 10

*Haller v. Advan. Indus. Comp., Inc.*,
    No. CV-13-02398-PHX-DGC, 2015 WL 854954 (D. Ariz. Feb. 27, 2015) ................................ 7

*Hammons v. Alcan Aluminum Corp.*,
    No. SA CV 96-319-LHM, 1996 WL 397455 (C.D. Cal. May 31, 1996) ................................ 13

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ............................................................ 12

*In re Parmalat Sec. Litig.*,
    383 F. Supp. 2d 587 (S.D.N.Y. 2005) ................................................ 11, 14

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    MDL No. 1566, 2010 WL 4386950 (D. Nev. Oct. 29, 2010) ................................ 13

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
    605 F. Supp. 2d 1118 (D. Nev. 2009) ................................................ 12

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) ............................................................ 4, 11

*Lightfoot v. Cendant Mortg. Corp.*,
    769 F.3d 681 (9th Cir. 2014) ............................................................ 2, 5

*LocusPoint Networks, LLC v. D.T.V., LLC*,
    Case No. 3:14-cv-01278-JSC, 2014 WL 3836792 (N.D. Cal. Aug. 1, 2014) ................................ 8

*Malone v. Clark Nuber*,
    No. C07-2046RSL, 2008 WL 4279502 (W.D. Wash. Sept. 12, 2008) ........................................ 4

*Mansfield, C. & L.M. Ry. Co. v. Swan*,
    111 U.S. 379 (1884) ............................................................ 15

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ............................................................ 5, 6

*Mattel, Inc. v. Greiner & Hausser GmbH*,
    354 F.3d 857 (9th Cir. 2003) ............................................................ 12

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ............................................................ 6

*Michael v. New Century Fin. Services*,
    No. 13-cv-03892-BLF, 2014 WL 4099010 (N.D. Cal. Aug. 20, 2014) ........................................ 7

*Myers v. Bennett Law Offices*,
    238 F.3d 1068 (9th Cir. 2001) ............................................................ 12

*No Mayo-San Francisco v. Memminger*,
    No. C-98-1392 PJH, 1998 WL 544974 (N.D. Cal. Aug. 20, 1998)................................7

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
    52 F.3d 267 (9th Cir. 1995) ...................................................................................7

*One True Vine, LLC v. Liquid Brands LLC*,
    No. C 10-04102 SBA, 2011 WL 2148933 (N.D. Cal. May 31, 2011) ........................13

*Pac. Atl. Trading Co. v. M/V Main Express*,
    758 F.2d 1325 (9th Cir. 1985) ...............................................................................10

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .........................................................................12, 13

*Quiroz v. Dickerson*,
    No. C 10-02421 PVT, 2010 WL 3702628 (N.D. Cal. Sept. 16, 2010).........................7

*Roth v. Marquez*,
    942 F.2d 617 (9th Cir. 1991) ...................................................................................8

*Ruhrgas AG v. Marathon Oil Co.*,
    119 S. Ct. 1563 (1999)............................................................................................3

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) .........................................................................................1, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................................8

*Steel Co. v. Citizens for A Better Env't*,
    523 U.S. 83 (1998)................................................................................................15

*Sunday Riley Modern Skin Care, L.L.C. v. Maesa*,
    No. H-12-1650, 2013 WL 5231860 (S.D. Tex. Sept. 12, 2013)................................10

*Travelers Health Ass'n v. Virginia*,
    339 U.S. 643 (1950)................................................................................................7

*United States v. Botefuhr*,
    309 F.3d 1263 (10th Cir. 2002) ...............................................................................4

*Urban Textile, Inc. v. A & E Stores, Inc.*,
    No. 2:14-cv-01554-CAS (ASx), 2014 WL 3955173 (C.D. Cal. Aug. 11, 2014) ........11

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (1998).........................................................................................1, 15

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ..................................................................................3, 6, 15

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
     704 F.3d 668 (9th Cir. 2012) ................................................................. 7, 8, 9

*Woodco Dynamic, LLC v. Venetian Invs., LLC*,
     No. 2:10-cv-00035 JWS, 2010 WL 1813788 (D. Ariz. May 5, 2010) ......................................... 9

*World–Wide Volkswagen Corp. v. Woodson*,
     100 S. Ct. 559 (1980) ................................................................................. 3

