James F. Hurst (Admitted *Pro Hac Vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654-3406
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
james.hurst@kirkland.com

Charles B. Klein (Admitted *Pro Hac Vice*)
Matthew A. Campbell (Admitted *Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
Telephone:     (202) 282-5000
Facsimile:     (202) 282-5100
cklein@winston.com
macampbell@winston.com

Jeffrey I. Weinberger (SBN 56214)
Stuart N. Senator (SBN 148009)
Keith R.D. Hamilton (SBN 252115)
Caroline McKay Cunningham (SBN 270927)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702
jeffrey.weinberger@mto.com
stuart.senator@mto.com
keith.hamilton@mto.com
caroline.cunningham@mto.com

*Counsel for Defendant*
*ABBOTT LABORATORIES*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ABBOTT LABORATORIES,<br><br>                    Defendant. | Case No. C 07-5702 (CW)<br><br>**ABBOTT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS GSK'S SECOND AMENDED COMPLAINT**<br><br>Date:      April 8, 2015<br>Time:     2:00 p.m.<br>Place:     Courtroom 2 - 4th Floor<br>Judge:    Hon. Claudia Wilken |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

I.      ABBOTT DID NOT WAIVE ITS PERSONAL JURISDICTION ARGUMENT. ...... 2

II.     THERE IS NO GENERAL JURISDICTION OVER ABBOTT. ................................ 3

III.    THERE IS NO SPECIFIC JURISDICTION OVER ABBOTT. .................................. 4

        A.      Abbott Neither Purposefully Availed Itself Of, Nor Purposefully
                Directed Actions Toward, The Forum Related To The License
                Agreement.................................................................................................... 5

        B.      Abbott Did Not Engage In Any Relevant Forum-Related Conduct. ............... 10

        C.      Exercising Jurisdiction Over Abbott Would Be Unreasonable. ...................... 11

IV.     THERE IS NO PENDENT PERSONAL JURISDICTION. ...................................... 12

V.      GSK'S ALTERNATIVE RELIEF SHOULD BE REJECTED................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) .......................................................................... 2

*American Title Insurance Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ............................................................................ 8

*Amiri v. DynCorp International*, *Inc.*,
    2015 WL 166910 (N.D. Cal. Jan. 13, 2015) ..................................................... 4

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ....................................................................... 8, 9

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ..................................................................... 5, 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................... 1, 6, 7, 10

*Christian Legal Society Chapter of University of California v. Wu*,
    626 F.3d 483 (9th Cir. 2010) .......................................................................... 14

*Colson v. Samson Hair Restoration, LLC*,
    837 F. Supp. 2d 564 (D.S.C. 2011) ................................................................ 13

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ............................................................................. passim

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ...................................................................... 6, 10

*Doppelt v. Perini Corp.*,
    2002 WL 392289 (S.D.N.Y. Mar. 13, 2002) .................................................. 13

*Economic Research Services Inc. v. North Western Corp.*,
    2007 WL 4557785 (N.D. Cal. Dec. 21, 2007) .................................................. 6

*ESAB Group, Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) ....................................................................... 9, 11

*Fields v. Gates*,
    243 F.3d 547 (9th Cir. 2000) .......................................................................... 14

*Garcia de Rincon v. Department of Homeland Security*,
    539 F.3d 1133 (9th Cir. 2008) ........................................................................ 15

*Gator.com Corp. v. L.L. Bean, Inc.*,
    341 F.3d 1072 (9th Cir. 2003) .......................................................................... 3

*GATX Capital Corp. v. Fifth Third Bank*,
    1999 WL 1244147 (N.D. Cal. Dec. 10, 1999) .................................................. 6

*Glater v. Eli Lilly & Co.*,
  712 F.2d 735 (1st Cir. 1983) ................................................................................................... 2

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ............................................................................................... 4, 7, 9

*In re Genetically Modified Rice Litigation*,
  666 F. Supp. 2d 1004 (E.D. Mo. 2009) ................................................................................... 8

*IPS Shared Technical Services, Inc. v. Overwatch Systems, Ltd.*,
  2014 WL 2110341 (N.D. Cal. May 20, 2014) ................................................................ 4, 7, 9

*Lacey v. Maricopa County*,
  693 F.3d 896 (9th Cir. 2012) ............................................................................................... 14

*Lawrence v. UMLIC-Five Corp.*,
  2007 WL 2570256 (N.C. Super. Ct. June 18, 2007) ................................................................ 8

*Lightfoot v. Cendant Mortgage Corp.*,
  769 F.3d 681 (9th Cir. 2014) ................................................................................................. 3

*Linthicum v. Shenkman*,
  2013 WL 4875024 (S.D. Cal. Sept. 10, 2013) ............................................................... 5, 7, 9

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) ........................................................................................... 3, 4

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................................................... 3

*McGlinchy v. Shell Chemical Co.*,
  845 F.2d 802 (9th Cir. 1988) ............................................................................................. 6, 7