**Statutes**

15 U.S.C. § 22 ................................................................................. 2, 3

28 U.S.C. § 1367(a) ................................................................................. 15

28 U.S.C. § 1367(c) ................................................................................. 15

28 U.S.C. § 1631 ................................................................................. 14

**Other Authorities**

Monestier, Tanya J.,
     *Where is Home Depot "At Home"?:*
     *Daimler v. Bauman and the End of Doing Business Jurisdiction*,
     66 Hastings L.J. 233 (2014) ................................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................. 1, 15

## NOTICE OF MOTION

## TO PLAINTIFF GLAXOSMITHKLINE AND ITS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on May 7, 2015 at 2:00 p.m. or on such earlier date as may be set by the Court, in the courtroom of the Honorable Claudia Wilken, located at Oakland Courthouse, 1301 Clay Street, Oakland, California, 94612, Courtroom 2, 4th Floor, Defendant Abbott Laboratories will move for an order dismissing Plaintiff GlaxoSmithKline's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2). The motion is supported by the accompanying Memorandum of Points and Authorities and its Exhibit A, the pleadings and papers on file in this action, and any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

## INTRODUCTION

This Court should dismiss GSK's Second Amended Complaint due to a lack of personal jurisdiction over Abbott. Before yesterday, GSK's Sherman Act claim provided the anchor for pendant personal jurisdiction over Abbott for GSK's state law claims. But now that GSK has abandoned that claim, there is no longer pendant personal jurisdiction, which means this *California* Court no longer has jurisdiction over Abbott for GSK's remaining state law claims—an alleged breach of a private patent license agreement between companies headquartered in *Illinois, Pennsylvania,* and *North Carolina* (Count I) and an alleged violation of *North Carolina's* unfair competition statute (Count II).

Jurisdiction has ceased to exist here. "Jurisdiction to resolve cases on the merits requires" authority "over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999) . When jurisdiction "'ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (1998) (quoting *Ex Parte McCardle,* 74 U.S. 506, 514 (1868)).

For more than seven years—at an enormous cost to both this Court and the parties through years of fact and expert discovery, many motions totaling hundreds of pages, many opinions spanning dozens of pages, a trial lasting three weeks, and an appellate review and reversal—GSK has argued that it has a

legally viable Sherman Act claim, which has always been its principal claim. For each of GSK's earlier complaints, this Court had jurisdiction over Abbott for that claim under Section 12 of the Clayton Act, which establishes personal jurisdiction for federal "antitrust" claims "in any district wherein" a defendant "transacts business." 15 U.S.C. § 22; *accord Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177-80 (9th Cir. 2004).

The Court's jurisdiction over the Sherman Act claim, in turn, gave this Court jurisdiction over Abbott for GSK's state law claims through the doctrine of "pendent personal jurisdiction," which exists for claims—like here—"for which there is no independent basis of personal jurisdiction so long as [they] arise[] out of a common nucleus of operative facts." *Id.* at 1180.

But GSK has now changed course and abandoned its Sherman Act claim—a step that eliminates the only hook for pendant personal jurisdiction over its remaining state law claims. The Court thus must dismiss GSK's newly-filed complaint because there is no alternative "independent basis" for personal jurisdiction for those claims—neither through general nor specific jurisdiction.

The Court does not have general jurisdiction over Abbott, as confirmed by recent Supreme Court cases strictly limiting the exercise of general jurisdiction over corporations. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). Under those cases, a corporation is subject to general jurisdiction only where it is "essentially at home," and the "two places where a corporation is essentially at home . . . are its place of incorporation and its principal place of business." *Lightfoot v. Cendant Mortg. Corp.*, 769 F.3d 681, 689 (9th Cir. 2014) (internal quotation marks omitted) (citing *Daimler*, 134 S. Ct. at 755-58, 760; *Goodyear*, 131 S. Ct. at 2851). Abbott is neither incorporated nor headquartered in California.

Nor does the Court have specific jurisdiction over Abbott for the remaining state law claims. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). GSK cannot establish specific jurisdiction for multiple reasons, including its inability to meet the "requirement" of demonstrating that Abbott "engaged in wrongful conduct targeted at a plaintiff whom [Abbott] knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). GSK's new complaint alleges the very

opposite:  that Abbott "targeted one competitor, GSK," which is concededly *not* a California resident. (2d Am. Compl. ¶ 5).