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007) ............................................................................................... 5

*NationalEFT, Inc. v. Checkgateway, L.L.C.*,
  2013 WL 593759 (S.D. Cal. Feb. 15, 2013) ............................................................... 5, 6, 7, 9

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................................................................... 8

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ............................................................................................. 9, 11

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ............................................................................................ 9, 11

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ............................................................................................................ 13

*Rybarczyk v. Craig Hospital*,
  2007 WL 704125 (D. Idaho Mar. 5, 2007) .......................................................................... 6, 7

ABBOTT'S REPLY TO MOTION TO DISMISS GSK'S SECOND AMENDED COMPLAINT:  CASE NO. 07 5702

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................................................. 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .................................................................................... 8

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ................................................................................... 6

*Texas v. United States*,
    523 U.S. 296 (1998) .................................................................................................. 2

*United States v. Botefuhr*,
    309 F.3d 1263 (10th Cir. 2002) ......................................................................... 13, 14

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ...................................................................................... 2, 13, 15

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................................................ 10

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012) .................................................................................... 8

*Wickenkamp v. Strotman*,
    586 F. App'x 347 (9th Cir. 2014) ........................................................................... 14

*Wickline v. United Micronesia Development Ass'n*,
    2014 WL 2938713 (N.D. Cal. June 30, 2014) ....................................................... 5, 6

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ............................................................................. 8, 10

**Statutes**

17 U.S.C. § 106 ................................................................................................................ 10

28 U.S.C. § 1367 ............................................................................................................. 13

28 U.S.C. § 1631 ............................................................................................................. 15

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1391 (3d ed. 2015) ............................................... 2

9 Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 2367 (3d ed. 2015) ............................................. 15

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................... 15

Fed. R. Civ. P. 12(g)(2) ..................................................................................................... 2

iv

Fed. R. Civ. P. 12(h)(1)......................................................................................................... 2

**INTRODUCTION**

GSK's opposition confirms that without the nationwide personal jurisdiction created by its federal Sherman Act claim, this Court no longer has jurisdiction over Abbott. Lack of personal jurisdiction was not an available argument so long as GSK's Sherman Act claim was pending. As soon as GSK dismissed that claim, Abbott moved to dismiss and thus did not waive the argument.

On the merits, GSK is unable to establish either general or specific jurisdiction over Abbott. GSK claims that Abbott is subject to general jurisdiction because Abbott does substantial business in California, but this is precisely the argument the Supreme Court rejected in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The pre-*Daimler* cases that GSK cites were abrogated by *Daimler*, as recent Ninth Circuit authority confirms. Because it is neither headquartered nor incorporated in California, Abbott is not "at home" in California and thus not subject to general jurisdiction in California.

GSK likewise fails to show specific jurisdiction, which requires the defendant to have targeted the forum using contacts connected to the pending claims. GSK's remaining claims are based on a license agreement that does not involve a party from California, was not negotiated or executed in California, and does not mention performing work in California. GSK claims Abbott must have known that GSK would take actions under the contract in California, but only Abbott's activities matter, because personal jurisdiction cannot be established through the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Likewise, GSK's assertion that Abbott has contacts with California unrelated to GSK's claims or took nationwide actions that did not target California do not support specific jurisdiction.

GSK alternatively claims that the Court can assert personal jurisdiction based on the now-dismissed Sherman Act claim under the doctrine of pendent personal jurisdiction. But GSK does not cite a single case where a court dismissed claims over which it had personal jurisdiction and then retained claims over which it lacked personal jurisdiction. Any such result would violate Abbott's Due Process rights, which are not a matter of discretion.

Nor should any of GSK's alternative relief be granted. GSK does not establish a basis for jurisdictional discovery, nor explain how such discovery could change the lack of personal jurisdiction. It is also too late for GSK to obtain leave to "withdraw" its new complaint and then

proceed to trial on the earlier complaint with the Sherman Act claim.  That claim is now barred by the statute of limitations, and cannot be resurrected under settled law.  In any event, without jurisdiction, this Court has no authority to grant the withdrawal request.  Finally, GSK does not explain the basic prerequisites of its request to transfer the action, such as which court it seeks to transfer the action to or why such a transfer would be just.

When jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000).  That is what the Court should do.

## I.     ABBOTT DID NOT WAIVE ITS PERSONAL JURISDICTION ARGUMENT.

As GSK admits, a motion to dismiss for lack of personal jurisdiction is not waived if it was not "available" to the party in an earlier motion.  (GSK Br. at 6, Dkt. No. 652; Fed. R. Civ. P. 12(g)(2), (h)(1); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738-39 (1st Cir. 1983); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1391 (3d ed. 2015) ("Rule 12(h)(1) does not provide for waiver if the omitted defense was unavailable when the party answered … .").)[1] GSK's earlier Sherman Act claim provided this Court with personal jurisdiction over Abbott based on nationwide contacts.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  Once GSK filed its Second Amended Complaint, dropping its Sherman Act claim, the basis for nationwide personal jurisdiction was lost.  By moving to dismiss the very next day, Abbott raised the resulting lack of jurisdiction as soon as the argument became available.