Because there is neither general nor specific jurisdiction over the remaining state law claims, GSK's Second Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

**ARGUMENT**

Abbott is headquartered and incorporated in Illinois (2d Am. Compl. ¶ 6) and therefore is not a California resident.  "The Due Process Clause of the Fourteenth Amendment" constrains judicial "authority to bind a nonresident defendant to a judgment."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980) ).  That authority requires personal jurisdiction, which "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"  *Ruhrgas AG v. Marathon Oil Co.*, 119 S. Ct. 1563, 1570 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 57 S. Ct. 273 (1937)).  And "[p]ersonal jurisdiction must exist for each claim asserted against" the defendant for a court to enter a binding judgment.  *Action Embroidery*, 368 F. 3d at 1180.  Under these principles, the Court here is "powerless to proceed" because:  (1) the dismissal of GSK's Sherman Act claim eliminated pendent personal jurisdiction over Abbott for GSK's two state law claims and (2) there is no independent basis for personal jurisdiction over Abbott for those claims.

**I.  DISMISSAL OF GSK'S SHERMAN ACT CLAIM ELIMINATED PENDENT PERSONAL JURISDICTION OVER GSK'S STATE LAW CLAIMS.**

For GSK's two earlier complaints, the Sherman Act claim was the anchor that established personal jurisdiction in this district.  Section 12 of the Clayton Act creates personal jurisdiction for "antitrust" cases "in any district wherein" a defendant "transacts business."   15 U.S.C. § 22; *accord Action Embroidery*, 368 F. 3d at 1177-80.  Abbott has transacted business in this district, thus establishing personal jurisdiction over Abbott for GSK's Sherman Act claim.

Because it had personal jurisdiction over the Sherman Act claim, this Court in turn had pendent personal jurisdiction for GSK's asserted state law claims.  When adopting that doctrine in 2004, the Ninth Circuit explained that "[w]hen a defendant must appear in a forum to defend against one claim, it

is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Id.* at 1181. That doctrine applied to GSK's earlier complaints, because GSK's state law claims arose out of the same core facts (Norvir's price increase) as its Sherman Act claim.

But now that GSK abandoned its Sherman Act claim through its Second Amended Complaint, pendent personal jurisdiction no longer exists, which requires dismissal absent an independent basis for personal jurisdiction. That conclusion follows from fundamental jurisdictional principles: A "judicial judgment is lawful" only if "the sovereign has authority to render it." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011). Proceeding without jurisdiction renders a proceeding "*coram non judice,* 'before a person not a judge'—meaning, in effect, that the proceeding in question was not a *judicial* proceeding because lawful judicial authority was not present, and could therefore not yield a *judgment*." *Burnham v. Superior Court of Cal., County of Marin*, 495 U.S. 604, 608–09 (1990).

Based on those fundamental principles, the Tenth Circuit in *Botefuhr* held that the district court, after dismissing an anchor claim, erred by failing to also dismiss other claims for which there was no independent basis for personal jurisdiction. The circuit court explained that the district court had "ignore[d] the fact that once the § 3713 count disappeared, there was no claim before the district court for which it could be said [defendants] had 'minimum contacts' with Oklahoma." *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002). Thus, "we hold that the district court abused its discretion by retaining jurisdiction over the § 6324 claims after its pretrial dismissal of the § 3713 count." *Id.*

Similarly, the district court in *Malone v. Clark Nuber* held that "now that the federal claims have been dismissed, they no longer provide a basis for asserting pendent personal jurisdiction over [the party] for the state law claims. There is no remaining claim 'in the same suit' to which jurisdiction can be pendent." No. C07-2046RSL, 2008 WL 4279502, at *1-2 (W.D. Wash. Sept. 12, 2008). In *Anderson v. Century Products Co.*, the district court reached the same conclusion on claims over which it had jurisdiction based solely on pendant personal jurisdiction:

> [I]f the Due Process Clause protects the interest in 'not being subject to the binding judgments of a forum with which [defendant] has established no meaningful contacts, ties, or relations,' then the case must be dismissed once the

'anchor' claim falls. Once it becomes apparent that the conduct was not tortious, negating the existence of minimum contacts, then no binding judgments may be issued against the defendant, and the pendent claim must be dismissed.

943 F. Supp. 137, 147 n.1 (D.N.H. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Likewise, in *D'Addario v. Geller*, the court noted that "if the court were to later determine that the federal claim(s) should be dismissed against a defendant, the state claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists." 264 F. Supp. 2d 367, 387-88 (E.D. Va. 2003).

Here, GSK made a voluntary decision to a file a new amended complaint—one that discarded the only possible basis for person jurisdiction over Abbott in this district. As is its right, Abbott is therefore moving to dismiss GSK's new complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II. THE COURT LACKS GENERAL PERSONAL JURISDICTION OVER GSK'S REMAINING STATE LAW CLAIMS

Without pendent personal jurisdiction based on GSK's now-abandoned Sherman Act claim, this case must be dismissed given the lack of both general and specific jurisdiction.