GSK asserts that Abbott should have moved to dismiss the state claims for lack of jurisdiction years ago—even though GSK's Sherman Act claim was pending.  Such a motion would have been futile, because the Sherman Act claim provided pendent personal jurisdiction over Abbott for the state claims.  It also would have been a request for an improper hypothetical ruling that would "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," namely, dismissal of the Sherman Act claim.  *Texas v. United States,* 523 U.S. 296, 300 (1998).  Finally, an argument for *discretionary* dismissal where the Court *has* pendent personal

---

[1] All citations in this brief omit all internal quotation marks, modifications, and citations unless otherwise indicated.

1    jurisdiction is fundamentally different from what Abbott seeks now, which is *mandatory* dismissal

2    because the Court *does not have* personal jurisdiction.  GSK cites no case law holding that not

3    raising one argument can waive a different argument that is made as soon as it becomes available.

4    Lastly, GSK points to snippets of prior pleadings filed by Abbott, either alone or jointly with

5    GSK (GSK Br. at 6-7), but none of these support waiver.  In each case, GSK's Sherman Act claim

6    was pending and thus provided a basis for personal jurisdiction.  (*See* Dkt. Nos. 17, 168, 574.)

7    Moreover, none of this briefing stated that this Court would have personal jurisdiction over Abbott if

8    the Sherman Act claim were dismissed.

9    **II.     THERE IS NO GENERAL JURISDICTION OVER ABBOTT.**

10   Remarkably, GSK claims that general jurisdiction exists when a defendant has "continuous

11   and systematic" contacts with the forum state.  (GSK Br. at 7, 8.)  This is the exact argument the

12   Supreme Court rejected in *Daimler*:  "Plaintiffs would have us look beyond the exemplar bases

13   *Goodyear* identified [principal place of business and state of incorporation], and approve the

14   exercise of general jurisdiction in every State in which a corporation engages in a substantial,

15   continuous, and systematic course of business.  That formulation, we hold, is unacceptably

16   grasping."  *Daimler*, 134 S. Ct. at 760-61.  Post-*Daimler* Ninth Circuit decisions have recognized

17   that the Supreme "Court in *Daimler* rejected the plaintiffs' argument, also pressed by plaintiffs here,

18   that general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous,

19   and systematic course of business in a state."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070

20   (9th Cir. 2014).  Thus, *Daimler* abrogated cases that allowed general jurisdiction on such a basis,

21   including *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) and

22   *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1077 (9th Cir. 2003).

23   Instead, a company is subject to general jurisdiction only where it is "at home," which

24   generally is only where it "is incorporated or has its principal place of business," *Daimler*, 134 S. Ct.

25   at 760; *accord Lightfoot v. Cendant Mortg. Corp.*, 769 F.3d 681, 689 (9th Cir. 2014).  GSK does not

26   cite a single post-*Daimler* case that supports asserting general jurisdiction over Abbott.

27   Without any case support, GSK nevertheless asserts that Abbott is an "exceptional case"

28   under *Daimler*.  (GSK Br. at 9.)  But "outside a corporation's place of incorporation or principal

3

1   place of business," the test for general jurisdiction "is rarely satisfied," and *Daimler* "indicates the

2   bar" for finding an exceptional case "is very high." *Amiri v. DynCorp Int'l, Inc.*, No. 14–CV–03333,

3   2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015).

4           In fact, *Daimler* forecloses any argument that this is an "exceptional case." That *Daimler* is

5   fatal to GSK's argument is shown by how GSK distorts its facts and holding. GSK asserts that

6   Daimler's only contact with California was through its subsidiary, MBUSA. (GSK Br. at 9 & n.4.)

7   But in *Daimler*, the Supreme Court expressly assumed that all of the contacts of MBUSA were

8   "imputable to Daimler." 134 S. Ct. at 760; *see also Aero Caribbean*, 764 F.3d at 1070 (explaining

9   that the Supreme Court "assumed … that MBUSA's California contacts could be imputed to

10  Daimler"). Thus, contrary to GSK's claim, the Supreme Court relied on MBUSA's contacts in

11  determining whether there was general jurisdiction over Daimler.

12          *Daimler* demonstrates that even extensive business contacts with a State cannot justify

13  general jurisdiction. Daimler, through the imputed contacts of MBUSA, "has multiple facilities in

14  [California], including a regional headquarters," "distributes in California tens of thousands of cars,

15  the sale of which generated billions of dollars" annually, "provides service and sales support to

16  customers throughout the State," and "is the largest supplier of luxury vehicles to the California

17  market." 134 S. Ct. at 752, 763. Yet these contacts were insufficient for Daimler to be considered

18  "at home" in California. *Id.* at 762. The same conclusion applies to GSK's allegations that Abbott

19  has facilities, employees, and does business in California (GSK Br. at 8-9), which are the allegations

20  made against Daimler. Abbott is not "at home" in California any more than Daimler is, which

21  precludes a finding of general jurisdiction.