### A. There Is No General Jurisdiction Over Abbott

General personal jurisdiction over a corporation is appropriate only when the corporation is "essentially at home" in the forum state. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Daimler AG*, 134 S. Ct. at 751). A corporation is "at home" only where it "is incorporated or has its principal place of business," *Daimler*, 134 S. Ct. at 760; *accord Lightfoot*, 769 F.3d at 689. In so holding, the Supreme Court in *Daimler* specifically rejected the argument that "substantial, continuous, and systematic course of business" in a state is enough to establish general jurisdiction—a theory it called "unacceptably grasping" and "exorbitant." *Daimler*, 134 S. Ct. at 761. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20.

The Supreme Court did not "foreclose the possibility" that in some "exceptional case" general jurisdiction might exist beyond the state of incorporation and the principal place of business. *Id.* at 761 n.19. But, as noted, it held that extensive business operations within a state would not be sufficient. In

fact, the defendant in *Daimler* had "considerable contacts with California[,]" including a "regional headquarters[,]" "multiple [other] facilities[,]" "service and sales support . . . throughout the State[,]" and sales of "billions of dollars in the year th[e] suit was brought." *Id.* at 763 (Sotomayor, J., dissenting). Yet, the Court held that "Daimler's activities in California plainly do not" support general jurisdiction, because "[i]t is one thing to hold a corporation answerable for operations in the forum State . . ., quite another to expose it to suit on claims having no connection whatever to the forum State." *Id.* at 761 n.19 (citations omitted); *accord* Tanya J. Monestier, *Where is Home Depot "At Home"?: Daimler v. Bauman and the End of Doing Business Jurisdiction*, 66 Hastings L.J. 233, 235, 283-84 (2014) (explaining that a foreign corporation is not subject to general jurisdiction even with hundreds of physical locations, thousands of employees, and massive sales in the forum).

General jurisdiction is lacking here too. Abbott neither is "incorporated in California, nor does [it] have its principal place of business there. If [Abbott's] California activities sufficed to allow adjudication of this [foreign-forum]-rooted case in California, the same global reach would presumably be available to every other State in which [Abbott]'s sales are sizeable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler*, 134 S. Ct. at 761-62 (internal quotation marks omitted).

## B.    There Is No Specific Jurisdiction Over Abbott

Nor does the Court have specific personal jurisdiction over Abbott for GSK's state law claims. "Specific" or "case-linked" jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy'"—*i.e.,* an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden*, 134 S. Ct. at 1122 n.6 (quoting *Goodyear,* 131 S. Ct. at 2851). In other words, "specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum." *Martinez*, 764 F.3d at 1066 (citations omitted) (internal quotation marks omitted).

Courts in this Circuit apply a three-prong test to assess whether specific personal jurisdiction exists over a non-resident defendant: "(1) purposeful availment and direction; (2) forum-related conduct; and (3) reasonableness." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). "If any of the

three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). Here, *none* of the three prongs is satisfied.[1]

### i. *First Prong — Purposefully Availed and Purposefully Directed*

A "plaintiff may satisfy this [first] prong by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Although it has "'sometimes used these two terms in shorthand fashion as a single concept," the Ninth Circuit maintains a "rough division between contract and tort." *Id.* The "purposefully availed" variation typically applies to contract claims (including actions for breaches of the covenant of good faith and fair dealing) and the "purposefully directed" variation typically applies to tort claims (including actions for violation of state consumer protection statutes).[2]

GSK cannot satisfy either variation. Under the "purposefully availed" variation, the question is whether the defendant, through the disputed contract, "availed itself of the privilege of conducting activities in the forum." *Id.* at 672. As the Supreme Court explained, parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state'" are subject to specific jurisdiction in that other state. *Burger King,* 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950) ).

When evaluating jurisdiction over a claim for breach of contract, courts consider whether the foreign defendant entered into a "contract with a resident of the forum state," traveled to the forum for contract

---

[1] The plaintiff bears the burden of establishing both the first and second prongs of the specific jurisdiction test; thereafter, if both prongs are established, the defendant may nonetheless rebut the plaintiff's showing through demonstrating that the exercise of jurisdiction is unreasonable under the third prong of the test. *See In re W. States Wholesale Natural Gas Litig.*, 715 F.3d 716, 745 (9th Cir. 2013).