22  **III.     THERE IS NO SPECIFIC JURISDICTION OVER ABBOTT.**

23          GSK misunderstands the nature of specific jurisdiction. "In contrast to general, all-purpose

24  jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected

25  with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v.*

26  *Brown*, 131 S. Ct. 2846, 2851 (2011). Thus, contacts unconnected to the claims at issue cannot

27  establish specific personal jurisdiction. *See IPS Shared Technical Servs., Inc. v. Overwatch Sys.,*

28  *Ltd.*, No. C-14-1112, 2014 WL 2110341, at *4 (N.D. Cal. May 20, 2014) (finding no personal

4

jurisdiction where plaintiff's "claim of breach of contract is completely unrelated to these contacts with California," which included California-specific advertising, California business development, and providing services to California residents); *Linthicum v. Shenkman*, No. 13cv1099, 2013 WL 4875024, at *6 (S.D. Cal. Sept. 10, 2013) ("The allegations and evidence that [defendant] conducted business in California with individuals and businesses unrelated to the purported contract at issue are not sufficient to confer specific personal jurisdiction."); *NationalEFT, Inc. v. Checkgateway, L.L.C.*, No. 12cv1498, 2013 WL 593759, at *9 (S.D. Cal. Feb. 15, 2013) ("The allegations and evidence that [defendant] does business with California businesses unrelated to the contract at issue are not sufficient to confer specific personal jurisdiction.").

GSK fails to satisfy any of the required three prongs for showing specific personal jurisdiction: "(1) purposeful availment and direction; (2) forum-related conduct; and (3) reasonableness." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

### A.      Abbott Neither Purposefully Availed Itself Of, Nor Purposefully Directed Actions Toward, The Forum Related To The License Agreement.

Abbott previously explained that contract claims are governed by the purposeful availment standard, which looks to the defendant's actions regarding the contract and the forum.  (Abbott Br. at 7-8, Dkt. No. 633.)   Both of GSK's remaining claims are rooted in its license agreement with Abbott.  This is obviously true of GSK's claim for breach of the covenant of good faith and fair dealing.  (2d Am. Compl. ¶ 55, Dkt. No. 632.)  GSK's UDTPA claim similarly is based on Abbott "receiving substantial sums of money from [its] competitors for a license" and that Abbott took "all or part of the expected and reasonably anticipated benefit of the agreement it entered with GSK." (*Id.* ¶¶ 61, 63.)   Thus, jurisdiction over both claims is governed by the purposeful availment standard.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (applying purposeful availment standard to claims including violation of the California Consumer Protection Act); *Wickline v. United Micronesia Dev. Ass'n*, No. C 14-00192, 2014 WL 2938713, at *5-6 (N.D. Cal. June 30, 2014); *NationalEFT*, 2013 WL 593759, at *7.

The purposeful availment standard looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to

determine if the defendant's contacts are "substantial." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 479-80); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001); *Wickline*, 2014 WL 2938713, at *6; *Rybarczyk v. Craig Hosp.*, No. CV06-366, 2007 WL 704125, at *3 (D. Idaho Mar. 5, 2007).  These actions that courts typically rely on to find specific jurisdiction over contract-based claims are absent here.  Abbott did not enter into a contract with a California resident, did not negotiate or execute the contract in California, and did not agree to a choice-of-law or forum provision designating California.  (Abbott Br. at 7-8.)  GSK does not, and cannot, dispute any of these facts, which weigh heavily against specific jurisdiction.

Instead of these typical contacts, GSK argues that because GSK sold Lexiva boosted with Norvir in California, specific personal jurisdiction exists over Abbott.  (GSK Br. at 13.)  GSK's argument contradicts Ninth Circuit precedent.  In *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988), the Ninth Circuit found that a defendant could not be subject to specific jurisdiction based on a contract where the contract was negotiated outside of the state; the contract did not reference California; and the defendant did not perform or execute the contract in California.  *Id.* at 816.  The Ninth Circuit held there was no specific jurisdiction even though the plaintiffs "performed 90% of [their] activities in the Bay Area." *Id.*  The plaintiffs' actions in California, no matter how extensive, were unilateral activity of the plaintiffs that could not establish personal jurisdiction over the defendant.  *Id.* at 816-17; *see Burger King*, 471 U.S. at 475 (holding that personal jurisdiction does not exist as the result of the "unilateral activity of another party or a third person").