[2] *See id.* at 672-73; *see also, e.g.*, *Haller v. Advan. Indus. Comp., Inc.*, No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *5 (D. Ariz. Feb. 27, 2015) (applying purposeful availment variation in action claiming for breach of covenant of good faith); *Michael v. New Century Fin. Services*, Case No. 13-cv-03892-BLF, 2014 WL 4099010, at *2, *5 (N.D. Cal. Aug. 20, 2014) (applying purposeful direction variation in action claiming state unfair competition claim); *Quiroz v. Dickerson*, No. C 10-02421 PVT, 2010 WL 3702628, at *1, 3 (N.D. Cal. Sept. 16, 2010) (as in *New Century*); *No Mayo-San Francisco v. Memminger*, No. C-98-1392 PJH, 1998 WL 544974, at *2-4 (N.D. Cal. Aug. 20, 1998) (as in *Haller*).

negotiations, or targeted the forum during negotiations through the "use of the mails, telephone, or other international communications." *Roth v. Marquez*, 942 F.2d 617, 621-22 (9th Cir. 1991) (citing *Burger King*, 471 U.S. at 478). Courts also consider whether the contract's choice-of-law provision designates the forum's law, which can help "reinforce[]" a "deliberate affiliation with the forum." *Id.* at 482. Ultimately, however, the key inquiry is whether the contract itself created "continuing relationships and obligations with citizens" of the forum, *id.*, *id.* at 473, which thus establishes that the defendant "purposefully availed himself of the privilege of doing business in" the forum, something typically proven by the "*defendant's actions in the forum, such as executing or performing a contract there.*" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).

Abbott did none of these things. It did not enter into a contract with a California resident; it neither executed, negotiated, nor performed the contract in California; and it did not agree to a choice-of-law provision designating California law. In short, it did nothing in connection with the disputed patent license to "purposefully avail itself of the privilege of conducting activities" in California. GSK alleges literally no contract-related conduct by Abbott actually occurring in California—no negotiations, no meetings, no payments, no communications, and no visits.

Instead, Abbott entered into a patent license with a Pennsylvania corporation headquartered in Pennsylvania and/or North Carolina, (2d Am. Compl. ¶ 5), and that license is governed by New York law (Exhibit A ¶ 11.4), which affirmatively "weighs against a finding of purposeful availment." *LocusPoint Networks, LLC v. D.T.V., LLC*, Case No. 3:14-cv-01278-JSC, 2014 WL 3836792, at *7 (N.D. Cal. Aug. 1, 2014) (citing *Doe v. Unocal*, 248 F.3d 915, 924 (9th Cir. 2001)). Given the complete absence of any contract-related conduct by Abbott in California, Abbott plainly did not "reach out" to "create continuing relationships and obligations with citizens" of California, and thus did not purposefully avail itself of "the privilege of conducting activities within the forum State" in connection with GSK's current claims. *Burger King,* 471 U.S. at 473, 475.

GSK fares no better under the "purposefully directed" variation, which would require GSK to demonstrate that Abbott: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Wash. Shoe*, 704 F.3d at 673. To establish that Abbott engaged in conduct "expressly aimed at the forum state," GSK

must show that Abbott "engaged in wrongful conduct *targeted at a plaintiff* whom the defendant knows to be a *resident of the forum state*." *Bancroft*, 223 F.3d at 1087 (emphasis added); *accord Wash. Shoe*, 704 F.3d at 675 (citing cases showing that the court "repeatedly" set forth the same standard).

Far from showing that Abbott targeted a California plaintiff, GSK alleges the opposite. It alleges that Abbott "targeted one competitor, GSK," which is "a Pennsylvania corporation with its headquarters in Research Triangle Park(Durham), North Carolina and Philadelphia, Pennsylvania." (2d Am. Compl. ¶ 5). GSK further alleges that it was "harmed in North Carolina by Abbott's misconduct," because GSK's "North Carolina locations are the base for the company's research and development facilities and commercial operations in the HIV/AIDS area, and they also house various sales and marketing, administrative, and corporate functions." *Id.* ¶ 5.