District courts regularly rely on *McGlinchy* to find personal jurisdiction lacking where the contract between the parties did not obligate the defendant to perform actions in the forum state, even if the plaintiff chose to do so.  *E.g.*, *NationalEFT*, 2013 WL 593759, at *9 (holding there was no personal jurisdiction where contract did not mention California except for plaintiff's mailing address and did not provide that plaintiff was required to perform actions or solicit business in California); *GATX Capital Corp. v. Fifth Third Bank*, No. C 99-3568, 1999 WL 1244147, at *4 (N.D. Cal. Dec. 10, 1999) (holding that there was no personal jurisdiction even though plaintiff did most of its work in California); *Econ. Research Servs. Inc. v. N.W. Corp.*, No. C-07-04175, 2007 WL 4557785, at *4 (N.D. Cal. Dec. 21, 2007) (rejecting personal jurisdiction based on

6

plaintiff's "conduct in California during the life of the contract" with defendant); *Rybarczyk*, 2007 WL 704125, at *4-5.

*McGlinchy's* teachings are fully applicable here.  The license agreement between the parties was entered into between Illinois and Pennsylvania corporations, neither from California.  It was not negotiated or executed in California.  It does not mention California at all.  Much less does the agreement require Abbott to take any action regarding California, such as selling products, marketing, or distribution.  Nor, for that matter, does the agreement require GSK to sell its products in any state, or give Abbott any input on where GSK sells its products.  Instead, GSK is free to sell Lexiva and other products wherever it chooses and however it chooses, including selling indirectly into various states through third-party wholesalers.  That it chose to sell its products directly and/or indirectly in California is precisely the kind of unilateral activity that *Burger King*, *McGlinchy*, and their progeny hold cannot subject a defendant to personal jurisdiction.

GSK also cites Abbott's facilities, its employees in California, and sales of pharmaceuticals there.  But GSK fails to connect these alleged contacts to its claims, which arise from the license agreement.  With or without the license agreement, Abbott would sell products in California, determine the price of those products, and have facilities and employees in California.  The key inquiry is whether the license itself created "continuing relationships and obligations with citizens" of the forum.  *Burger King*, 471 U.S. at 473.  GSK never attempts to make any such showing, and so the California activities that GSK cites cannot provide a basis for personal jurisdiction.  *See Goodyear*, 131 S. Ct. at 2851; *IPS*, 2014 WL 2110341, at *4; *Linthicum*, 2013 WL 4875024, at *6; *NationalEFT*, 2013 WL 593759, at *9.  Moreover, allowing specific jurisdiction based on sales, facilities, and employees unrelated to the claims at issue would create jurisdiction over any large corporation in any state, contrary to *Daimler*.  134 S. Ct. at 761-762 & n.20 (rejecting argument that jurisdiction could exist in every State in which a defendant's "sales are sizable").

As GSK's remaining claims arise from the license agreement, only the purposeful availment standard applies in determining whether specific jurisdiction exists.  To the extent this Court considers the "purposefully directed" standard for torts, GSK cannot satisfy this standard either.

Under the purposefully directed test, GSK must show that in connection with GSK's claims

1    Abbott "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

2    that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin*

3    *Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). GSK cannot make this showing.

4          GSK's own complaint refutes the notion that Abbott "individually target[ed] a known forum

5    resident" as required for specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223

6    F.3d 1082, 1088 (9th Cir. 2000) (explaining that the "presence of individualized targeting is what

7    separates these cases from others in which" the Ninth Circuit has found personal jurisdiction

8    lacking); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006);

9    *Schwarzenegger*, 374 F.3d at 805. GSK does not, and cannot, deny the allegations of its own

10   complaint, which are binding on it. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226

11   (9th Cir. 1988). Those allegations state Abbott "targeted one competitor, GSK," a Pennsylvania

12   corporation with its headquarters in North Carolina and Pennsylvania. (2d Am. Compl. ¶¶ 2, 5.)

13   GSK further alleges it was harmed in North Carolina. (*Id.* ¶ 5.) GSK does not address or distinguish

14   these allegations in its response.

15         Moreover, "the 'express aiming' analysis depends, to a significant degree, on the specific

16   type of tort or other wrongful conduct at issue." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704

17   F.3d 668, 675 (9th Cir. 2012). GSK's only tort claim is under the North Carolina UDTPA,

18   "intended to protect the North Carolina consumer." *In re Genetically Modified Rice Litig.*, 666 F.

19   Supp. 2d 1004, 1017-18 (E.D. Mo. 2009) (citing *Lawrence v. UMLIC-Five Corp.*, No. 06 CVS

20   20643, 2007 WL 2570256, at *6 (N.C. Super. Ct. June 18, 2007) (It "is beyond cavil that the

21   UDTPA's primary purpose is to protect the consuming public."). Far from expressly aiming at GSK

22   in California, Abbott had no reason to believe that an allegedly "unfair" breach of a private license

23   agreement would cause injury to GSK—under a North Carolina statute, designed to protect "North

24   Carolina consumer[s]"—all the way across the country in California.

25         Given GSK's principal places of business and the location of its alleged harm, GSK cannot

26   show that Abbott expressly aimed acts at GSK in California. Cases such as *Washington Shoe Co. v.*

27   *A-Z Sporting Goods Inc.*, 704 F.3d 668, 670 (9th Cir. 2012), *Bancroft & Masters*, 223 F.3d at 1084,

28   and *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1201 (9th Cir.