All of this defeats any possible argument for specific jurisdiction, as illustrated by a recent Oregon district court decision finding no specific jurisdiction in a case with far greater forum contacts than here. *Gullette v. Lancaster & Chester Co.*, No. 3:14-cv-00537-HZ, 2014 WL 3695515, at *1 (D. Or. July 23, 2014). In *Gullette,* the court found that there was no personal jurisdiction in Oregon over a South Carolina defendant concerning a "breach of the covenant of good faith and fair dealing, and unfair trade practices under South Carolina law." *Id.* at *1. The South Carolina defendant had placed an advertisement in a magazine that was "delivered by mail" to the Plaintiff's Oregon home. *Id.* The defendant also "faxed" the contract directly to the plaintiff's "residence in Portland, Oregon," where the plaintiff "executed the contract." *Id.* The district court nevertheless found that it lacked personal jurisdiction over the South Carolina defendant because the parties' contract created no "ongoing obligations with, or continuing commitments in, the forum." *Id.* at *5. So too here, because the disputed patent license created for Abbott no "continuing relationships and obligations with citizens of" California. *Burger King,* 471 U.S. at 473; *see also Woodco Dynamic, LLC v. Venetian Invs., LLC*, No. 2:10-cv-00035 JWS, 2010 WL 1813788, at *3 (D. Ariz. May 5, 2010) (finding no personal jurisdiction in Arizona where the defendant's contacts "with Arizona" included "entering into a contract" with an Arizona company and "sending payments to a Bank of American account in Arizona," because the defendant did not "purposefully avail[] itself of the privilege of doing business in Arizona, particularly when the [contract] was executed in Florida, concerned property in Florida, and by its terms

9

was governed by the laws of Florida").

For multiple reasons, GSK also cannot satisfy either the "purposefully availed" or "purposefully directed" standards with the allegation in its Second Amended Complaint that "Abbott's conduct has a direct, substantial, and reasonably foreseeable effect on commerce within the United States," including in "the States of California, North Carolina and elsewhere." (2d Am. Compl. ¶¶ 51-52). First of all, as the Ninth Circuit has instructed, "foreseeable effects" do not satisfy the "express aiming" requirement, which requires "something more": "[t]he presence of individualized targeting." *Bancroft.*, 223 F.3d at 1087-88.

Moreover, GSK allegedly lost sales throughout the *entire* "United States and elsewhere." (2d Am. Compl. ¶ 51). So any argument that lost sales in California alone justifies "specific jurisdiction" would be tantamount to arguing that *nationwide* jurisdiction exists over this private license dispute—a result that would be every bit as "grasping" and "exorbitant" as the jurisdictional theory the Supreme Court rejected in *Daimler.*

By alleging "foreseeable effects" on California commerce, GSK seems to be invoking something akin to a "stream of commerce" jurisdictional theory, which arises from a "line of cases" finding jurisdiction in products liability cases based on a state's "strong state interest in protecting its citizens against harmful products." *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 n.1 (9th Cir. 1985). But we are aware of no case extending that theory to claims about either a breach of a patent license or a violation of a *different* state's consumer protection statute. *See*, *e.g.*, *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 553 (9th Cir. 1979) (noting that a breach of contract case is "not analogous" to "products liability cases in which jurisdiction has been predicated on the fact that the defendant launched its defective product into the stream of commerce and therefore could foresee that it might be resold or transported into the forum state, there to injure the plaintiff"); *Sunday Riley Modern Skin Care, L.L.C. v. Maesa,* No. H-12-1650, 2013 WL 5231860, at *11 (S.D. Tex. Sept. 12, 2013) (declining to apply to a "stream-of-commerce theory" in a "breach of contract case alleging" an "economic loss," noting that the Fifth Circuit "has extended the stream of commerce analysis outside of the product liability context, but only in cases that cause damage in the forum state arising from the allegedly defective product.").

Nor would it be sensible to apply a "steam of commerce" theory to justify personal jurisdiction here. GSK is not alleging that Norvir is a defective product that injured a California citizen. It is alleging that it suffered an economic loss when Abbott made a decision in *Illinois* to increase Norvir's price, which it claims breached a private "agreement" granting "GSK a license to promote its boosted PIs to be administered with Norvir," thus purportedly "thwart[ing] GSK's ability to benefit from [its] contracted rights." (2d Am. Compl. ¶ 55). GSK's claimed violation of the North Carolina statute arises out of the same alleged breach and, in fact, this Court granted summary judgment against that claim *except* "to the extent it is based on Abbott's alleged breach" of the parties' license agreement. Order at 46, ECF No. 325. Lost *California* sales are doubly irrelevant to personal jurisdiction over GSK's claimed violation of *North Carolina's* unfair trade practices statute, which is designed to protect North Carolina residents (not California residents), resulting in "the overwhelming majority of federal district courts" limiting that statute's reach to "cases involving substantial effect on a plaintiff's in-state business operation." *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 603 (S.D.N.Y. 2005).