8

2006) each involved plaintiffs with their principal places of business in the forum state.  Far from supporting GSK's argument, each of these cases demonstrates that personal jurisdiction does not exist over Abbott in California because GSK is not located in the State.

Unable to avoid its own complaint allegations, GSK re-hashes its argument that Abbott has sales, facilities, and employees in California, and increased prices, communicated with physicians, and conducted public relations in the State.  But none of this shows that Abbott "individually target[ed] a known forum resident."  *Bancroft & Masters*, 223 F.3d at 1087.  Abbott's sales, facilities, prices, public relations, and so forth have nothing to do with GSK or the license agreement, much less "individually target" GSK in California.  Allowing specific jurisdiction to be based on such contacts would impermissibly blur the distinction between specific and general jurisdiction by allowing specific jurisdiction to be based on conduct unrelated to the claims at issue. *See Goodyear*, 131 S. Ct. at 2851; *IPS*, 2014 WL 2110341, at *4; *Linthicum*, 2013 WL 4875024, at *6; *NationalEFT*, 2013 WL 593759, at *9.

Moreover, the conduct cited by GSK was not even targeted at California, much less expressly targeted at GSK in California.  Abbott has sales, facilities, employees, changes prices, and conduct public relations throughout the United States.  Even before *Daimler*, courts held that such nationwide conduct did not expressly aim at or target a particular state, and thus would not support specific jurisdiction.  *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (finding that South Carolina lacked jurisdiction where defendant "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina"); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (finding that Texas lacked jurisdiction over defamation defendant where "the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states" and collecting similar cases from other circuits); *Remick v. Manfredy*, 238 F.3d 248, 258-59 (3d Cir. 2001) (finding that Pennsylvania lacked jurisdiction where defamatory letter was "distributed or shared with other persons … throughout the country").  *Daimler* reinforces this conclusion by explaining how

jurisdiction cannot be based on generalized activities such as sizable sales in a State.[2]  134 S. Ct. at 761-62 & n.20.

In an attempt to find personal jurisdiction over its contract-related claims, GSK does not cite cases involving contracts but rather cases concerning libel and infringement.  But both libel and infringement differ significantly from GSK's remaining claims.  As the Supreme Court has explained, "because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred *in* California."  *Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2014) (emphasis in original).  Because of the nature of libel "the 'effects' caused by the defendants' [libelous] article—i.e., the injury to the plaintiff's reputation in the estimate of the California public—connected the defendants' conduct to *California*."  *Id.* (emphasis added).  Copyright infringement similarly requires "copying" of protectable expression which means reproducing, distributing, displaying or otherwise publishing the work.  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989); 17 U.S.C. § 106.  Thus, like libel, the tort occurs wherever the expression was copied.  By contrast, the covenant of good faith and fair dealing and violations of the UDTPA have no such element and thus do not occur in every State.  Libel and infringement cases are inapposite to the claims GSK brings.  And GSK does not rely on any cases involving breach of contract, breach of a covenant, or an unfair trade practices statute to support its argument.

## B.    Abbott Did Not Engage In Any Relevant Forum-Related Conduct.

To establish specific jurisdiction, GSK must also show that its claims would not have "arisen but for [Abbott's] contacts with California."  *Doe*, 248 F.3d at 924.  To attempt to do so, GSK cites the Norvir price increase and Abbott's public relations.  But decisions about the price increase and

---

[2] Abbott previously explained that finding jurisdiction where GSK allegedly experienced lost sales would be contrary to *Daimler*.  (Abbott Br. at 10.)  In response, GSK cites the Ninth Circuit's decision in *Yahoo! Inc.*, which held that the question was whether "a jurisdictionally sufficient amount of harm is suffered in the forum state."  433 F.3d at 1207.  But, unlike here, the *Yahoo!* defendant's allegedly wrongful conduct "was expressly aimed at California" because it was attempting to enforce a French court's "orders directing Yahoo! to perform significant acts in California," the violation of which could result in a "penalty ... felt by Yahoo! at its corporate headquarters in California.  *Id.* at 1211.  Moreover, allowing jurisdiction in every state whenever a plaintiff alleges lost sales could expose defendants to nationwide jurisdiction in every breach case involving national sales, contrary to *Daimler's* teaching as well as *Burger King's* rule that specific jurisdiction cannot be based on the unilateral acts of the plaintiff.

associated public relations were made in Illinois and applied nationwide.   These would have occurred regardless of any Abbott contacts with California.   These decisions thus cannot be a "but for" connection or a basis of specific jurisdiction.   *E.g., ESAB Grp.*, 126 F.3d at 625; *Revell*, 317 F.3d at 473; *Remick*, 238 F.3d at 258-59.