Any effort to justify jurisdiction based on Norvir sales under a "stream of commerce" theory suffers from yet another problem: GSK is not claiming that it suffers harm when California patients *buy* Norvir. GSK is claiming it suffers harm only when patients *do not buy* Norvir, which allegedly results in the loss of sales of boosted Lexiva. In any event, Abbott did nothing to "promot[e] Norvir as a one-pill booster" to California residents, because the FDA has never authorized Abbott to promote Norvir drug for such purposes. (ECF No. 546, 12/5/2011 Trial Tr. Day 9 (Mason) at 1785:3–1785:21).

Under these circumstances, even if the purchase of Norvir by some California patients from California pharmacies (not from Abbott) *were* relevant to the jurisdictional analysis (it is not), the fact that Abbott could "foresee" Norvir being sold "nationwide" is not sufficient, because a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted* the forum." *J. McIntyre*, 131 S. Ct. at 2785, 2788-89 (plurality op.) (emphasis added); *accord Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 111-12 (1987) (op. of O'Connor, J.) (requiring "something more" than simply placing "a product into the stream of commerce," even if defendant is "awar[e]" that the stream "will sweep the product into the forum State"); *Urban Textile, Inc. v. A & E Stores, Inc.*, No. 2:14-cv-01554-CAS (ASx), 2014 WL 3955173, at

11

*3-5 (C.D. Cal. Aug. 11, 2014) (holding that the "placement" of an allegedly infringing game console into the "stream of commerce" "is not an act purposefully directed toward a forum state," and even "defendant's awareness that the stream of commerce . . . will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state.'" (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007))); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 605 F. Supp. 2d 1118, 1140 (D. Nev. 2009) ("Plaintiffs' [have] not allege[d] [Defendant] purposefully availed itself of [the forum state] by individually targeting known [forum state] residents. Rather, the [Complaint] alleges a nationwide conspiracy to manipulate natural gas prices resulting in inflated prices generally, including in Wisconsin. The mere likelihood that the price manipulation allegedly occurring in other states foreseeably would affect natural gas prices in Wisconsin does not amount to purposeful direction at Wisconsin.").

### ii. *Second Prong — Forum Related Conduct*

GSK also cannot establish the second prong concerning forum-related conduct. Under this prong, GSK must show that it "would not have been injured 'but for' [Abbott's forum-related contacts.]" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (citing cases); *accord Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Here again, GSK cannot satisfy this standard. There is no "but for" connection between any alleged activities by Abbott in California and GSK's claims for the breach of a private patent license or the violation of a North Carolina unfair competition statute. Again, Abbott made the decision to increase Norvir's prices in Illinois to allegedly "target[] one competitor, GSK," which is a North Carolina and/or Pennsylvania resident that allegedly lost sales throughout the entire "United States and elsewhere." (2d Am. Compl. at ¶¶ 2, 5) Given the alleged loss of sales in every state, purported "harm" to GSK giving rise to the very same claims would have resulted even without *any* possible Abbott activity in California. Consequently, far from the required "but for" relationship, GSK's claims would have existed *independent of* any purported relevant activity occurring within

California. *See, e.g.*, *Gullette*, 2014 WL 3695515, at *6 (holding that plaintiff failed to satisfy "but for" standard because "there is no evidence to support a finding that the contract between the parties resulted from Defendants' activities in Oregon[]");*In re W. States Wholesale Nat. Gas Antitrust Litig.*, MDL No. 1566, 2010 WL 4386950, at *3 (D. Nev. Oct. 29, 2010) ("[T]he 'but for' test requires that Defendant's forum-related acts be [the] acts *out of which Plaintiffs' claims arise*, or, stated alternatively, Plaintiffs' claims *would not have arisen* in the absence of Defendant's forum-related acts." (emphasis added)); *Hammons v. Alcan Aluminum Corp.*, No. SA CV 96-319-LHM, 1996 WL 397455, at *2 (C.D. Cal. May 31, 1996) (holding that the plaintiff failed the "but for" test because "plaintiff's claims against [defendant] could have arisen in the absence of [defendant]'s California activities," specifically because the price-fixing "conspiracy could have been formed regardless of whether [the defendant] has any contacts in California and regardless of whether co-defendants had offices in California.").