Notably, GSK does not rely on any other alleged Abbott contacts in discussing the "but for" test.   That is because such contacts are also not a "but for" cause of GSK's claims.   Even if Abbott had no facilities, no employees, and no pharmaceutical sales in California, GSK's alleged claims still would have arisen from Abbott's decisions.

Moreover, GSK's claims are premised on the license agreement between the parties.   And there are no contacts between that license agreement and California.   Instead, it was negotiated between two non-California parties, was not negotiated or executed in California, does not require Abbott to take any action in California, and does not even mention California.   Claims arising from that license agreement do not arise "but for" Abbott's connections to California.

GSK again relies on libel and copyright infringement cases, which are not analogous to the breach of covenant and UDTPA claims that GSK brings.   Indeed, GSK does not cite any cases discussing the "but for" requirement for an implied covenant, UDTPA, or similar claim to support its argument.   Much less does GSK cite such a case where the claims are premised on an agreement that does not mention California, was not negotiated in California, and does not involve a California party.   Thus, both on the law and the facts, GSK has failed to show that its claims would have arisen but for Abbott's contacts with California.

### C. Exercising Jurisdiction Over Abbott Would Be Unreasonable.

GSK also cannot disprove that the reasonableness factors compellingly show that the exercise of personal jurisdiction without the antitrust claims would be unreasonable:

**Extent of a Defendant's Purposeful Injection:**   Abbott did not inject itself into California in a way relating to GSK's claims.   The agreement between that forms the basis of GSK's claims was not negotiated in California, does not mention California, and neither party is from California.

**Burden on the Defendant:**   The burden on Abbott is significant, as it is located in Illinois. That the parties had one trial and that Abbott hired counsel in California does not change the fact

that witnesses and evidence are located in Illinois rather than California.

**Conflict With the Sovereignty of Defendant's State:**  This action implicates sovereignty concerns because GSK seeks to have a North Carolina UDTPA claim—which was passed by North Carolina to protect North Carolina consumers—tried in this Court rather than North Carolina.

**The Forum State's Interest:**  GSK attempts to manufacture a California interest by mischaracterizing the Court's prior opinion, which says nothing about "Abbott's extensive contacts with the State." (GSK Br. at 19.)  Instead, that opinion states "that the only apparent connection between the case and California is that California is home to a large number of HIV-positive individuals who may be consumers of boosted PIs."  (Dkt No. 82 at 24.)  As other states have large numbers of such consumers, this connection provides little interest in California adjudicating this dispute.  This is particularly true given that neither party is from California and the suit concerns a license agreement that does not mention California.

**Most Efficient Judicial Resolution:**  Although GSK cites a couple of witnesses who live in California, it cannot deny that the many witnesses would be required to travel cross-country, again, to testify in a suit that has nothing to do with California.  Nor would the parties be starting from scratch in a new jurisdiction, as their legal, fact, and expert work could continue to be used.  Other courts would be in a similar position to this one given the recent *Batson* decision that has caused the case to start again in this court.

**Plaintiff's Interest in Relief / Existence of an Alternative Forum:**  This forum is not important for GSK's effective relief, as it can seek relief in another federal court with a closer connection to the parties and claims.  The resources GSK alleges it has invested will be transferrable to any other forum, as they consist of fact, expert, and legal work that will apply regardless of what court this case is in.

**IV.     THERE IS NO PENDENT PERSONAL JURISDICTION.**

Because GSK has dismissed the only claim providing personal jurisdiction over Abbott, the Court cannot retain the remaining state claims over which it does not have jurisdiction.  GSK argues otherwise based on "pendent personal jurisdiction," but that concept has no place when the claims over which the court had jurisdiction, the "anchor" claims, have been dismissed.    GSK

inappropriately relies on subject-matter jurisdiction case law, even though it admits that such cases are "not precisely on point." (GSK Br. at 21.) The reality is that the "character of the two jurisdictional bedrocks unquestionably differs. Subject-matter limitations on federal jurisdiction serve institutional interests. … Personal jurisdiction, on the other hand, represents a restriction on judicial power … as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

The concept of pendent personal jurisdiction must be understood in light of the interests served by personal jurisdiction. Where a court has jurisdiction over a party for one claim, the court has the power to hale that party before the court. If a court with jurisdiction exercises pendent jurisdiction over other claims, there is no infringement on individual liberty because the party must appear to defend in that court anyway. But when—as here—a court lacks personal jurisdiction over a defendant on all claims, it has no basis to subject the defendant to the court's power. Attempting to do so would encroach on that defendant's Due Process rights. When personal jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Vt. Agency*, 529 U.S. at 778-79.