### iii.   *Third Prong — Reasonableness*

Finally, even if both the first and second factor could be satisfied (and they cannot), the Court must still consider the overall "reasonableness" of the assertion of personal jurisdiction, which requires analyzing seven separate factors.[3]  GSK cannot clear that this hurdle either.  *See, e.g.*, *One True Vine, LLC v. Liquid Brands LLC*, No. C 10-04102 SBA, 2011 WL 2148933, at *8 (N.D. Cal. May 31, 2011) ("Where, as here, the plaintiff's showing is insufficient to establish either purposeful availment or that the claims arise from defendant's forum-related activities, the Court need not reach the third prong of the specific jurisdiction test.  Nevertheless, even if it did, the Court is persuaded by Defendant's contention that the assertion of personal jurisdiction would be unreasonable in this case." (citation omitted) (internal quotation marks omitted); *see also, e.g.*, *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987) ("Because we find the exercise of personal jurisdiction over [Defendant] is unreasonable, we need not determine whether the first two prongs of the test are satisfied."); *Gullette*, 2014 WL 3695515, at *8 ("[E]ven if Plaintiffs had made a prima facie showing on

---

[3] Those factors are:   (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Panavision*, 141 F.3d at 1323.

the first two elements of the specific jurisdiction analysis, Defendants have presented a compelling case that this Court's exercise of jurisdiction would not be reasonable.").

Many factors strongly condemn any exercise of jurisdiction here and, in aggregate, demonstrate that any such exercise of jurisdiction is unreasonable:

- *First*, with respect to "the forum state's interest in adjudicating the dispute," a California court does not have a superior interest over other forums with a direct stake in the case—such as Illinois (where Abbott is headquartered), Pennsylvania (where GSK is incorporated and headquartered), New York (whose law governs the contract) or North Carolina (where GSK operates its HIV franchise and where the asserted North Carolina statute was enacted to protect "in-state business operations"). *Parmalat*, 383 F. Supp. 2d at 603.

- *Second*, California also is not "the most efficient judicial resolution of the controversy" given the parties' sites of incorporation and corporate nerve centers. For instance, if the upcoming trial were to proceed, multiple witnesses on both sides would be forced to travel across the country to testify in a California court about a contract that does not mention California, that was not negotiated in California, and that has nothing to do with California.

- *Third*, there are alternative and more appropriate forums to resolve a contract dispute governed by New York law and controlled by a North Carolina statute between companies headquartered and incorporated in Illinois, Pennsylvania, and North Carolina—and while dismissing the action from this forum, the Court could, if appropriate, simultaneously transfer the action to another forum under 28 U.S.C. § 1631.

- *Fourth*, as shown above, Abbott's relevant "purposeful contacts with California" are non-existent.

In short, *none* of the three prongs of this Circuit's specific personal jurisdiction analysis are satisfied here, much less all three. This Court therefore lacks specific jurisdiction over the state law claims alleged in GSK's Second Amended Complaint.

*   *   *

It does not matter that this case has been pending before this Court for a long time, because this jurisdictional issue arose just yesterday through GSK's own voluntary decision. The Court has no

discretion here. Jurisdiction is "'inflexible and without exception'" and it "'spring[s] from the nature and limits of the judicial power of the United States.'" *Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) ). "'[W]ithout jurisdiction the court cannot proceed at all in any cause,'" *Ruhrgas AG*, 526 U.S. at 577 (quoting *Steel Co.*, 523 U.S. at 94), and therefore "'when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause[,]'" *Vt. Agency*, 529 U.S. at 778-79 (quoting *Ex Parte McCardle*, 74 U.S. at 514).

This is not an issue about *subject matter* jurisdiction, where Congress specifically gave federal courts the "purely discretionary" power to *continue* to exercise "subject-matter jurisdiction over specified state-law claims" in federal-question cases, even "*after* dismissing every claim over which it had original jurisdiction." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. §§ 1367(a) and (c)) (emphasis added).

There is no such statutory grant here. Nor could there be. Personal jurisdiction is a matter of Due Process, and Due Process is not a matter of discretion. Without personal jurisdiction over Abbott for GSK's Second Amended Complaint, this Court is "powerless to proceed to an adjudication[,]" *Ruhrgas,* 526 U.S. at 584 (internal quotation marks omitted), and not "authori[zed] to bind . . . nonresident [Abbott] to a judgment[,]" *Walden,* 134 S. Ct. at 1121.

## CONCLUSION

For the foregoing reasons, pursuant to Fed. R. Civ. P. 12(b)(2), the Court should dismiss GlaxoSmithKline's Second Amended Complaint due to a lack of personal jurisdiction over Abbott.

DATED: March 11, 2015                    **KIRKLAND & ELLIS LLP**


By: */s/ James F. Hurst*
_____
James F. Hurst
Attorney for Defendant
ABBOTT LABORATORIES