Cases relying on 28 U.S.C. § 1367, which governs pendent *subject matter* jurisdiction, are inapplicable to pendent *personal* jurisdiction. No statute purports to provide this Court with the power to maintain personal jurisdiction over a party when the anchor claim is dismissed. Moreover, subject matter jurisdiction is a matter of institutional interests and, within broad limits, Congress can create subject matter jurisdiction through passing federal statutes. By contrast, Congress cannot create personal jurisdiction, as that would infringe on the liberty interests protected by Due Process. *Cf. Colson v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 570 (D.S.C. 2011) ("Although § 1367(a) permits a federal court to entertain pendent claims over which it would otherwise lack subject matter jurisdiction, federal due process still requires that a court have personal jurisdiction over each defendant."); *Doppelt v. Perini Corp.*, No. 01 CIV. 4398, 2002 WL 392289, at *4 (S.D.N.Y. Mar. 13, 2002).

GSK cites stray language within *Botefuhr* while ignoring the case's holding. (GSK Br. at 20-21.) *Botefuhr* held that the district court erred by retaining pendent personal jurisdiction after

1  dismissing the anchor claim:  "once the § 3713 count disappeared, there was no claim before the

2  district court for which it could be said Botefuhr and Davenport had 'minimum contacts' with

3  Oklahoma."  *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Beyond this holding,

4  *Botefuhr* explained that it "need not resolve the precise contours of pendent personal jurisdiction in

5  this case" and so any language suggesting that a court might have discretion to retain personal

6  pendent jurisdiction after the anchor claim is dismissed is dicta.  *Id.*  That a case must be dismissed

7  where there is no personal jurisdiction over any claim is further supported by the district court cases

8  cited by Abbott.  GSK attempts to distinguish two of these, but the fact remains that both state that

9  without an anchor claim the court could not retain personal jurisdiction.

10       Most telling is what GSK does not do:  cite a case where a court retained pendent personal

11  jurisdiction after dismissing the anchor claim.  Nor is Abbott aware of any such case.  The Court

12  should not accept GSK's invitation to violate Due Process by issuing the first decision finding

13  pendent personal jurisdiction after the anchor claim is dismissed.

14  **V.   GSK'S ALTERNATIVE RELIEF SHOULD BE REJECTED.**

15       Finally, the Court should reject GSK's three forms of alternative relief.  Each alternative is a

16  bare assertion or argued only in passing, and thus is waived.  *See Christian Legal Soc'y Chapter of*

17  *Univ. of Cal. v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010).  Each also fails on the merits.

18       There is no basis for jurisdictional discovery here.  GSK does not even suggest how

19  discovery could help it show personal jurisdiction.  The claims are based on an agreement by non-

20  California parties, that was not negotiated or executed in California, and that does not mention

21  California.  Discovery cannot controvert these facts, and thus should not be allowed.  *See*

22  *Wickenkamp v. Strotman*, 586 F. App'x 347, 348 (9th Cir. 2014); *Boschetto*, 539 F.3d at 1020.

23       The Court should also reject GSK's single sentence request to "withdraw" its Second

24  Amended Complaint and then "proceed to trial on its First Amended Complaint."  (GSK Br. at 23.)

25  "[A]n amended complaint supersedes the original complaint and renders it without legal effect."

26  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*).  Once GSK voluntarily

27  dismissed its Sherman Act claim, that claim ceased to exist, and it is now barred by the statute of

28  limitations.  *See Fields v. Gates*, 243 F.3d 547 (9th Cir. 2000) (unpublished) (filing of the original

complaint "did not toll the statute of limitations because the effect of a voluntary dismissal is that the original complaint is treated as though it was never filed."); *accord* 9 Wright & Miller, Federal Practice & Procedure § 2367 (noting that a "voluntary dismissal" "leaves the situation as if the action never had been filed," including for the purpose of compliance with the "statute of limitations") (collecting cases).

Moreover, when the Sherman Act claim was eliminated, the Court lost personal jurisdiction over Abbott.  When jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Vt. Agency*, 529 U.S. at 778-79.  This Court accordingly lacks jurisdiction to resolve a dispute about whether GSK should be permitted to reassert a time-barred claim.

GSK also offers nothing to support its single-sentence request for a transfer.  Under 28 U.S.C. § 1631, a "case is 'transferable' when three conditions are met:  '(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice.'" *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008).  The second condition is satisfied.  But GSK does not identify a transferee court, so the Court and Abbott cannot determine whether any transferee court would have jurisdiction.  Nor does GSK explain how transfer would serve the interests of justice.

## CONCLUSION

Therefore, pursuant to Fed. R. Civ. P. 12(b)(2), the Court should dismiss GSK's Second Amended Complaint due to a lack of personal jurisdiction over Abbott.


Dated:  April 1, 2015

/s/ *James F. Hurst*
James F. Hurst
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
james.hurst@kirkland.com

*Attorneys for Defendant*
*ABBOTT LABORATORIES*